

March 5, 2019

**BY ELECTRONIC MAIL ONLY**

JEG-United, LLC
7101 W Hwy 71, Suite U-2
Austin, Texas 78735
Attn: Trey Owen, trey@owencompany.com and Kevin Kelly, kevin.kelly@planetfitness.com

    Re:   Side Letter Agreement

Dear Kevin and Trey:

Planet Fitness International Franchise ("International Franchisor") and JEG-MEX, LLC entered into a Side Letter Agreement on April 7, 2017 (the "April Side Letter"), a Second Side Letter Agreement on December 21, 2017 (the "December Side Letter" and, together with the April Side Letter, the "Existing Side Letters") and a Planet Fitness Franchise Agreement on August 21, 2017 in connection with the development and operation of a PLANET FITNESS business in Santa Catarina, Mexico. On the date of this letter, (a) United PF Holdings, LLC ("United PF") and JEG-PF Mexico, LLC ("JEG-PF"), which is owned, directly or indirectly, by Tom Bock, Kevin Kelly, and John Williams (such individuals referred to collectively as "JEG Group") will each, directly or indirectly, own fifty percent (50%) of the equity interests of JEG-United, LLC ("JEG-United") and (b) wholly owned subsidiaries of JEG-United are entering into three (3) Franchise Agreements with International Franchisor (the "Current Franchise Agreements") to operate PLANET FITNESS businesses in Mexico (the "Initial Businesses"). In connection with such transactions, we hereby agree as follows:

1. <u>No Impact on U.S. Agreements.</u> Planet Fitness Franchising LLC ("US Franchisor") and International Franchisor hereby agree that (a) based on the ownership structure set forth in the Current Franchise Agreements, JEG-United and its majority-owned subsidiaries thereof shall not be considered affiliates or related entities of any franchisees or area developers in which United PF or the JEG Group have an ownership interest that solely operate in the United States ("US Franchisees"), and (b) the joint ownership by United PF and JEG Group of JEG-United and any wholly owned subsidiaries thereof shall not cause (i) US Franchisees in which United PF has an ownership interest to be considered affiliates or related entities of JEG Group, or (ii) US Franchisees in which JEG Group has an ownership interest to be considered affiliates or related entities of United PF.  The agreement set forth in this Section 1:  (1) is intended to prevent any cross-defaults or impacts on right of first refusal rights between the US Franchisees and Mexico entities and between United PF and JEG Group by virtue of their partnership in Mexico; and (2) shall apply to all of the Current Franchise Agreements, and any other existing or future franchise agreements or area development agreements in which JEG-United, United PF, or JEG Group has an ownership interest.

2. <u>Potential for Future Agreements</u>. JEG-United and International Franchisor are currently in discussions regarding a potential Area Development Agreement (the "Potential ADA") for the

Monterrey, Mexico metropolitan area, ("Monterrey"), the municipal boundaries of Saltillo, Mexico ("Saltillo"), and the municipal boundaries of Torreón, Mexico (collectively, the "Potential Territory"), as further described in Exhibit A attached hereto. International Franchisor hereby agrees to continue with good faith negotiations with JEG-United on the Potential ADA until December 31, 2019, consistent with the non-binding summary of terms outlined on Exhibit B hereof.

3. <u>Exclusivity</u>. International Franchisor hereby agrees that, except for Non-Traditional Businesses (as defined in US Franchisor's current form of Area Development Agreement), it will not operate or license or franchise third parties to operate a PLANET FITNESS business physically located within (a) the Potential Territory, until the sooner of (i) the mutual end of negotiations for the Potential ADA or (ii) December 31, 2019 (the "Potential ADA Negotiation Period").

4. <u>Potential Additional One-Off Locations</u>. During the Potential ADA Negotiation Period, JEG-United may identify promising locations for developing additional PLANET FITNESS businesses within the Potential Territory. If International Franchisor, in its sole discretion, approves JEG-United's development of additional PLANET FITNESS businesses at such locations (the "Additional Businesses"), the first two (2) franchise agreements for such PLANET FITNESS businesses (the "Additional Franchise Agreements") will contain substantially the same terms as the Current Franchise Agreements.

5. <u>Variations Related to Mexico</u>.  International Franchisor acknowledges that certain interim policies, procedures, requirements, and standards ("Standards") with respect to PLANET FITNESS businesses in Mexico have not yet been incorporated into its Methods of Operation. International Franchisor confirms that it has permitted certain localization of its U.S. Standards for existing PLANET FITNESS businesses in Mexico and will continue to permit such localization until Standards for Mexico have been developed. Neither JEG-United's (i) compliance with such agreed localization nor (ii) reasonably necessary variation from applicable Standards, shall be a breach of any Current Franchise Agreement or Additional Franchise Agreement executed prior to the adoption of updated Standards for Mexico. International Franchisor agrees to use its reasonable efforts to develop Standards for Mexico.

6. <u>Right to Update Agreements</u>. If the Potential ADA is executed by the end of the Potential ADA Negotiation Period, and, if by such time, International Franchisor has updated its standard form of Franchise Agreement for the Country, JEG-United (and/or its subsidiaries) shall have the right, exercisable by written notice within thirty (30) days of executing the Potential ADA, to amend the Current Franchise Agreements and the Additional Franchise Agreements to conform them to such updated form.

7. <u>Put Option</u>. If the Potential ADA is not executed by the end of the Potential ADA Negotiation Period, JEG-United shall have the right, exercisable by written notice delivered to International Franchisor within thirty (30) days from the end of the Potential ADA Negotiation Period, to sell the Initial Businesses and the Additional Businesses (collectively, the "Mexico Businesses") to International Franchisor. Upon receipt of JEG-United's notice, International Franchisor shall have ninety (90) days to purchase the Mexico Businesses for a price equal to the book value of the Mexico Businesses. The book value of each Mexico Business shall be calculated as the shareholder's equity of such business as of the date of determination, computed in accordance with generally accepted accounting principles, less any goodwill and other intangible assets (including franchise rights) reported by such business on its balance sheet. International Franchisor shall be entitled to receive, and JEG-United and its owners agree to make, all customary representations and warranties given by the seller of the assets of a business or the

capital stock of an incorporated business, as applicable, including, without limitation, representations and warranties as to: (a) ownership and condition of and title to stock or other forms of ownership interest and/or assets, (b) liens and encumbrances relating to the stock or other ownership interest and/or assets; and (c) validity of contracts and the liabilities, contingent or otherwise, of the entity whose stock is being purchased.

8. <u>Tax Ruling Regarding Withholding on Certain Fees</u>.  Franchisor, International Franchisor, and JEG-United, based upon input from counsel, believe that JEG-United (and/or its subsidiaries) is not required to make and remit any tax withholdings to any Mexican tax authorities related to the Business Service Fee ("Tax Question") in the applicable Planet Fitness franchise agreements.  JEG-United (and/or its subsidiaries), as the potential withholding agent pursuant to the Mexican Income Tax Law, shall, in a reasonably prompt manner after the execution of the Current Franchise Agreements, seek an initial tax ruling from the appropriate Mexican tax authorities regarding the Tax Question.  JEG-United shall seek input from Franchisor and its counsel in connection with seeking such initial tax ruling.  In the event the appropriate Mexican tax authorities refuse to hear such a request from JEG-United (or its subsidiaries) or refuse to resolve the tax ruling request without participation of Franchisor, Franchisor shall then file, using the submission JEG-United had previously prepared, the tax ruling request before the Mexican tax authorities, in a reasonably prompt manner, seeking resolution to the Tax Question.  JEG-United (or its subsidiaries) shall be responsible for the costs, fees, and expenses of Franchisor associated with Franchisor preparing and filing the initial request for the ruling from the appropriate Mexican tax authorities.  Absent a material change in circumstances, and based upon the existing assumptions related to the Business Service Fee, JEG-United (and its subsidiaries) will not remit any tax withholdings to any Mexican tax authorities related to the Business Service Fee until such time as a determination regarding the Tax Question is made by the appropriate Mexican tax authorities.  Once such a determination is made, JEG-United (and its subsidiaries), Franchisor, and International Franchisor agree to abide by the determination made by the appropriate Mexican tax authorities.   If the Mexican tax authorities resolve that the tax withholding on the Business Service Fee must be made and remitted to the competent tax authorities, JEG-United or its subsidiaries shall make and remit the tax withholdings starting as of the first payment of the Business Service Fee regardless of whether Franchisor and/or Franchisee decide to appeal or file a tax lawsuit against the tax ruling issued by the Mexican tax authorities.

9. <u>Termination of Existing Side Letters</u>. The Existing Side Letters are hereby terminated.

10. <u>Effect of Default</u>. Sections 2, 3, 4, and 6 of this Side Letter Agreement shall terminate upon the unilateral termination by International Franchisor of any agreement between JEG-United or one of its subsidiaries (each, a "JEG Party") and International Franchisor or one of its affiliates due to a material breach of such agreement by a JEG Party.

11. <u>Scope of Side Letter</u>. This Side Letter Agreement does not license any trademark rights or grant any franchise or development rights.

12. <u>Confidential Information</u>.  As JEG-United evaluates this franchising opportunity, International Franchisor may provide JEG-United with oral and written information about its business, business plans, personnel, finances, customers, vendors, suppliers or other matters (the "<u>Information</u>"). The Information also includes the terms of this Side Letter Agreement and the details of the negotiations in connection with this franchising opportunity. Therefore, JEG-United and all related persons and entities will (a) keep confidential and not disclose to any person any Information (other than disclosures to appropriate professional advisors and potential financing sources solely for purposes of evaluating this franchising opportunity), (b) not use or permit

anyone else to use any Information for any purpose other than evaluating this franchising opportunity, and (c) not use any Information for its benefit or to the detriment of International Franchisor.  The foregoing restrictions will apply equally to all Information provided before, on or after the date of this Side Letter Agreement, whether or not labeled "confidential," and JEG-United agrees to take reasonable steps to protect the confidentiality of Information consistent with these provisions.  These restrictions will not, however, restrict disclosure or use of Information, (y) which is now or becomes generally available to the public other than as a result of disclosure by JEG-United, or (z) which JEG-United obtains from sources other than International Franchisor without breach of any legal or contractual duties.  Further, these restrictions will not limit disclosures or uses of information to the extent required by applicable law, legal process or regulatory officials having jurisdiction over JEG-United.  Until International Franchisor has made a public communication regarding the execution of the Potential ADA (the "Initial Communication") JEG-United and International Franchisor shall coordinate with respect to any public communication regarding this franchising opportunity Any public communication regarding this franchising opportunity, by JEG-United prior to the Initial Communication is subject to International Franchisor's prior written approval, which it may grant or withhold in its sole discretion. Subsequent to the Initial Communication, public communications by JEG-United regarding this franchising opportunity shall be subject to the terms of Franchise Agreements and Area Development Agreement with International Franchisor.

13. <u>No Broker</u>.  Neither party has engaged a broker or an intermediary in connection with this franchising opportunity and International Franchisor is not responsible for any broker fees related hereto.

14. <u>Binding Effect</u>. This Side Letter Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns.

15. <u>Severability</u>. If any provision of this Side Letter Agreement is declared void or unenforceable, the other provisions of this Side Letter Agreement shall remain in full force and effect, unless the provisions must be deemed to be indissolubly connected to the void or unenforceable provision. If the other provisions remain valid, the parties shall endeavor to replace the void or unenforceable provision by a valid provision that reflects the parties' original intent to the greatest possible extent.

16. <u>Governing Law</u>. This Side Letter Agreement shall be governed by, and construed in accordance with, the law of the State of New Hampshire, without regard to principles of conflicts of law that would result in the laws of another state being applied. The parties agree that any legal proceeding relating to this Side Letter Agreement or the enforcement of any provision of this Side Letter Agreement shall be brought or otherwise commenced only in the State or Federal courts of the State of New Hampshire. The parties irrevocably submit to the jurisdiction of such courts and waive any objection they may have to either the jurisdiction of or venue in such courts.

17. <u>Assignment</u>. International Franchisor has the right to sell or assign, in whole or in part, its interests in this Side Letter Agreement, and any such sale or assignment shall inure to the benefit of any assignee or other legal successor to our interest.

18. <u>Entire Agreement/Amendment</u>. This Side Letter Agreement contains the entire agreement of the parties with respect to the subject matter hereof and shall not be amended except by the signed written agreement of each of the parties.

19. <u>Headings</u>. The headings of the Sections hereof are for convenience only and do not define, limit or construe the contents of such Sections.

20. <u>Counterparts and Electronic Records</u>. This Side Letter Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement. The execution of this Side Letter Agreement and related agreements by electronic means shall be legally binding and enforceable as an "electronic signature" and the legal equivalent of a handwritten signature. All disclosures, agreements, amendments, notices, and all other evidence of transactions between the parties hereto may be maintained in electronic form.

[Signature Page Follows]

PLANET FITNESS INTERNATIONAL FRANCHISE

By: _[signature]_

Name: Darren Riley

Title: Director

**EFFECTIVE DATE**: March 5, 2019

PLANET FITNESS FRANCHISING LLC

By: _[signature]_

Name: Justin Vartanian

Title: General Counsel

Date: March 5, 2019

> I, John Cullinane, Notary Public in and for the Cayman Islands, do hereby certify that DARREN RILEY appeared before me and executed this document, in witness where of I have subscribed my name and set and affixed my seal of office.
>
> _[signature]_
>
> John Cullinane
> Date: 5/3/19
> My appointment expires: 31 January 20 20

Agreed and Accepted

JEG-UNITED LLC

By: _____

Name: John Williams

Title: Chief Operating Officer

Date: _____

JEG-MEX LLC

By: _____

Name: John Williams

Title: Authorized Person

Date: _____

PLANET FITNESS INTERNATIONAL FRANCHISE

By:_____

Name: Darren Riley

Title: Director

**EFFECTIVE DATE**:_____


PLANET FITNESS FRANCHISING LLC

By:_____

Name: Justin Vartanian

Title: General Counsel

Date:_____


Agreed and Accepted

JEG-UNITED LLC

By: _[signature]_____

Name: John Williams

Title: Chief Operating Officer

Date: 3/5/19


JEG-MEX LLC

By: _[signature]_____

Name: John Williams

Title: Authorized Person

Date: 3/5/19

## Exhibit A

*Description of Potential Territory*

*Monterrey*



*Saltillo*



*Torreon*



**Exhibit B**

*Non-Binding Summary of Proposed Terms*

1. The Potential ADA shall include, among other things, the following:

   a. A conditional right of first refusal for any subsequent or renewal agreement within the Potential Territory upon successful completion of the Development Schedule (as hereinafter defined).
   b. A conditional ROFO with respect to additional area development agreements in the following states: Baja California, Baja California Sur, Chihuahua, Coahuila, Durango, Nuevo León, Sinaloa, Sonora and Tamaulipas. Such ROFO will be conditioned upon, among other things, JEG-United's development history in Mexico and other standard operational, financial and legal qualifications.
   c. The right for International Franchisor to open and operate, or grant third parties the right to operate, institutional or other non-traditional locations.

2. <u>Development of Planet Fitness Locations</u>. JEG-United shall be granted the right (and have the obligation) to open approximately thirty (30) (subject to revision based upon future discussions) PLANET FITNESS locations in the Territory in accordance with the terms and subject to the conditions set forth in the Potential ADA. International Franchisor and JEG-United will work in good faith to determine a mutually agreeable development schedule for the Potential ADA (the "Development Schedule"). The Development Schedule will be approximately eight (8) years in duration. There will be a simple cure period of between six (6) months and twelve (12) months and no US-style grace periods.

3. <u>Royalties & Fees</u>.

   a. The country fee will be waived in recognition of the amounts spent in connection with the opening of the first PLANET FITNESS location in Mexico.
   b. The Potential ADA will include an area development agreement fee of Ten Thousand U.S. Dollars ($10,000) per development obligation, which is due and payable immediately upon execution of the Potential ADA.
   c. The Franchise Agreements will be in our then-current standard form of franchise agreement for Mexico, except as modified by this Side Letter or subsequent agreement by the parties. Each such franchise agreement entered into within the first five (5) years of the execution of the Potential ADA shall include, among other things, the following:

      - a franchise fee of Twenty Thousand U.S. Dollars (U.S. $20,000);

      - advertising fees and required spending levels consistent with those set forth in Section 5 hereof; and

      - royalties on Revenue (as defined in the Current Franchise Agreements) payable in U.S. Dollars based upon the following schedule:[1]

| **Initial Royalty** | **Year 1-3 of FA** | **Years 4-6** | **Years 7-10** |
| --- | --- | --- | --- |

---

[1] The years in the royalty table are calculated from the Commencement Date (defined below).

| Technical Assistance Fee | 2.25% | 2.75% | 3.25% |
|---|---|---|---|
| Trademark License Fee | 2.25% | 2.75% | 3.25% |

      For the avoidance of doubt, JEG-United will make effective any applicable withholding tax on the above fees and will remit the <u>remaining</u> fees to International Franchisor thereafter.

Other fees may apply, consistent with other similarly situated franchisees in Mexico, as has been disclosed to JEG-United in the current Franchise Disclosure Document in use in Mexico.

    4.    <u>Franchise Agreements</u>.  JEG-United and International Franchisor will work in good faith to mutually agree on a form franchise agreement for PLANET FITNESS locations developed pursuant to the Potential ADA, including the following:
        a. A term that expires ten (10) years from the commencement of business operations (the "Commencement Date").
        b. Twin Oaks and ABC Financial Systems are each approved point of sale vendors, provided that such vendors continue to meet International Franchisor's criteria for approved vendors.
        c. Requirements and specifications related to equipment replacement and remodeling will be at least as favorable to JEG-United as in the U.S. franchise agreements.
        d. Provisions related to International Franchisor's approval of a proposed transfer of ownership interests by International Franchisor will be substantially similar to those found in the Current Franchise Agreements.
        e. Provisions related to International Franchisor's renewal of a Franchise Agreement will be substantially similar to the Current Franchise Agreements.
        f. Provisions related to International Franchisor's right to receive "Vendor Revenue" will be substantially similar to the Current Franchise Agreements.
        g. Provisions related to taxation issues will be substantially similar to those in the Current Franchise Agreements.
        h. Provisions related to the use/approval of alternate vendors will be substantially similar as the Current Franchise Agreements.
        i. Provisions limiting cross-defaults and impact on right of first refusals as contained in this Side Letter Agreement.
        j. JEG-United will provide International Franchisor with financial statements as described in the Current Franchise Agreements.
        k. JEG-United will present a three year business plan to International Franchisor on an annual basis.

    5.    <u>Local & National Advertising Funds and Marketing Programs</u>.

        a. JEG-United will pay a to be agreed amount into the Mexico Ad Fund ("MAF") and going forward may be required to contribute up to two percent (2%) of Revenue (as defined in the Current Franchise Agreements) into the MAF.  JEG-United will receive credit for documented amounts spent on usable and nationally relevant creative, to the extent it can demonstrate such amounts to International Franchisor's satisfaction.

        b. JEG-United will initially spend nine percent (9%) of monthly Revenue (as defined in the Current Franchise Agreements) directly executing approved local advertising programs the ("<u>LAF Requirement</u>").  If, and to the extent, International Franchisor

        requires monthly contributions to the MAF, such contributions will offset the LAF Requirement.

        c.    For each new PLANET FITNESS location developed pursuant to the Potential ADA, JEG-United will spend between Twenty Thousand U.S. Dollars ($20,000) and Thirty Thousand U.S. Dollars ($30,000) per month on pre-sale/grand opening marketing during the pre-sale/grand opening period, with such period to be designated by International Franchisor and to continue for no longer than twelve (12) months after the Commencement Date.

        d.    The Franchise Agreements shall include provisions requiring JEG-United to participate in and contribute funds to special marketing programs and campaigns that we develop and administer (or require you to develop and/or administer) from time to time, consistent with other similarly situated franchisees in Mexico, provided such participation and contributions are counted toward LAF and MAF contributions, as provided for in the Current Franchise Agreements.

6.    <u>Pricing</u>.    Initial pricing will be agreed by the parties before execution of the Potential ADA.

7.    <u>Equipment/Vendors</u>.    JEG-United shall utilize designated and/or approved vendors, as directed by International Franchisor. JEG-United acknowledges that International Franchisor may make a margin or rebate with respect to purchases of fitness equipment consistent with its operations in the U.S. JEG-United will coordinate shipping/freight and placement/installation with its vendors. JEG-United and International Franchisor shall collaborate with respect to import/export and distribution issues. International Franchisor shall exercise reasonable efforts to work with vendors on such issues in the best interests of the System as a whole.

8.    <u>Training & Support</u>.    Training is to be provided by International Franchisor at its headquarters and each party shall bear its own costs, unless otherwise mutually agreed. If International Franchisor and JEG-United mutually agree to hold training at JEG-United's location, JEG-United shall bear International Franchisor's reasonable travel expenses. International Franchisor will provide customary franchisee compliance, training and operational support to JEG-United. JEG-United shall bear the reasonable costs of any necessary translation work.

9.    <u>Guarantees</u>.  JEG-United or its subsidiary shall provide an entity-level guarantee for each Franchise Agreement, consistent with the Current Franchise Agreements. Such guarantor entity must own at least 98% of the fewer of (i) all PLANET FITNESS businesses in Mexico owned by JEG-United or (ii) five (5) open and operating PLANET FITNESS businesses in Mexico. If JEG-United or its subsidiary does not have signed leases for at least three (3) PLANET FITNESS businesses in Mexico by December 31, 2019, then, until such time as JEG-United or its subsidiary owns at least 98% of five (5) open and operating PLANET FITNESS businesses in Mexico, JEG-United or its subsidiary shall commit to maintain a minimum amount of committed capital, based on International Franchisor's financial qualification requirements, to fund JEG-United's Mexico operations, and must provide satisfactory evidence of such commitment upon request.

10.    <u>Noncompetition Agreement</u>.  In connection with the Potential ADA and the franchise agreements to be executed thereunder, JEG-United, its affiliates, and other individuals involved in the operations and/or management of JEG-United, as identified in our sole discretion, shall execute a noncompetition agreement pursuant to which each individual and affiliate will agree not to directly or indirectly compete with International Franchisor so long as such individual or affiliate holds any direct or

indirect ownership in a PLANET FITNESS location and for a period of two (2) years thereafter. The noncompetition agreement will contain such other terms and conditions as reasonably required by International Franchisor.