## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Planet Fitness International Franchise,

                     Plaintiff

         v.                                              **Case No. 1:20-cv-00693-LM**

JEG-United, LLC,

                     Defendant

## <u>AMENDED COMPLAINT</u>

### I.        INTRODUCTION

The Plaintiff, Planet Fitness International Franchise ("Planet Fitness"), entered into a contract with the Defendant, JEG-United, LLC ("Defendant JEG-United"), entitled a Side Letter Agreement (the "Contract") related to the development of fitness clubs in certain geographical areas within Mexico.  Under the Contract, Defendant JEG-United developed five fitness clubs in Mexico—four are operational notwithstanding disruption from COVID-19 and one is under construction (the "Mexico Businesses").   As part of the Contract, Defendant JEG-United was afforded temporary exclusivity to operate Planet Fitness clubs within a certain geographical location with the opportunity to explore future development of additional fitness clubs and permanent exclusivity through a potential Area Development Agreement.  In the event the parties were unable to enter an Area Development Agreement, however, the Contract also provided Defendant JEG-United with a Put Option.

Under the Put Option, if Defendant JEG-United timely exercised, Planet Fitness was required to purchase, and Defendant JEG-United was required to sell, the five fitness clubs at

book value, which was to be calculated using an objective and straight-forward valuation

process: the shareholder's equity of such businesses as of the date of determination, computed in

accordance with generally accepted accounting principles ("GAAP"), less any goodwill and

other intangible assets.  The only significant variable in calculating the purchase price was

whether the parties conducted an *asset* sale or an *equity* sale, that determines whether or not the

buyer succeeds to the seller's (favorable or unfavorable) value added tax ("VAT") account in

accordance with GAAP.  The Put Option further required that, regardless of the structure of the

sale, the purchase agreement was to include standard terms for transactions of this type.

On March 19, 2020, after it failed to negotiate an Area Development Agreement with

Planet Fitness—and also failed to negotiate a sale to, or joint venture with, a third party—

Defendant JEG-United exercised its rights under the Put Option.  Defendant JEG-United initially

requested an equity sale. In response, Planet Fitness agreed to purchase the equity of the Mexico

Businesses, performed a calculation of the book value of the businesses using the objective and

straight-forward calculation method explicitly required by the Contract, shared the calculation

with Defendant, and submitted an equity purchase agreement to Defendant JEG-United with a

preliminary purchase price of $13,800,000.  This purchase price was calculated to account for

the value of seller's favorable VAT in accordance with GAAP. Defendant JEG-United never

provided Planet Fitness with edits to the equity purchase agreement or indicated whether or not

the agreement was acceptable.

Defendant JEG-United instead demanded that Planet Fitness purchase the Mexico

Businesses for $20,000,000—a proposed purchase price that Defendant JEG-United admitted

was not based on the book value of the Mexico Businesses.  Planet Fitness repeatedly rejected

this demand.   Rather than providing feedback on the proposed equity purchase agreement,

Defendant JEG-United changed course and demanded an asset sale.  In an effort to reach a resolution on the disputed purchase price, Planet Fitness agreed to restructure the transaction as an asset purchase, re-calculated the book value using the applicable GAAP provisions for an asset sale, and delivered an asset purchase agreement with a purchase price of $12,209,629.

In response, Defendant JEG-United demanded $13,800,000—a valuation which included value related to the favorable VAT account that Planet Fitness would no longer be entitled to, despite the fact that Defendant JEG-United's own financial representative agreed the value of the VAT should not be included in accordance with GAAP.  In addition to insisting upon a purchase price greater than book value, Defendant JEG-United: (1) rejected the purchase price; (2) demanded significant revisions to the standard terms of the asset purchase agreement; and (3) refused to execute a standard mutual release of claims related to the acquired assets as is customary.

To demonstrate, unequivocally, that it was committed to closing and meeting its obligations under the Put Option, buy peace, and ultimately work toward a smooth transition of the Mexico Businesses, Planet Fitness accepted all of Defendant JEG-United's onerous revisions to the asset purchase agreement with two exceptions: (i) purchase price (book value); and (ii) Defendant JEG-United's refusal to execute a mutual release of claims.  Planet Fitness sent the final asset purchase agreement and related closing documents (which included the standard mutual release of claims) and informed Defendant JEG-United it was prepared to wire the purchase price funds to Defendant JEG-United upon execution of the these documents.  As Defendant JEG-United challenged the purchase price, Planet Fitness also informed Defendant JEG-United it was prepared to wire the disputed amount of the purchase price to a third-party escrow agent, to be held until such time as the final purchase price was agreed to by the parties

or ordered by the Court.  Defendant JEG-United, however, refused to sell the Mexico Businesses to Planet Fitness and, therefore, failed to meet its June 17, 2020 deadline.

On June 18, 2020, Defendant JEG-United informed Planet Fitness that it would "continue to build and operate the Planet Fitness clubs it developed in Mexico."

Planet Fitness promptly filed this amended complaint to exercise its rights under the Put Option.

Planet Fitness now brings this action under the Declaratory Judgment Act seeking an order from this Court: (1) calculating the book value of the Mexico Business and declaring that value is the purchase price under the Put Option; (2) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United was required to execute the asset purchase agreement and related closing documents; (3) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United was required to accept the standard commercial terms of the purchase agreement, including execution of a standard mutual release of claims; (4) declaring that Planet Fitness has timely met all of its obligations to purchase the Mexico Businesses under the Put Option; (5) finding that Defendant JEG-United breached the Contract by refusing to perform (complete the sale) following its exercise of the Put Option; and (6) ordering Defendant JEG-United to specifically perform under the Contract by (i) selling the Mexico Businesses to Planet Fitness at the calculated book value of $12,209,629; (ii) executing the final asset purchase agreement **(Exhibit E-1)** and related closing documents (**Exhibit E-2**); and (iii) executing the mutual release of claims (**Exhibit F**).

Planet Fitness will suffer an undue hardship if the parties' rights and obligations under the Contract are not adjudicated and affixed by this Court.  Among other things, without a prompt declaration from this Court, Planet Fitness will be prevented from taking ownership of

the Mexico Businesses, arranging for their successful transition and operation, and mitigating

any further loss of value as a result of Defendant's failure to perform under the Contract.

## PARTIES AND RELEVANT NON-PARTIES

1.      **Plaintiff Planet Fitness International Franchise** is an exempted company

formed under the laws of the Cayman Islands and with a principal place of business at 4 Liberty

Lane West, Hampton, New Hampshire 03842.

2.      **Defendant JEG-United, LLC** is a Limited Liability Company incorporated in

the State of Delaware.  Defendant JEG-United is a joint venture between United-PF Mex, LLC,

which has a principal place of business located at 4635 Boston Lane, Suite 200, Austin, Texas

78735, and JEG-PF Mexico, LLC, which has a principal place of business located at 2800

Southhampton Road, Philadelphia, Pennsylvania 19154.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 28 U.S.C. § 1332 and 28 U.S.C. §§ 2201–2202 as this

case presents a case and controversy under the Declaratory Judgment Act.

4.      This Court also has both subject matter and personal jurisdiction as the parties

have agreed by contract to submit to the jurisdiction of this Court and waive any objection they

may have to either the jurisdiction of, or venue in, this Court.

5.      Venue lies in this district under 28 U.S.C. § 1391(b) (2) and (3) in that the District

of New Hampshire is the judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred.

6.     Venue also lies in this district as the parties have agreed by contract to submit to the jurisdiction of this Court and waive any objection they may have to either the jurisdiction of, or venue in, this Court.

## FACTUAL BASIS FOR CLAIMS

7.     Planet Fitness was founded in 1992 in Dover, New Hampshire and is one of the largest and fastest-growing franchisors and operators of fitness centers in the United States by number of members and locations.   As of March 31, 2020, Planet Fitness had more than 15.5 million members and 2,039 fitness clubs located in all fifty states, the District of Columbia, Puerto Rico, Canada, the Dominican Republic, Panama, Mexico, and Australia.  Planet Fitness's mission is to enhance people's lives by providing a high-quality fitness experience in a welcoming, non-intimidating environment.  More than 95% of Planet Fitness stores are owned and operated by independent business men and women.

8.     This case involves a dispute between Planet Fitness and one of its franchise groups, Defendant JEG-United, arising, in part, because the parties were unable to negotiate an Area Development Agreement for certain fitness clubs in Mexico.

9.     An Area Development Agreement grants a franchisee development rights within a territory (which is exclusive, subject to certain exceptions) in which to develop a specified number of franchise locations (fitness clubs under the Planet Fitness brand) according to a negotiated and mutually agreed schedule, within a given period of time, depending on population of the area, its market potential and many other factors.

10.     On April 7, 2017, Planet Fitness entered into a Side Letter Agreement with JEG-Mex, LLC in connection with the development of a Planet Fitness club located in Santa Catarina, Mexico, which provided JEG-Mex, LLC with certain temporary, territorial protections for

potential future development of other Planet Fitness clubs in Mexico.  At that time, JEG-Mex, LLC declined the opportunity to sign an Area Development Agreement.

11.     On December 21, 2017, Planet Fitness entered into a second Side Letter Agreement with JEG-Mex, LLC, which included provisions for certain marketing obligations, royalties, and other matters related to the development of Planet Fitness clubs in Mexico. As of the signing of the second Side Letter, JEG-Mex, LLC was still unwilling to sign an Area Development Agreement.

12.     During this time period, Planet Fitness and JEG-Mex, LLC continued to negotiate the terms for a potential Area Development Agreement.  JEG-Mex, LLC also began negotiating a joint venture with another franchise group United PF Holdings, LLC ("United PF") —which ultimately resulted in the formation of Defendant JEG-United— to raise additional capital for the development of fitness clubs in Mexico. Planet Fitness was supportive of the joint venture.

13.     Typically, a franchisee developing Planet Fitness clubs in a new country would sign an Area Development Agreement to secure limited exclusivity within a geographic territory of the country.  However, Defendant JEG-United was unwilling to commit to signing an Area Development Agreement and instead wanted to develop a small number of fitness clubs while it conducted additional due diligence related to the market. In addition, Defendant JEG-United requested an "exit strategy" in case the pilot clubs it developed were not successful or the parties could not reach agreement on the final terms of an Area Development Agreement. Planet Fitness accommodated these requests and offered to enter into an agreement with Defendant JEG-United, which proposed to extend the previous side letter agreements and included a Put Option obligating Planet Fitness to purchase the clubs at book value.  Planet Fitness is not in the practice of entering into agreements that include "put options" with its franchisee groups, but agreed to

do so in this instance as a special accommodation in response to concerns raised by Defendant JEG-United.

14.     On March 5, 2019, Planet Fitness formally consented to the transfer of the ownership of JEG-Mex, LLC to Defendant JEG-United.[1]  Planet Fitness then entered into the Contract with Defendant JEG-United.  *See* **Exhibit A**. The Contract terminated the first and second Side Letter Agreements with JEG-Mex, LLC.  *Id*. at 3.  The Contract also provided certain development rights for Planet Fitness clubs in Mexico to Defendant JEG-United, established a negotiation period for the parties to explore a potential Area Development Agreement, and provided Defendant JEG-United with a Put Option.  *Id*. at 1–3.  Both Planet Fitness and Defendant JEG-United were represented by counsel during the negotiation and drafting of the Contract, with multiple iterations being traded between the parties before it was finalized.

15.     Paragraph 2 of the Contract, captioned <u>Potential for Future Agreements</u>, stated that the parties were currently in "discussions regarding a potential Area Development Agreement" for certain geographical locations within Mexico, which included the Monterrey metropolitan area, the municipal boundaries of Saltillo, and the municipal boundaries of Torreon. **Exhibit A** at 1–2.  Under this provision, Planet Fitness agreed to continue to negotiate an Area Development Agreement with Defendant JEG-United until December 31, 2019.  *Id*.  During the negotiation period, Planet Fitness granted Defendant JEG-United temporary exclusivity in certain geographical locations, which prevented Planet Fitness from developing—either on its own or by franchising—any additional fitness clubs in those markets.  *Id*.

---

[1] Under the Franchise Agreements between Planet Fitness and JEG-Mex, LLC, Planet Fitness, as franchisor, had consent rights surrounding any transfer of ownership.  As part of this consent, both entities, JEG-Mex, LLC and Defendant JEG-United executed a release of claims form, which is customary in all transactions involving Planet Fitness as franchisor.

16.     Paragraph 7 of the Contract granted Defendant JEG-United a Put Option.  **Exhibit**

**A** at 2–3.   This Put Option provided Defendant JEG-United with some additional protection

around its investment in the fitness clubs in Mexico.   Specifically, if Defendant JEG-United was

unsuccessful in negotiating an Area Development Agreement with Planet Fitness or at any point

decided not to move forward with developing any additional locations in Mexico, it had the

option to force Planet Fitness to purchase the existing fitness clubs in Mexico.

17.     Paragraph 7 of the Contract provides, in pertinent part:

> Put Option.  If the Potential ADA is not executed by the end of the Potential ADA
> Negotiation Period, JEG-United shall have the right, exercisable by written notice
> delivered to [Planet Fitness] within thirty (30) days from the end of the Potential
> ADA Negotiation Period, to sell the Initial Businesses and the Additional
> Businesses (collectively, the "Mexico Businesses") to [Planet Fitness].   Upon
> receipt of JEG-United's notice, [Planet Fitness] shall have ninety (90) days to
> purchase the Mexican Businesses *for a price equal to the book value of the*
> *Mexico Businesses.  The book value of each Mexico Business shall be*
> *calculated as the shareholder's equity of such business as of the date of*
> *determination, computed in accordance with generally accepted accounting*
> *principles, less any goodwill and other intangible assets (including franchise*
> *rights) reported by such business on its balance sheet.* [Planet Fitness] shall be
> entitled to receive, and JEG-United and its owners agree to make, all customary
> representations and warranties given by the seller of the assets of a business or the
> capital stock of an incorporated business, as applicable, including, without
> limitation, representations and warranties as to: (a) ownership and condition of
> and title to stock or other forms of ownership interest and/or assets, (b) liens and
> encumbrances relating to the stock or other ownership interest and/or assets; and
> (c) validity of contracts and the liabilities, contingent or otherwise, of the entity
> whose stock is being purchased.

**Exhibit A** at 2–3 (emphasis added).

18.     Paragraph 16 of the Contract explicitly established that the Contract was

"governed by, and construed in accordance with, the laws of the State of New Hampshire" and

that the parties agree "that any legal proceeding relating to this Side Letter Agreement [(the

Contract)] or the enforcement of any provision of this [Contract] shall be brought or otherwise

commenced only in the State or Federal courts of the State of New Hampshire."  **Exhibit A** at 4.

19.     The Contract also included a non-binding summary of proposed terms for an Area Development Agreement (the "Non-Binding Terms"), which contemplated that Defendant JEG-United would have the right and obligation to open approximately thirty clubs over eight years. **Exhibit A** at 11–14.

20.     Defendant JEG-United is a sophisticated party that was represented by counsel during the relevant negotiations—which included negotiations surrounding the Contract, prior side letter agreements (involving entities related to Defendant JEG-United), and the unsuccessful discussions surrounding an Area Development Agreement.  In fact, the principals of Defendant JEG-United and its counsel have successfully worked with Planet Fitness over the years on many prior occasions, including entering into several Area Development Agreements in various parts of the United States.

21.     To date, Defendant JEG-United has established five Planet Fitness clubs in Mexico: (1) Santa Catarina—opened April 14, 2018; (2) Monterrey—opened August 12, 2019; (3) Guadalupe—opened January 25, 2020; (4) Apodaca—opened February 1, 2020; and (5) Saltillo—currently under construction.

22.     By early 2020, the negotiations between Planet Fitness and Defendant JEG-United for an Area Development Agreement stalled as the parties disagreed on a development schedule, among other terms.  In essence, Defendant JEG-United was unwilling to commit to develop thirty fitness clubs in approximately eight years' duration as contemplated by the Non-Binding Terms and instead proposed a significantly reduced and delayed development schedule.

23.     In addition to its negotiations with Planet Fitness, Defendant JEG-United was also negotiating to sell its five clubs in Mexico to a Mexican developer.  As a result of Defendant JEG-United's ongoing negotiations with the Mexican developer, Defendant JEG-United sought

an extension of its Area Development Agreement negotiation period with Planet Fitness, which expired on December 31, 2019.

24.     On January 21, 2020, Trey Owen, a principal of Defendant JEG-United, notified Planet Fitness that Defendant JEG-United: (1) preferred to either enter into a joint venture with the Mexican developer or sell the clubs to this Mexican developer; (2) determined it was not a priority to negotiate an Area Development Agreement with Planet Fitness; and (3) wanted an extension of that negotiation period in the event it became necessary for Defendant JEG-United to exercise the Put Option.

25.     That same day, Defendant JEG-United sent Planet Fitness a Notice of Intent to Exercise Put Option for Mexico Businesses ("Notice of Intent to Exercise").  **Exhibit B**.  In the Notice of Intent to Exercise, Defendant JEG-United cited the expiration of the Area Development Agreement negotiation period, its right to sell the clubs to Planet Fitness under the Put Option, and its present intent to exercise the Put Option by January 30, 2020, if Planet Fitness did not agree to extend the Area Development Agreement negotiation period to April 30, 2020. *Id*.

26.     Specifically, Defendant JEG-United explained to Planet Fitness that the extension was needed to provide it with additional time to negotiate a deal with the Mexican developer, while maintaining the right to exercise the Put Option.  In its Notice of Intent to Exercise, Defendant JEG-United cited "certain ongoing discussions between JEG-United, [Planet Fitness], and certain other interested parties relating to a number of different business options in Mexico. In order to allow those discussions to continue," Defendant JEG-United sought an extension of the negotiation period. *Id*.

27.     Defendant JEG-United stated that, "Upon receipt of [notice exercising the Put Option], we fully expect that [Planet Fitness] will, as required by the [Contract], purchase the Mexico Businesses for a price equal to the book value of the Mexico Businesses." *Id*.

28.     Although it could have declined to grant the requested extension and in turn caused Defendant JEG-United to follow through with exercising the Put Option at that time, Planet Fitness agreed to the further extension of the Area Development Agreement negotiation period in order to afford Defendant JEG-United additional time to negotiate a deal with the Mexican developer or to negotiate an Area Development Agreement with Planet Fitness.

29.     On January 28, 2020, Planet Fitness and Defendant JEG-United entered into an extension of the Side Letter Agreement.  **Exhibit C**.  This amendment to the Contract extended the negotiation period for an Area Development Agreement to June 30, 2020 and allowed either party to terminate the negotiation period earlier by sending written notice.  *Id*. at 1. The amendment also extended the time period for Defendant JEG-United to exercise its Put Option as set forth in Paragraph 7 of the Contract.  *Id*.  The amendment did not change the substance of the Put Option.  *Id*.

30.     Over the next few weeks, Defendant JEG-United's discussions with the Mexican developer deteriorated.  On March 19, 2020—in the midst of business closures, volatile market conditions due to the COVID-19 pandemic, and on the eve of a government-issued closure of the Mexico Businesses—Defendant JEG-United sent Planet Fitness written notice of its "Exercise of Put Option for Mexico Businesses."  **Exhibit D**.  The notice declared an end to the negotiation period for the Area Development Agreement and explicitly exercised the Put Option under Paragraph 7 of the Contract.  *Id*. at 2.  The notice demanded that Planet Fitness purchase the Mexico Businesses within 90 days—establishing a deadline of June 17, 2020.  *Id*. at 2.

31.     Planet Fitness accepted the notice as a valid and timely exercise of the Put Option and immediately commenced action to prepare for the purchase of the Mexico Businesses.

32.     On April 3, 2020,  Defendant JEG-United's Chief Operating Officer John Williams provided Planet Fitness with its proposed purchase price: $20,000,000, which represented "[Defendant JEG-United's] basis in the investment, plus any additional working capital expenses operating the clubs and investment cost (hard or soft) to continue with the buildout of [the club currently under development in Saltillo] between now and closing."  This proposed purchase price, however, grossly deviated from the agreed-upon valuation method set forth in Paragraph 7 of the Contract.  Specifically, Defendant JEG-United sought compensation for goodwill and intangibles—value that was explicitly excluded in calculating book value under the Contract.

33.     Initially, Defendant JEG-United sought an equity sale of the Mexico Businesses. Planet Fitness agreed to this structure, followed the formula set forth in Paragraph 7 (Put Option) of the Contract and calculated the preliminary book value for an equity sale at approximately $13,800,000.  In order to finalize the equity valuation, Planet Fitness requested certain tax and financial information from Defendant JEG-United, which was necessary to calculate limited adjustments—but it was clear at the time that the anticipated adjustments would not result in a book value approaching the $20,000,000 Defendant JEG-United demanded.   Planet Fitness repeatedly rejected this $20,000,000 demand.

34.     On May 22, 2020, Planet Fitness provided JEG-United with a proposed membership interest purchase agreement (the "MIPA"), which included a preliminary purchase price of $13,800,000 based on the information JEG-United had provided up to that date.[2]

35.     On June 4, 2020, nearly two weeks after receiving, and failing to respond to, Planet Fitness's proposed MIPA, Defendant JEG-United suddenly changed course and demanded an asset sale.  In an effort to reach a resolution on the disputed purchase price, Planet Fitness agreed to restructure the transaction as an asset purchase. Planet Fitness recalculated the GAAP book value the business for an asset sale and delivered to Defendant JEG-United an asset purchase agreement and related closing documents, all of which contained standard terms for transactions of this type.

36.     This standard asset purchase agreement included a purchase price of $12,209,629, reflecting the book value of the Mexico Businesses calculated in accordance with GAAP. Because Defendant JEG-United now sought to move forward with an asset sale—as opposed to an equity sale—the purchase price needed to be recalculated.  Specifically, because the buyer does not acquire the seller's VAT account in an asset sale, the value of such account must be excluded entirely from the valuation.  In fact, Defendant JEG-United's own financial representative stated that the VAT tax must be removed "from the fixed asset schedules."

37.     Ignoring this necessary adjustment to the valuation, Defendant JEG-United, continued to demand a purchase price of $13,800,000.  It also rejected a substantial portion of the standard terms within the asset purchase agreement and refused to execute the standard mutual release of claims.

---

[2] "Planet Fitness subsequently learned from certain additional records that Defendant JEG-United's financial records inaccurately recorded its favorable VAT account as an asset, resulting in an inflated book value calculation of $13,800,000."

38.     To demonstrate, unequivocally, that it was committed to closing and meeting its obligations under the Put Option, and in the hopes of settling the remaining disputes, Planet Fitness accepted all of Defendant JEG-United's onerous revisions to the asset purchase agreement with two exceptions: (i) purchase price (book value); and (ii) Defendant JEG-United's refusal to execute a mutual release of claims.   Planet Fitness sent the final asset purchase agreement (**Exhibit E-1**) and related closing documents (**Exhibit E-2**)[3] (which include the standard mutual release of claims (**Exhibit F**)), informed Defendant JEG-United it was prepared to wire the purchase price to Defendant JEG upon execution of the asset purchase agreement and related closing documents.  Alternatively, Planet Fitness informed Defendant JEG-United it was prepared to wire the disputed amount of the purchase price to a third-party escrow agent until such time as the final purchase price was agreed by the parties or ordered by the Court. Defendant JEG-United, however, refused to sell the Mexico Businesses to Planet Fitness and, therefore, failed to meet its June 17, 2020 deadline.

39.     Immediately following Defendant JEG-United's rejection on June 17, 2020, Planet Fitness, in order to continue demonstrating its commitment to completing the sale, wired $16,008,000 to an escrow agent to be held until the parties resolve the dispute by agreement or order of the Court.

40.     On June 18, 2020, Defendant JEG-United informed Planet Fitness that it would "continue to build and operate the Planet Fitness clubs it developed in Mexico."

41.     Planet Fitness promptly filed this amended complaint to exercise its rights under the Put Option.

---

[3] The related closing documents, attached hereto as Exhibit E-1, contained some missing information that Planet Fitness sought from Defendant JEG-United.  However, Defendant JEG-United, despite promising to return these documents, never filled in the missing information.

42.     Planet Fitness now brings this action under the Declaratory Judgment Act seeking an order from this Court: (1) calculating the book value of the Mexico Business and declaring that value is the purchase price under the Put Option; (2) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United is required to execute the asset purchase agreement and related closing documents; (3) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United is required to accept the standard commercial terms of the purchase agreement, including execution of a standard mutual release of claims; (4) declaring that Planet Fitness has timely met all of its obligations to purchase the Mexico Businesses under the Put Option;  (5) finding that Defendant JEG-United breached the Contract by refusing to perform (complete the sale) following its exercise of the Put Option; and (6) ordering Defendant JEG-United to specifically perform under the Contract by (i) selling the Mexico Businesses to Planet Fitness at the calculated book value of $12,209,629; (ii) executing the final asset purchase agreement (**Exhibit E-1**) and related closing documents (**Exhibit E-2**); and (iii) executing the mutual release of claims form (**Exhibit F**).

43.     Planet Fitness will suffer an undue hardship if the parties' rights and obligations under the Contract are not adjudicated and affixed by this Court.  Among other things, without a prompt declaration from this Court, Planet Fitness will be prevented from taking ownership of the Mexico Businesses, arranging for their successful operation, and mitigating any further loss of value of the Mexico Businesses as a result of Defendant's failure to perform under the Contract.

## CLAIMS FOR RELIEF

### COUNT I

### (Declaratory Judgment – 28 U.S.C. § 2201(a))

44.     The Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43 as if set forth herein.

45.     Given the immediate and substantial harm posed by the Defendant's refusal to sell to the Plaintiff the Mexico Businesses at book value, refusal to provide necessary financial information to complete the valuation, its disregard of the contractual language related to the purchase price, its demand for payment well beyond the book value, and its refusal to sign a mutual release of claims, this case presents to the Court "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).

46.     As a result, the Plaintiff seeks a declaration: (1) calculating the book value of the Mexico Business and declaring that value is the purchase price under the Put Option; (2) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United was required to execute the asset purchase agreement and related closing documents; (3) declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United was required to accept the standard commercial terms of the purchase agreement, including execution of a standard mutual release of claims; and (4) declaring that Planet Fitness has timely met all of its obligations to purchase the Mexico Businesses under the Put Option.

47.     *First*, the Contract requires the parties to calculate book value "as the shareholder's equity of such business as of the date of determination, computed in accordance

with generally accepted accounting principles, less any goodwill and other intangible assets (including franchise rights) reported by such business on its balance sheet."

48.     The Defendant submitted its balance sheet to the Plaintiff.  Using that balance sheet, the Plaintiff conducted the objective and straight-forward calculation in accordance with GAAP, less any goodwill and other intangible assets as set forth in the Contract.

49.     Defendant JEG-United's demand for a purchase price higher than the book value contradicted the plain and unambiguous language in the Contract regarding the process for calculating the book value of the Mexico Businesses.  Consequently, the Contract cannot be read to cause the Plaintiff to purchase the Mexico Businesses at a price greater than the book value. The Plaintiff seeks a declaration from this Court calculating the book value of the Mexico Businesses and declaring that value is the purchase price.

50.     *Second*, the Put Option necessarily included the parties' agreement to enter into a standard purchase agreement.  The asset purchase agreement and related closing documents that Planet Fitness presented on the day of closing, June 17, 2020, contained standard market terms and comported with the parties' course of dealing, and, therefore, Defendant JEG-United was obligated, under the Put Option, to execute those documents and close on the sale.  Planet Fitness seeks an order from this Court declaring that, under the Put Option and the parties' course of dealing, Defendant JEG-United is required to execute the asset purchase agreement and related closing documents (attached as **Exhibit E**).

51.     *Third,* the Put Option, in calling for the sale of the Mexico Businesses, necessarily included the parties' agreement to exchange mutual releases of claims.  It is customary in the market for parties to execute a release of claims when conducting transactions such as this one. Moreover, the parties have a long established course of dealing which transactions of this nature

include the execution of standard releases of claims.  Indeed, over the last four years, on at least

fourteen occasions, Defendant JEG-United, and/or its principals, have executed a release of

claims form similar to the one Planet Fitness provided for the sale of the Mexico Businesses.

The parties, when entering into the Contract, reasonably expected that, if the Mexico Businesses

were sold pursuant to the Put Option, the parties would execute a mutual release of claims.

52.     There is a bona fide and substantial controversy between these parties and they

have adverse legal interests.

53.     There is urgency and immediacy to resolving this dispute as (i) Planet Fitness was

entitled to purchase the Mexico Businesses on or before June 17, 2020 and (ii) the Mexico

Businesses may suffer a material diminution in value due to Defendant JEG-United's continued

failure to perform under the Contract.

54.     A declaration from this Court as to the purchase price is necessary to enable these

parties to clarify their respective legal rights and obligations under the Contract and act upon

them.

55.     A further declaration from this Court that Plaintiff has timely met its obligations

under the Put Option is necessary to enable these parties to clarify their respective rights and

obligations under the Contract and act upon them.

56.     A declaration that Defendant JEG-United is required to execute the asset purchase

agreement **(Exhibit E-1)** and related closing documents (**Exhibit E-2**) as well as the mutual

release of claims (**Exhibit F**) to enable these parties to clarify their respective rights and

obligations under the Contract and act upon them.

57.     Plaintiff will suffer an undue hardship if the parties' rights and obligations under

the Contract are not adjudicated and affixed by this Court.  Among other things, without a

prompt declaration from this Court, Plaintiff will be prevented from completing the transaction set forth in the Contract, taking ownership of the Mexico Businesses and arranging for their successful transition and operation.

58.     Accordingly, the Plaintiff is entitled to an order declaring: (1) the calculated book value of the Mexico Business and declaring that value is the purchase price under the Put Option; (2) under the Put Option and the parties' course of dealing, Defendant JEG-United was required to execute the asset purchase agreement and related closing documents; (3) under the Put Option and the parties' course of dealing, Defendant JEG-United was required to accept the standard commercial terms of the purchase agreement, including execution of a standard mutual release of claims; and (4) Planet Fitness has timely met all of its obligations to purchase the Mexico Businesses under the Put Option.

## COUNT II

### (Breach of Contract)

59.     The Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 58 as if set forth herein.

60.     The Side Letter Agreement—the Contract—is a valid and enforceable contract

61.     Accordingly, the Put Option set forth in Paragraph 7 of the Side Letter Agreement is valid and enforceable upon exercise.

62.     Defendant JEG-United timely and properly executed its rights under Paragraph 7 obligating the parties to calculate the book value, obligating the Plaintiff to purchase the Mexico Businesses within ninety days of the exercise of the Put Option (by June 17, 2020), and, in turn, obligating Defendant JEG-United to sell the Mexico Businesses to the Plaintiff for a price equal to the book value of the Mexico Businesses by June 17, 2020.

63.     Defendant JEG-United breached the Side Letter Agreement, including a breach of Paragraph 7 (Put Option) when it: (i) refused to sell the Mexico Businesses to Planet Fitness by June 17, 2020; (ii) rejected Planet Fitness's calculation of the book value of the Mexico Businesses ($12,209,629); (iii) refused to execute the asset purchase agreement and related closing documents; and (iv) refused to execute the mutual release of claims.

64.     Damages alone are inadequate to cure this breach due to the unique nature of the Mexico Businesses and the Contract.

65.     The Plaintiff is entitled to specific performance of the Contract (Side Letter Agreement), plus all damages, costs, interest, and attorneys' fees in an amount within the jurisdictional limits of this Court.

66.     Additionally, all New Hampshire contracts include an implied covenant of good faith and fair dealing requiring parties to act fairly with one another and in good faith during contract formation and performance.

67.     The parties were obligated to perform their obligations under the Contract in accordance with the parties' reasonable and justifiable expectations, cooperate with the other's performance, and not evade their obligations.

68.     The Plaintiff justifiably expected that once Defendant JEG-United exercised the Put Option, it would fulfill its obligation to sell the Mexico Businesses to the Plaintiff for book value, execute the asset purchase agreement and related closing documents, including a mutual release of all claims.  Defendant JEG-United's efforts to prevent the sale and attempt to extract additional consideration beyond the contractually agreed-to purchase price in order to move forward with the sale of the Mexico Businesses violates the implied covenant of good faith and

fair dealing. Defendant JEG-United's refusal to sign a mutual release of all claims unreasonably denies Planet Fitness of an important benefit of the Contract.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

A. Declare the book value of the Mexico Businesses to be $12,209,629;

B. Declare that this valuation of $12,209,629, as set forth in Paragraph 7 of the Side Letter Agreement, is the appropriate purchase price for the Mexico Businesses;

C. Declare that the Contract required Defendant JEG-United to execute the asset purchase agreement (Exhibit E-1) and related closing documents (Exhibit E-2);

D. Declare that the Contract required Defendant JEG-United to execute the mutual release of claims (Exhibit F);

E. Declare that the Plaintiff has timely met its obligations to purchase the Mexico Businesses from the Defendant JEG-United;

F. Find that the Defendant JEG-United breached the Side Letter Agreement and order the Defendants to specifically perform under the Contract by requiring Defendants to: (i) sell the Mexico Businesses to Plaintiff for book value; (ii) execute the asset purchase agreement and related closing documents; and (iii) execute the mutual release of claims;

G. Grant the Plaintiff their costs, interest, and attorneys' fees; and

H. Order any other relief deemed appropriate and just.

Respectfully submitted,

**PLANET FITNESS
INTERNATIONAL FRANCHISE**

By Its Attorneys,

**SHEEHAN PHINNEY BASS & GREEN, PA**

Dated: June 19, 2020              By:  */s/ Patrick J. Queenan*
                                       Patrick J. Queenan, Esq. (#20127)
                                       James P. Harris, Esq (#15336)
                                       1000 Elm Street, 17th Floor
                                       Manchester, NH 03110
                                       (603) 668-0300
                                       pqueenan@sheehan.com
                                       jharris@sheehan.com

CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing was served on all counsel of record by filing same using the Court's ECF system.  I also emailed a copy of the foregoing to counsel for JEG-United.

Dated: June 19, 2020                     */s/ Patrick J. Queenan*
                                         Patrick J. Queenan (#20127)