# **EXHIBIT A**

## **SELLERS**

| Seller Entity Name | Jurisdiction | Owner | Ownership Percentage |
|---|---|---|---|
| [●] | [●] | [●] | [●] |
| [●] | [●] | [●] | [●] |

## EXHIBIT B

## LIST OF CLUBS & LEASES

1.   [●]

<u>**EXHIBIT C**</u>

<u>**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**</u>

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "<u>Agreement</u>"), dated as of [●], is by and between [●] a [●] ("<u>Assignor</u>"), and Planet Fitness Holdings LLC, a New Hampshire limited liability company ("<u>Assignee</u>"), pursuant to that certain Asset Purchase Agreement dated as of the date hereof by and among Assignor, Assignee, and the other parties named therein (the "<u>Purchase Agreement</u>").  Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them in the Purchase Agreement.

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      <u>Assignment and Assumption</u>.  The Assignor, for itself and its successors and permitted assigns, hereby assigns, contributes, transfers and sets over (collectively, the "<u>Assignment</u>") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to, and all of Assignor's burdens, obligations and liabilities in connection with, each of the Assumed Liabilities. Assignee hereby accepts the Assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignor to be observed, performed, paid or discharged, in connection with the Assumed Liabilities.

2.      <u>Terms of the Purchase Agreement</u>.  The terms of the Purchase Agreement are incorporated herein by this reference.  To the extent any conflict or inconsistency exists between the provisions of this Agreement and the Purchase Agreement, the provisions of the Purchase Agreement shall be controlling.

3.      <u>Further Actions</u>.  Each of the parties covenants and agrees, at its own expense, to execute and deliver, at the request of the other party hereto, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the Assignment and the transactions contemplated by this Agreement.

4.      <u>Governing Law</u>.  This Agreement will be governed by and construed under the laws of the State of New Hampshire without regard to conflicts of laws principles that would require the application of any other law.

5.      <u>Venue</u>.  Each of the Parties to this Agreement agrees that for any Action among any of the Parties relating to or arising in whole or in part under or in connection with this Agreement, such Party shall bring any Action in the state or federal courts of New Hampshire. Notwithstanding the previous sentence a Party may commence any Action in a court other than the above-named courts solely for the purpose of enforcing an order or judgment issued by one of the above-named courts.

6.      <u>Assignments and Successors</u>. No party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other party.

7.     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile, or by .pdf or similar imaging transmission, will constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the parties transmitted by facsimile, or by .pdf or similar imaging transmission, will be deemed to be their original signatures for any purpose whatsoever.

[*Signatures on following page*]

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement on the day and year first above written.

ASSIGNEE:

PLANET FITNESS HOLDINGS LLC

By:_____

Name:

Its:

ASSIGNOR:

[●]

By:_____

Name:

Title:

[SIGNATURE PAGE OF ASSIGNMENT AND ASSUMPTION AGREEMENT]

# BILL OF SALE

THIS BILL OF SALE ("Bill of Sale") is executed and delivered effective as of [●]by [●] (the "Seller"), in favor of **PLANET FITNESS HOLDINGS LLC** (the "Buyer").

WHEREAS, Seller desires to sell and Buyer desires to purchase, upon the terms and subject to the conditions contained herein, the Vehicle (as defined herein) by the Seller's execution and delivery to Buyer of this instrument evidencing the sale, conveyance, assignment, and transfer of the Vehicle to Buyer.

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Seller and Buyer agree as follows:

1.      The vehicle sold under this Bill of Sale ( the "Vehicle") is described as follows:

| Make | Model | Year | Color | Body Type |
|------|-------|------|-------|-----------|
| [●] | [●] | [●] | [●] | [●] |

| Cylinders | Odometer | VIN# |
|-----------|----------|------|
| [●] | [●] | [●]] |

2.      The Seller does hereby sell, transfer, assign and convey to Buyer and its respective successors and assigns, forever, all of the Seller's right, title and interest in and to the Vehicle.

3.      Seller and Buyer agree that the purchase price of the Vehicle is [●].

4.      Seller warrants that it holds legal and equitable title to the Vehicle, and the Vehicle is being sold free and clear of all encumbrances.

5.      Buyer agrees and acknowledges that the sale of the Vehicle is under "as-is, as-seen" terms.  Excepting the warranties stated in paragraph 4 above, the Seller provides no warranties, express or implied including, but not limited to, any implied warranties of merchantability or fitness for a particular purpose.

6.      In furtherance of the foregoing, Seller agrees that it will, at any time and from time to time, upon the reasonable request of the Buyer, do or cause to be done all such further acts and things and execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all papers, documents, instruments, agreements, assignments, transfers, assurances and conveyances as may be necessary or reasonably desirable to carry out and give effect to the provisions and intent of this Bill of Sale including, but not limited to, Seller's delivery to Buyer of the title to the Vehicle duly executed for transfer to Buyer.

7.      This Bill of Sale shall be construed and enforced in accordance with the laws (other than the conflict of law rules) of the **[●]**.

8.      This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

*[Remainder of page intentionally left blank - signature page follows]*

IN WITNESS WHEREOF, the Seller has caused this Bill of Sale to be signed and delivered as of the date first written above.

**SELLER:**
[●]

By:_____
Name:  [●]
Title:   [●]
          Duly Authorized

**BUYER:**
**PLANET FITNESS HOLDINGS LLC**

By:_____
Name:  Justin Vartanian
Title:   General Counsel & Secretary

**EXHIBIT E**

**FORM OF FIRPTA CERTIFICATE**

Reference is made to that certain Asset Purchase Agreement dated as of [●] (the "Purchase Agreement"), by and among [●], a [●] (the "Company"), the other parties named in the Purchase Agreement, and Planet Fitness Holdings LLC, a New Hampshire limited liability company ("Buyer"). Capitalized terms used herein and not otherwise defined herein have the meanings given to such terms in the Purchase Agreement.

Section 1445 of the Internal Revenue Code of 1986 (as amended, the "Code") provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform Buyer that withholding of tax is not required by Section 1445 of the Code in connection with the transactions contemplated by the Purchase Agreement, the undersigned hereby certifies on behalf of the Company the following as of the Closing Date:

1. The Company is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Code and the Treasury Regulations);

2. The Company is not a disregarded entity as defined in Treasury Regulations § 1.1445-2(b)(2)(iii);

3. The Company's U.S. employer identification number (EIN) is [_____]; and

4. The Company's principal office address is: [_____].

The Company understands that this certification may be disclosed to the U.S. Internal Revenue Service by Buyer and that any false statement contained herein could be punished by fine, imprisonment or both.

Under penalties of perjury, I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have the authority to execute this certification on behalf of the Company.

[●]

By:_____
Name:
Title:

CONSENT TO ASSIGNMENT AND ASSUMPTION OF LEASE

This Consent to Assignment and Assumption of Lease ("Consent") dated as of [June 17, 2020], is made by and among [●] ("Landlord"), a [●], having an address [●], [●] ("Assignor"), [●], having an address of [●] and **PLANET FITNESS HOLDINGS LLC** ("Assignee"), a  New Hampshire limited liability company, having an address of _____.

RECITALS

1.      By Lease dated [●], as supplemented by [Certificate Confirming Commencement Date dated] [[●] (collectively, the "Original Lease") Landlord did demise and let to Assignor, and Assignor did hire and take from Landlord, a portion of the Landlord's real estate known as the [●], as more particularly described in the Original Lease (the "Demised Premises").

2.      By Assignment of Lease dated [●] ("Assignment and Assumption"), Assignor assigned the Lease to Assignee and Assignee accepted the assignment and assumed the obligations of Assignor. The Original Lease, as amended by this Consent, is hereinafter referred to as the "Lease".

3.      By this Consent, Tenant has requested Landlord's consent to the Assignment and Assumption.

4.      Landlord is willing to execute the Consent, subject to all of the terms and provisions herein contained.

NOW, THEREFORE, for valuable consideration, the receipt and adequacy of which each of the parties does hereby acknowledge, the parties, intending to be legally bound, agree as follows:

AGREEMENT

**Section 1:  Recitals.**  The recital clauses set forth above are true and correct and are incorporated herein by reference as though set forth verbatim herein.

**Section 2:  Consent.**  Landlord hereby consents to the assignment of the Lease by Assignor to Assignee pursuant to the Assignment and Assumption, a true copy of which is annexed hereto as Exhibit A, but subject to the terms and provisions of this Consent.

**Section 3:  Expiration of Lease Term.**  Assignor and Assignee acknowledge and agree that the Lease expiration date is [●].

1

**Section 4: Consent Limited to the Assignment and Assumption.** This consent shall not be deemed a consent to the alteration of the Demised Premises, to the subletting of all or any portion of the Demised Premises, or to the further assignment of the Lease. Pursuant to the Lease, Landlord's consent in writing must be obtained prior to any further assignment of the Lease and prior to any alteration or subletting of the Demised Premises.

**Section 5: Assumption by Assignee.** Assignee hereby assumes all of the obligations of Assignor arising under the Lease from and after the date of the Assignment and Assumption (the "Assignment Date") and agrees to be bound by and to perform all of the terms, covenants, agreements, provisions, and conditions of the Lease on the part of the Tenant to be performed or observed under the Lease from and after the Assignment Date.

**Section 6: No Waiver or Release of Assignor.** This Consent, the occupancy of the Demised Premises by Assignee, the assumption of Assignor's obligations by Assignee, and the acceptance of rent by Landlord from Assignee shall not be deemed to be a waiver or release of any of the obligations of Assignor under the Lease.

**Section 7: Assignor's Waiver.** The liability of Assignor under the Lease, and the due performance by Assignor of the obligations on its part to be performed under the Lease, shall not be discharged, released or impaired in any respect by an agreement or stipulation made by Landlord or any grantee or assignee of Landlord, by way of mortgage or otherwise, extending the time of, or modifying or amending any of the obligations contained in the Lease, or by any waiver or failure of Landlord to enforce any of the obligations on Assignor's part to be performed under the Lease. If any such agreement or modification operates to increase the obligations of Assignee, or any of its successors or permitted assigns, under the Lease, the liability of Assignor or any of its successors in interest (unless such party shall have expressly consented in writing to such agreement or modification) shall continue to be no greater than if such agreement or modification had not been made. To charge Assignor and its successors in interest, no demand or notice of any default shall be required. Assignor for itself and each of its successors in interest hereby expressly waive any such demand or notice.

**Section 8: Obligations of Landlord Current.** Assignor represents that, as of the date hereof, all of the obligations of Landlord under the Lease have been complied with and performed by Landlord and any payments required to be made by Landlord to Assignor under the Lease have been made.

**Section 9: Representations True.** Assignee and Assignor each represents and warrants to Landlord that (a) the information supplied to Landlord by each of Assignee and Assignor in connection with obtaining this Consent (including, but not limited to, all summaries, financial statements, notices, and other documents) is true and complete; (b) no consideration has been or will be paid by Assignee for or in connection with the assignment of the Lease or the sale of any furniture, furnishings, fixtures, or

2

improvements in the Demised Premises that has not been disclosed in the Assignment and Assumption; and (c) Exhibit A is a complete and correct copy of the Assignment and Assumption and that there are no other agreements between them relating to the Assignment and Assumption, or the use or occupancy of the Demised Premises or the furniture, furnishings fixtures, or improvements therein. The representations and warranties contained in this paragraph shall be deemed incorporated in the Lease and the inaccuracy of any of such representations and warranties shall constitute a default under the Lease entitling Landlord to exercise any or all of the remedies for default provided in the Lease or otherwise available at law or in equity, provided, however, that each of Assignor and Assignee shall be responsible only for its own misstatements under clause (a) above.

**Section 10:  Notices.**  Any notice, demand, consent, approval, disapproval, or statement (collectively, "Notices") given under the Lease or under this Consent shall be given in accordance with the terms of the Lease addressed to the parties at the addresses for each first above set forth in this Consent.  Landlord, Assignor and Assignee each may designate a different address for Notices to it in a Notice given to the other parties under this Paragraph. This Consent shall not be effective until executed by each of Landlord, Assignee and Assignor.

**Section 11:  Governing Law.**  This Consent shall be governed and construed in accordance with the laws of the [●]without regard to conflicts of law rules.

**Section 12:  No Default.**  Landlord and Assignor confirm to Assignee that the Lease is in full force and effect. Landlord, Assignor and Assignee are unaware of any existing default by any other under the Lease, nor are any aware of any event that would, after notice and/or the passage of time, constitute a default by any other.

**Section 13:  Amendment.**  This Consent may not be amended, modified or revoked except by a writing signed by the party against whom enforcement of the amendment, modification or revocation is sought.

**Section 14:  Entire Agreement.**  This is the entire agreement among the parties. There is no other agreement, oral or written, relating to this Consent.

**Section 15:  Severability.**  If any provision of this Consent shall be determined to be invalid or unenforceable in any respect or in any jurisdiction, the remaining provisions of this Consent shall remain in full force and effect and shall be enforceable to the maximum extent permitted by applicable law.

**Section 16:  Counterparts.**  This Consent may be signed on any number of counterparts with the same effect as if the signatures were on the same instrument.

**Section 17:  Facsimiles.**  Electronic or facsimile signatures on this Consent shall be given the same effect as the original signatures.

**IN WITNESS WHEREOF**, the parties hereto have caused this instrument to be executed as of the day and year first written above.

[●]

By:_____

[●]                                                    [●]

[●]

By:_____

[●]

[●]

PLANET FITNESS HOLDINGS LLC

By:_____

Print Name:_____

Title:_____

## **EXHIBIT A**

ATTACH COPY OF ASSIGNMENT OF LEASE

## EXHIBIT G

### FORM OF ESCROW AGREEMENT

This ESCROW AGREEMENT (the "Agreement"), dated as of [●], is being delivered by and among [●], a [●] ("Seller"); [●] ("Seller Representative"); Planet Fitness Holdings LLC, a New Hampshire limited liability company ("Buyer"); and Devine, Millimet & Branch, P.A., as escrow agent (the "Escrow Agent"). Capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them in the Purchase Agreement (as defined below).

WHEREAS, concurrently with the execution and delivery of this Agreement, Buyer is purchasing the Acquired Assets of Seller, pursuant to the terms and conditions of that certain Asset Purchase Agreement, dated as of even date herewith (the "Purchase Agreement"), by and among Buyer, Seller, Seller Representative and the other parties named therein; and

WHEREAS, pursuant to the terms set forth herein, the parties intend to establish an Escrow Fund (as defined below) to be utilized to compensate the Buyer Indemnitees for claims that such persons may have pursuant to Section 6.2 of the Purchase Agreement; and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt, adequacy and legal sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. Appointment of Escrow Agent. Buyer and Seller hereby appoint Escrow Agent to act as escrow agent hereunder with respect to the Escrow Fund and the Bulk Sales Escrow Fund (sometimes collectively, the "Escrow Fund"), and Escrow Agent hereby accepts such appointment, for the purpose of receiving and disbursing the Escrow Fund and Bulk Sales Escrow Fund in accordance with the terms and conditions set forth herein.

2. Escrow Fund.

   a. At the Closing, Buyer shall deliver to Escrow Agent the sum of Two Million Five Hundred Thousand Dollars ($1,200,000.00) in cash by wire transfer to Escrow Agent's non-interest bearing IOLTA account, which within five (5) Business Days such funds will be transferred by Escrow Agent to an interest bearing account designated in writing by Escrow Agent (the "Escrow Fund"). The Escrow Fund shall be held by Escrow Agent for the benefit of Seller.

   b. Claims.

      i. From time to time on or prior to the Final Release Date, Buyer may give written notice (a "Claim Notice") to the Seller Representative and Escrow Agent specifying in reasonable detail the nature, and dollar amount of Losses, of any claim(s) that any Buyer Indemnitee may have under the Purchase Agreement (a "Claim"). If the Seller Representative gives written notice to Escrow Agent,

with a copy to Buyer, disputing any Claim (a "Counter Notice") within ten (10) Business Days (as defined below) following delivery of the Claim Notice by Buyer, such Claim will be resolved as provided in Section 2 c. ii. below. If no Counter Notice is delivered to Escrow Agent, with a copy to Buyer, within such ten (10) Business Day period, or if the Seller Representative provides written notice to Buyer and Escrow Agent stating that it will not be providing a Counter Notice on the specified Claim (a "Notice of Waiver"), then the dollar amount of the Losses set forth in the Claim Notice will be deemed established for purposes of this Agreement and the Purchase Agreement and, within ten (10) Business Days after (A) the end of such ten (10) Business Day period or (B) such earlier time that the Seller Representative provides the Notice of Waiver, Escrow Agent shall distribute to Buyer the dollar amount of Losses set forth in the Claim Notice in cash from the Escrow Fund. For purposes of this Agreement, "Business Day" means any day other than Saturday or Sunday on which the Federal Reserve Bank of New York is open.

ii. If a Counter Notice is given with respect to a Claim Notice, Escrow Agent shall not distribute to Buyer from the Escrow Fund the dollar amount of Losses set forth in the Claim Notice unless it has received: (i) joint written instructions of the Seller Representative and Buyer, or (ii) a final, nonappealable order of a court of competent jurisdiction accompanied by a legal opinion by counsel for the presenting party that the order is final and nonappealable or that the time to file an appeal has expired.

c. Escrow Fund Distributions; Termination of Escrow. On the Business Day immediately following the date that is twelve (12) months following the Closing Date (the "First Release Date"), Escrow Agent shall distribute fifty percent (50%) of the entire remaining balance of the Escrow Fund to Seller, except for a portion of the Escrow Fund equal to the sum of the dollar amount of any Claims that are pending and unpaid ("Pending Claims") as of the First Release Date. No less than ten (10) Business Days prior to the First Release Date, Buyer shall deliver to Escrow Agent and Seller Representative a notice setting forth the aggregate dollar amount to be withheld from the Escrow Fund in connection with any Pending Claims as of such date. On the Business Day immediately following the date that is twenty four (24) months following the Closing Date (the "Final Release Date"), Escrow Agent shall distribute the entire remaining balance of the Escrow Fund to Seller, except for a portion of the Escrow Fund equal to the sum of the dollar amount of any Pending Claims as of the Final Release Date. No less than ten (10) Business Days prior to the Final Release Date, Buyer shall deliver to Escrow Agent and Seller Representative a notice setting forth the aggregate dollar amount to be withheld from the Escrow Fund in connection with any Pending Claims as

of such date.  From time to time after the Final Release Date, as Pending Claims are resolved as provided in <u>Section 2 b. ii.</u> of this Agreement, Escrow Agent shall either pay the Claim to Buyer in the manner described in <u>Section 2 b. i.</u> or distribute to Seller the portion of the Escrow Fund that is related to any Claim resolved in favor of Seller (or, in the case of any Claim in respect of which Buyer receives a portion of the total amount of its Claim, the balance of such Claim not payable to Buyer).  After the final Pending Claim is resolved and paid in accordance with the terms of this Agreement, the entire remaining balance, if any, of the Escrow Fund shall be delivered to Seller. If any distributions from the Escrow Fund are to be made by a wire transfer, such Party requiring the wire shall provide Escrow Agent with all wiring and other information reasonably requested by Escrow Agent no later than five (5) Business Days prior to the date that such funds are to be distributed.

3.  <u>Responsibilities of Escrow Agent</u>.

   a.  Escrow Agent will not be liable for actions or omissions hereunder, except for its own gross negligence or willful misconduct and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against Escrow Agent, Buyer and Seller shall jointly and severally indemnify and hold harmless Escrow Agent (and any successor Escrow Agent) from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorneys' fees and disbursements, arising out of or related to this Agreement.  In the event that Buyer or Seller make any payment or incur any liability in connection with the indemnities granted to Escrow Agent under this <u>Section 4 a.,</u> such indemnifying party shall be entitled to contribution from the other indemnifying party or parties so that, in all cases, Buyer, on the one hand, and Seller, on the other hand, each bear fifty percent (50%) of the cost of such indemnification (except to the extent that such damages arise out of the negligence, willful misconduct or breach of this Agreement by Buyer or Seller, as applicable, but not both such parties, in which case either such offending party(ies) will be responsible for one hundred percent (100%) of the cost of indemnification).

   b.  Escrow Agent will be entitled to rely upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity of the service thereof.  Escrow Agent may act in reliance upon any instrument or signature believed by it to be genuine and may assume that the person purporting to give receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.  Escrow Agent may conclusively presume that the undersigned representative of any party that is an entity other than a

natural person has full power and authority to instruct Escrow Agent on behalf of that party unless written notice to the contrary is delivered to Escrow Agent.

c.   Escrow Agent may act pursuant to the advice of counsel with respect to any matter relating to this Agreement and will not be liable for any action taken or omitted by it in good faith in accordance with such advice.

d.   Escrow Agent does not have any interest in the Escrow Fund but is serving as escrow holder only and has only possession thereof.

e.   This Agreement expressly sets forth all the duties of Escrow Agent with respect to any and all matters pertinent hereto.  No implied duties or obligations will be read into this Agreement against Escrow Agent. Escrow Agent will have no liability or duty to inquire into the terms and conditions of any agreements (including the Purchase Agreement) to which Escrow Agent is not a party, its duties under this Agreement being understood to be purely ministerial in nature.

f.   Escrow Agent makes no representation as to the validity, value, genuineness or collectability of any security or other document or instrument held by or delivered to it.

g.   In the event of any disagreement between Buyer and Seller resulting in adverse claims or demands being made in connection with the Escrow Fund or in the event that Escrow Agent is in doubt as to what action it should take hereunder, Escrow Agent will be entitled to retain the Escrow Fund until Escrow Agent has received (i) joint written instructions of Seller and Buyer or (ii) a final, nonappealable order of a court of competent jurisdiction accompanied by a legal opinion by counsel for the presenting party that the order is final and nonappealable or that the time to file an appeal has expired.

4.   <u>Records</u>.  Escrow Agent shall maintain a record of all payments or releases from the Escrow Fund and any certificates or other notices given or received with respect to the Escrow Fund and shall provide copies of such records and an accounting with respect to the Escrow Fund to Buyer and Seller upon their request and to any successor Escrow Agent.

5.   <u>Resignation or Removal of Escrow Agent</u>.  Escrow Agent, or any successor Escrow Agent, may resign as Escrow Agent hereunder by giving written notice thereof to Buyer and Seller.  Such resignation shall become effective following such written notice upon the earlier of the appointment by Buyer and Seller of a successor Escrow Agent that accepts such appointment and agrees to be bound by the provisions of this Agreement, or the expiration of thirty (30) days thereafter. If, at the end of such thirty (30) day period, Escrow Agent has not received a

designation of a successor Escrow Agent, Escrow Agent's sole responsibility after that time will be to retain and safeguard the Escrow Fund until receipt of a designation of successor Escrow Agent or a joint written disposition instruction executed by Buyer and Seller, or Escrow Agent deposits the Escrow Fund with a state or federal court located in New Hampshire.  Buyer and Seller shall, by mutual written agreement, have the right to terminate the appointment of Escrow Agent hereunder by giving written notice thereof to Escrow Agent specifying the date upon which such termination shall take effect.  In the event of such termination, Escrow Agent shall turn over and deliver to any successor Escrow Agent (if so designated by Buyer and Seller) the Escrow Fund and a copy of the records and instruments held by Escrow Agent under this Agreement.

6.  <u>Fees and Expenses of Escrow Agent</u>.  Except as otherwise set forth in <u>Section 4 a</u> Seller and Buyer shall each be responsible to pay fifty percent (50%) of any and all fees charged or imposed on the parties by the Escrow Agent in consideration of the services to be provided hereunder by Escrow Agent. Buyer and Seller acknowledge that Escrow Agent charges a fee of [●] for the first year of this Agreement, which shall be paid by either Buyer or Seller to Escrow Agent upon execution of this Agreement (but subject to the 50% reimbursement), and an annual fee of [●]for each year thereafter during the term of this Agreement, which shall be paid by either Buyer or Seller to Escrow Agent (but subject to reimbursement) on or before each anniversary date of this Agreement. In addition, Seller shall reimburse Escrow Agent for all reasonable expenses, disbursements and advances incurred or made by Escrow Agent in performance of its duties hereunder (including reasonable fees, expenses and disbursements of its counsel).

7.  <u>Ownership for Tax Purposes</u>.  The parties agree that, for purposes of federal and other taxes based on income, Seller will be treated as the owner of the Escrow Fund and that Seller will report all income, if any, that is earned on, or derived from, the Escrow Fund as its income in the taxable year or years in which such income is properly includible and pay any taxes attributable thereto. Buyer and Seller shall provide Escrow Agent with all information reasonably requested by Escrow Agent in connection with the preparation of all applicable Form 1099 and Form 1042-S documents with respect to all distributions as well as in the performance of Escrow Agent's reporting obligations under applicable law or regulation.

8.  <u>Miscellaneous</u>.

a.  <u>Notices</u>.  All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (i) delivered by hand (with written confirmation of receipt), (ii) sent by facsimile with confirmation of transmission by the transmitting equipment, (iii) received by the addressee, if sent by certified mail, return receipt requested, or (iv) received by the addressee, if sent by a nationally recognized overnight delivery service, return receipt requested, in each

case to the appropriate addresses or facsimile numbers set forth below (or to such other addresses or facsimile numbers as a party may designate by notice to the other parties):

If to Seller or Seller Representative:

[●]

with a copy to:

[●]

If to Buyer:

> Planet Fitness Holdings LLC
> 4 Liberty Lane West
> Hampton, NH 03842
> Attention:  General Counsel

If to Escrow Agent:

> Devine, Millimet & Branch, P.A.
> 111 Amherst Street
> Manchester, NH 03101
> Attention: [●]

b.  <u>Waiver</u>.  Neither the failure nor any delay by any party in exercising any right under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, and no single or partial exercise of any such right will preclude any other or further exercise of such right or the exercise of any other right.   To the maximum extent permitted by applicable law, (i) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other parties; (ii) no waiver that may be given by a party will be applicable except in the specific instance for which it is given; and (iii) no notice to or demand on one party will be deemed to be a waiver of any obligation of such party or of the right of the party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the documents referred to in this Agreement.  The rights and remedies of the parties to this Agreement are cumulative and not alternative.

c.  <u>Entire Agreement and Modification</u>.  This Agreement (and the Purchase Agreement, solely as between Buyer and Seller) supersedes all prior agreements among the parties with respect to the subject matter hereof and constitutes a complete and exclusive statement of the terms of the agreement among the parties with respect to such subject matter.  This Agreement may not be amended except by a written agreement executed by Seller, Buyer, and Escrow Agent.

d.  <u>Assignment</u>.  No party may assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the other parties.

e.  <u>Severability</u>.  If any provision of this Agreement is held to be invalid or unenforceable for any reason by a court of competent jurisdiction and venue, such provision shall be ineffective to the extent of such invalidity or unenforceability; <u>provided</u>, <u>however</u>, that the remaining provisions will continue in full force and effect without being impaired or invalidated in any way unless such invalid or unenforceable provision or clause is so significant as to materially affect the expectations of the parties regarding this Agreement.  Otherwise, any invalid or unenforceable provision shall be replaced by the parties with a valid provision which most closely approximates the intent and economic effect of the invalid or unenforceable provision.

f.  <u>Headings; Construction</u>.  The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation.  All Schedules to this Agreement are incorporated into and constitute an integral part of this Agreement as if fully set forth herein.  All words used in this Agreement will be construed to be of such gender or number as the context requires.  The word "including" shall be read as "including but not limited to" and otherwise shall be considered illustrative and non-limiting.  The language used in the Agreement will be construed, in all cases, according to its fair meaning, and not for or against any party hereto.  The parties acknowledge that each party has reviewed this Agreement and that rules of construction, to the effect that any ambiguities are to be resolved against the drafting party, will not be available in the interpretation of this Agreement.

g.  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Hampshire without regard to the conflicts of laws provisions thereof.

h.  <u>Venue</u>.  Each of the Parties to this Agreement agrees that for any Action among any of the Parties relating to or arising in whole or in part under or in connection with this Agreement, such Party shall bring such Action in the state or federal courts of New Hampshire. Notwithstanding the

previous sentence a Party may commence any Action in a court other than the above-named courts solely for the purpose of enforcing an order or judgment issued by one of the above-named courts.

i.   <u>Execution of Agreement; Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile, or by .pdf or similar imaging transmission, will constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the parties transmitted by .pdf or similar imaging transmission, will be deemed to be their original signatures for any purpose whatsoever.

j.   <u>Further Assurances</u>.   The parties shall cooperate reasonably with each other and with their respective representatives and agents in connection with any steps required to be taken as part of their respective obligations under this Agreement, and the parties agree (a) to furnish upon request to the other parties such further information, (b) to execute and deliver to each other such other documents, and (c) to do such other acts and things, all as the other parties may reasonably request, for the purpose of carrying out the intent of this Agreement and the transactions contemplated hereby.

k.   <u>Survival</u>.  Any terms of this Agreement that survive the termination of this Agreement pursuant to the terms set forth herein will survive such termination in accordance with their terms.  In addition, the provisions of <u>Sections 4 a.</u>, <u>7</u>, <u>8</u> and <u>9</u> of this Agreement will survive the expiration or termination of this Agreement.

l.   <u>Force Majeure</u>.   No party shall be liable or responsible to the other parties, nor be deemed to have defaulted under or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement, when and to the extent such failure or delay is caused by or results from acts beyond the affected party's reasonable control, including, without limitation: (a) acts of God; (b) flood, fire or explosion; (c) war, invasion, riot or other civil unrest; (d) government order or law; (e) embargoes or blockades in effect on or after the date of this Agreement; (f) action by any governmental authority; and (g) national or regional emergency (each a "<u>Force Majeure Event</u>"). The party suffering a Force Majeure Event shall give notice to the other parties stating the period of time the occurrence is expected to continue, and shall use all diligent efforts to end the failure or delay and ensure the effects of such Force Majeure Event are minimized.

*[remainder of page intentionally left blank]*

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

### ESCROW AGENT:

DEVINE, MILLIMET & BRANCH, P.A.

By:_____
Name:
Title:

### BUYER:

PLANET FITNESS HOLDINGS LLC

By:_____
Name:
Title:

### SELLER:

[●]

By:_____
Name:
Title:

## EXHIBIT H

## FORM OF CLOSING DATE PAYMENT STATEMENT

### Closing Date: Effective 12:01 a.m., Eastern Time on [●]

Reference is made to that certain Asset Purchase Agreement dated and effective [●], by and among (i) Planet Fitness Holdings LLC, a New Hampshire limited liability company ("Buyer"); (ii) [●] a [●] (collectively, "Seller"); [●] ("Seller Representative"); and (iii) each individual equity owner listed on Exhibit A to the Purchase Agreement (the "Purchase Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Purchase Agreement.

This Closing Date Payment Statement including Exhibit A, attached hereto and incorporated herein, sets forth the payments, prorations and wire transfers to be made in connection with the Closing pursuant to Section 2.7 of the Purchase Agreement. The parties hereby agree to this Closing Date Payment Statement and to the disbursement of the funds in accordance with Exhibit A.

*[Signature Page Follows]*

**BUYER:**

PLANET FITNESS HOLDINGS LLC

By:_____ _____
Name: Justin Vartanian
Its:     General Counsel & Secretary

**SELLER:**

[●]

By:_____
Name:
Title:

**SELLER REPRESENTATIVE:**

[●]

By:_____
Name:
Title:

## <u>EXHIBIT I</u>

## **FORM OF ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT**

This Assignment and Assumption of Lease Agreement (this "Assignment"), is made as of [●], by and between [●] ("Tenant" or "Assignor"), and PLANET FITNESS HOLDINGS LLC ("Assignee").

### <u>Recitals</u>.

A.      [●] ("Landlord") and Assignor entered into a Lease dated as of [●] (the "Lease") for leased space at [●], New Jersey (the "Leased Premises").

B.      In connection with the transfer and sale of its Planet Fitness® franchised business to Assignee (the "Sale Transaction"), Assignor desires to transfer and assign all of its right, title and interest in and to the Lease to Assignee.

C.      Subject to the terms hereof, Assignee desires to accept the rights and assume all of the obligations of Assignor under the Lease with respect to the Leased Premises from and after the Effective Date (as defined below).

### <u>Agreement</u>.

1.      <u>Assignment and Assumption of Lease Obligations</u>. Assignor hereby sells, transfers, assigns, and delivers to Assignee all of its right, title, and interest of Assignor as Tenant in, to, and under the Lease with respect to the Leased Premises. Assignee hereby accepts and assumes from Assignor all of Assignor's right, title and interest in, to and under the Lease, and agrees to observe and perform any and all of the obligations and duties of Assignor as tenant under the Lease from and after the Effective Date.

2.      <u>Representations of Assignor; Waiver</u>. Assignor waives any and all claims, right, title or interest in and to the Lease or to the Leased Premises from and after the Effective Date.

3.      <u>Indemnity</u>. Assignor agrees to indemnify, defend and hold Assignee harmless for, from, and against all claims, demands, losses, damages, actions and causes of actions, expenses, and costs, including, but not limited to, reasonable attorneys' fees and expenses actually incurred, arising out of or in connection with Assignor's failure to observe, perform, and discharge the obligations and liabilities of Assignor as Tenant under the Lease for the period of time prior to the Effective Date. Assignee hereby agrees to indemnify, defend, and hold Assignor harmless for, from, and against all claims, demands, losses, damages, actions and causes of action, expenses, and costs, including, but not limited to, reasonable attorneys' fees and expenses actually incurred, arising out of or in connection with Assignee's failure to observe, perform, and discharge the obligations and liabilities of Assignee as Tenant under the Lease from and after the Effective Date.

4.     <u>Contingencies</u>. The Assignment will only become effective upon completion of all of the following:

a.     All charges due to Landlord by Tenant/Assignor are current including, without limitation, any rent charges and any fees due in connection with the s assignment of the Lease, and Assignee has reimbursed Assignor for any rent charges or other amounts paid by Assignor under Lease relating to periods from and after the Effective Date;

b.     This Assignment, including all exhibits, has been duly executed by Assignor and Assignee and a new Certificate of Insurance has been delivered to Landlord by Assignee pursuant to the terms of the Lease;

c.     The consummation of the Sale Transaction (the date on which the closing of the Sale Transaction occurs shall be referred to as the "Effective Date"); and

d.     The execution by Landlord of the Confirmation of Lease Terms and Consent of Landlord, in substantially the form attached hereto as <u>Exhibit A</u>.

5.     <u>Security Deposit</u>. Landlord shall retain any security deposit presently held by it on behalf of Tenant under the Lease, and any such security deposit is hereby assigned by Assignor to Assignee as part of this Assignment.

6.     <u>Condition of Leased Premises</u>. Assignee accepts the Leased Premises in its present condition without obligation of any kind on the part of Landlord and agrees to comply with all of the terms of the Lease from and after the Effective Date.

7.     <u>Assignor Rights</u>. Assignor waives any and all claims, right, title or interest in and to the assigned Lease or to the Demised Premises as of the Effective Date.

8.     <u>Assignee Rights</u>. All right and remedies available to Tenant contained in the Lease not expressly discharged by this Assignment are assigned to Assignee and shall survive this Assignment.

9.     <u>Further Assurances</u>.  Assignor and Assignee each agree to execute such other documents and perform such other acts as may be necessary or desirable to effectuate the intent of this Assignment, excluding, however, any acts or documents which would increase the obligations of Assignor or Assignee beyond that set forth herein.

10.     <u>Notices</u>. Beginning on the effective date of this Assignment, all notices to the respective parties shall be made to the following addresses:

To Landlord:

[●]

To Assignee:

Steve Venezia
Associate General Counsel, Real Estate
Planet Fitness World Headquarters
4 Liberty Lane West, Hampton, NH 03842
Phone: 603.294.0534
Email: Steve.Venezia@pfhq.com

11.     The Lease. The Lease is hereby incorporated into this Assignment as Exhibit B.

12.     Governing Law. This Assignment shall be governed by the laws of the State where the leased premises is located.

13.     Counterparts. This Assignment may be signed in any number of counterparts and a fully-executed electronic copy of this Assignment shall be deemed an original.

[SIGNATURE PAGE TO FOLLOW]

[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTON AGREEMENT]

**ASSIGNOR:**

**[●]**

By: _____

Name: _____

Title: _____


**ASSIGNEE:**

**PLANET FITNESS HOLDINGS LLC**


By: _____

Name: _____

Title: _____

<u>EXHIBIT A</u>

CONFIRMATION OF LEASE TERMS AND CONSENT OF LANDLORD

Pursuant to and in connection with that certain Assignment and Assumption of Lease Agreement dated of even date herewith (the "Assignment"), by and between [●]. ("Assignor"), and Planet Fitness Holdings LLC ("Assignee"), [●] ("Landlord") hereby consents to the assignment of the Lease to the Assignee and further represents and warrants to Assignee as follows:

(a)    the Lease is in full force and effect in accordance with and subject to all of the terms, covenants, conditions and agreements contained therein

(b)    The Commencement Date of the Lease is _____. Landlord delivered possession of the Premises to Tenant on _____.The Rent Commencement Date of the Lease is _____. The current expiration date of the Lease is _____. Tenant has _____ remaining options to renew for a period of ____ years each. Tenant's deadline to exercise its option to renew the lease is _____. The current monthly rent owed is _____. The current estimated monthly CAM payment, including taxes and all additional rent charges is _____. The next rent escalation occurs on _____. Landlord is in possession of a security deposit in the amount of _____.

(c)    the Lease has not been modified, amended or supplemented, except as set forth on <u>Exhibit B</u> to the Assignment;

(d)    Landlord has not received any notice of any termination or default under the Lease which remains uncured and, to the best of Landlord's knowledge, there does not exist any fact or circumstance which, in and of itself or with the giving of notice, the passage of time or both, would constitute a default under the Lease;

(e)    Landlord holds the entire Landlord's interest in the Leased Premises under the Lease free and clear of any liens, claims, mortgages, charges or encumbrances, subleases and occupancies (other than the Lease); and

(f)    Landlord has full right, power and authority to confirm the terms of the Lease and to, if necessary, grant its consent to the assignment of the Lease to the Assignee.

Capitalized terms used herein but not otherwise defined shall have the respective meanings ascribed to such terms in the Assignment.

IN WITNESS WHEREOF, Landlord has duly executed this Confirmation of Lease Terms and Consent of Landlord as of the _____ day of _____, 2020.

**LANDLORD:**

[●]

By: _____

Name: _____

Title: _____

EXHIBIT B

Lease