UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Planet Fitness International Franchise,<br><br>       Plaintiff, Counterclaim Defendant,<br><br>       v.<br><br>JEG-United, LLC,<br><br>       Defendant, Counterclaim and Third-Party Plaintiff.<br><br>       and<br><br>Ray Miolla,<br><br>       Counterclaim and Third-Party Defendant | Civil Action No. 1:20-cv-00693<br><br>**JURY TRIAL DEMANDED** |

## JEG-UNITED, LLC'S ANSWER TO AMENDED COMPLAINT, COUNTERCLAIMS, AND THIRD-PARTY CLAIMS

Defendant, Counterclaim Plaintiff, and Third Party Plaintiff, JEG-United, LLC ("JEG-United"), through its attorneys, Duane Morris LLP, respectfully submits the following Answer, Counterclaims and Third-Party Claims in response to the Amended Complaint of Planet Fitness International Franchise ("Planet Fitness").

## INTRODUCTION

Planet Fitness is known for its slogan, the "Judgment Free Zone," and its efforts to fight intimidation in the gym, or "gymtimidation." Unfortunately, Planet Fitness does not apply those same principles when dealing with its franchisees.

JEG-United is the combination of two of the most successful Planet Fitness franchises. With the encouragement of Planet Fitness and promises of an area development agreement

("ADA"), JEG-United and its predecessors spent years developing a plan to expand the Planet Fitness system in Mexico. But everything changed after Planet Fitness hired a new Chief Development Officer, Raymond Miolla ("Miolla"). Instead of working collaboratively with established and highly successful franchisees to cultivate and expand its business in Mexico, Planet Fitness embarked on a campaign of intimidation, unreasonable demands, and behind-the-back communications to prevent JEG-United from successfully developing locations throughout Mexico.

The parties agreed to negotiate in good faith about an ADA and form franchise agreement. But Miolla refused to do so and instead made "take it or leave it" demands that had no research, analysis, or support behind them. Behind the scenes, Miolla's conduct was even worse. Miolla contacted JEG-United's landlord, one of the largest retailers in Mexico, and instructed it not to talk with JEG-United. JEG-United's relationship with that landlord was critical to JEG-United's ability to open locations throughout Mexico and was highlighted as a key relationship in the plan JEG-United submitted to Planet Fitness.

Initially, it was unclear why Planet Fitness would turn its back on an accomplished franchisee that was committed to opening gyms throughout a new market. But now it is clear that Miolla had his own agenda. Miolla forced JEG-United to leave Mexico so he could steer the territory to his contact, Carlos Ibarra, who had no experience with the Planet Fitness system. Miolla even directed Planet Fitness employees to send Ibarra JEG-United's confidential information and Miolla interfered with a deal between Ibarra and JEG-United. While none of this misconduct benefited the Planet Fitness brand, the misconduct cost JEG-United tens of millions of dollars and five years of lost effort.

Planet Fitness continued its misconduct by filing this lawsuit to label itself as the plaintiff in this lawsuit. Remarkably, Planet Fitness alleges that JEG-United was unwilling to close at book value and that JEG-United withheld information related to a Put Option transaction. But JEG-United confirmed in writing that it was prepared to close at the book value calculated by Planet Fitness and that there was no outstanding information required by Planet Fitness. Rather, Planet Fitness breached the Put Option by, among other things, insisting on a price below the book value that Planet Fitness itself had calculated and by demanding a release of JEG-United's claims.

It is now time for Planet Fitness and Miolla to answer for their bullying conduct. JEG-United seeks damages exceeding $100 million based on conservative projections reviewed with Planet Fitness and exceeded by JEG-United's members when developing other territories with collaboration, instead of interference, from their franchisor.

**ANSWER**

The Introduction to Plaintiff's Complaint does not comply with Fed. R. Civ. P. 10 and no answer is appropriate. To the extent an answer is required, JEG-United denies the allegations in the Introduction and instead sets forth the Introduction above.

**I.      PARTIES AND RELEVANT NONPARTIES**

1.      Admitted upon information and belief.

2.      Admitted in part; denied in part. It is admitted that JEG-United is an LLC. It was formed, not incorporated, under the laws of Delaware. It is admitted that JEG-PF Mexico, LLC is a member of JEG-United with a principal place of business at 2800 Southampton Road, Philadelphia, Pennsylvania 19154. The other member of JEG-United is JEPF Mex, LLC, which has a principal place of business at 3839 Bee Caves Road, Suite 205, Austin, Texas 78746. All remaining allegations of Paragraph 2 of the Amended Complaint are denied.

## II.     JURISDICTION AND VENUE

3.        This Paragraph contains conclusions of law to which no answer is required.

4.        Admitted in part; denied in part.  Paragraph 4 of the Amended Complaint contains conclusions of law to which no response is required.  It is admitted that the Agreement states "the parties agree that any legal proceeding relating to this Side Letter Agreement or the enforcement of any provision of [it] shall be brought or otherwise commenced only in the State or Federal courts of the State of New Hampshire.  The parties irrevocably submit to the jurisdiction of such courts and waive any objection they may have to either jurisdiction of or venue in such courts."

5.        Admitted in part; denied in part.  This Paragraph contains conclusions of law to which no answer is required.  To the extent an answer is required, Defendant admits that this Court has personal jurisdiction over the parties and that many of Planet Fitness's acts at issue took place in New Hampshire.

6.        This Paragraph contains conclusions of law to which no answer is required.  By way of further response, see Paragraph 4 of this Answer above.

## III.    FACTUAL BASIS FOR CLAIMS

7.        Defendant is without sufficient knowledge to admit or deny the first two sentences and the last sentence of Paragraph 7 of the Amended Complaint.  To the extent that an answer is required, Defendant denies the allegations contained in those first two sentences and the last sentence. Defendant denies all remaining allegations of Paragraph 7 of the Amended Complaint.

8.        Admitted.  It is admitted that the parties were unable to negotiate an Area Development Agreement ("ADA") because, as detailed in JEG-United's Counterclaims below, Planet Fitness failed to negotiate in good faith as required by the Agreement.

9.        Admitted.

10.        Admitted in part; denied in part.  It is admitted that Planet Fitness and JEG-Mex, LLC entered a Side Letter Agreement on April 7, 2017.  That Side Letter Agreement is a document that speaks for itself and any characterization of it, including the reference to a "temporary" territorial protection, is denied.  By way of further response, Planet Fitness was not prepared to support JEG-Mex's operations in Mexico and agreed it was better to enter an ADA at a later date.

11.        Admitted in part; denied in part.  It is admitted that Planet Fitness and JEG-Mex, LLC entered into a second Side Letter Agreement on December 21, 2017. That Second Side Letter Agreement is a document that speaks for itself and any characterization of it is denied.  By way of further response, and as outlined in the Counterclaim, JEG-Mex, LLC was not unwilling to sign an ADA and that allegation is therefore specifically denied.

12.        Admitted in part; denied in part.  It is admitted only that JEG-Mex, LLC and United PF negotiated and ultimately formed JEG-United.  All remaining allegations of Paragraph 12 of the Amended Complaint are denied.

13.        Admitted in part; denied in part.  It is admitted only that the parties engaged in discussions and entered a March 5, 2019, Side Letter Agreement ("Agreement").  JEG-United is without knowledge sufficient to admit or deny Planet Fitness's practices in new countries.  JEG-United denies all remaining allegations in Paragraph 13 of the Amended Complaint.

14.        Admitted in part; denied in part.  It is admitted only that the parties engaged in discussions and entered the Agreement and that JEG-United was represented by counsel.  The Agreement is a document that speaks for itself and any characterization of it is denied. JEG-United denies all remaining allegations in Paragraph 14 of the Amended Complaint.

15.     Admitted in part; denied in part. It is admitted that the Agreement contains the quoted language at Paragraph 2. That Agreement is a document that speaks for itself and any characterization of it is denied.  JEG-United denies all remaining allegations in Paragraph 15 of the Amended Complaint.

16.     Admitted in part; denied in part. It is admitted that the Agreement contains a Put Option at Paragraph 7. That Agreement is a document that speaks for itself and any characterization of it is denied. JEG-United denies all remaining allegations in Paragraph 16 of the Amended Complaint.

17.     Admitted. It is admitted that Agreement contains the quoted language, without bolding, at Paragraph 7.

18.     Admitted in part; denied in part. It is admitted that the Agreement contains the quoted language at Paragraph 16. That Agreement is a document that speaks for itself and any characterization of it is denied.

19.     Admitted in part; denied in part. It is admitted that the Agreement contains, at Exhibit B, a "Non-Binding Summary of Proposed Terms."  That Agreement is a document that speaks for itself and any characterization of it is denied.

20.     Admitted in part; denied in part.  It is admitted that JEG-United is a sophisticated party and that JEG-United has worked successfully with Planet Fitness in the past and has entered into "several Area Development Agreements in various parts of the United States." JEG-United denies the remaining allegations in Paragraph 20 of the Amended Complaint.

21.     Admitted.  It is admitted that JEG-United and/or its affiliates and predecessors have developed four Planet Fitness clubs in Mexico and that development of another club is underway.

22.      Admitted in part; denied in part. It is admitted only that the parties did not agree on an ADA. As detailed below in JEG-United's Counterclaims, it was the bad faith of Planet Fitness, and Ray Miolla in particular, that prevented such an agreement. All remaining allegations of Paragraph 22 of the Amended Complaint are denied.

23.      Admitted in part; denied in part. It is admitted that JEG-United negotiated with a Mexican developer, Carlos Ibarra, for a transaction related to its five Planet Fitness clubs in Mexico. It is further admitted that JEG-United sought an extension of the Agreement. All remaining allegations of Paragraph 23 of the Amended Complaint are denied.

24.      Admitted in part; denied in part. It is admitted only that JEG-United wanted to extend the Agreement for reasons including the extension of the Put Option. It is denied that Trey Owen is or was a principal of JEG-United, but he does have an "indirect ownership interest" in JEG-United. All remaining allegations of Paragraph 24 of the Amended Complaint are denied.

25.      Admitted.

26.      Admitted.

27.      Admitted.

28.      Admitted in part; denied in part. It is admitted only that Planet Fitness agreed to an extension of the ADA negotiation period set forth in the Agreement. All remaining allegations of Paragraph 28 of the Amended Complaint are denied.

29.      Admitted in part; denied in part. It is admitted that Planet Fitness and JEG-United entered into an extension of the Agreement (the "Extension"). That Extension is a document that speaks for itself and any characterization of it is denied.

30.        Admitted in part; denied in part.  It is admitted that JEG-United sent an "exercise of Put Option for Mexico Businesses."  It is also admitted that negotiations with Ibarra were not moving forward, as detailed in the Counterclaims below, because of the tortious interference of Planet Fitness and Miolla.  All remaining allegations of Paragraph 30 of the Amended Complaint are denied.

31.        Admitted in part; denied in part.  It is admitted only that Planet Fitness accepted the notice.  It is expressly denied that Planet Fitness immediately commenced action to prepare for the purchase of the Mexico Businesses.

32.        Admitted in part; denied in part. It is admitted only that John Williams proposed a purchase price of $20,000,000 and that the quoted text, without context, appears in an email from Mr. Williams to Planet Fitness on April 3, 2020. All remaining allegations of Paragraph 32 of the Amended Complaint are denied.

33.        Admitted in part; denied in part.  It is admitted that Planet Fitness calculated a book value of approximately $13.8 million for the businesses. JEG-United denies that the $13.8 million figure was tied to an equity sale as further explained in the counterclaims below. The remaining allegations of Paragraph 33, including that Planet Fitness asked for and did not receive financial information and that JEG-United sought an equity sale, are denied.

34.        Admitted in part; denied in part.  It is admitted that Planet Fitness sent a draft MIPA on May 22, 2020, which included an aggregate purchase price of $13.8 million.   The remaining allegations of Paragraph 34 of the Amended Complaint are denied.

35.        Admitted in part; denied in part.  It is admitted that JEG-United sought to enter an asset sale agreement.  It is denied that this was a change of position.  It is admitted that Planet Fitness agreed to an asset sale.  It is denied that Planet Fitness sent closing documents with

"standard terms for transactions of this type" and denied that JEG-United inaccurately recorded its financial records. The remaining allegations of Paragraph 35 of the Amended Complaint are denied.

36.      Admitted in part; denied in part. It is admitted that Planet Fitness forwarded certain closing documents with a purchase price of $12,209,629 shortly before the deadline to close. It is admitted that a consultant of JEG-United, not a "representative," mentioned removing VAT tax from the "fixed asset schedules" but the selective quote is highly misleading as he also mentioned moving that item to "prepaid amounts." The remaining allegations of Paragraph 36 of the Amended Complaint are denied.

37.      Admitted in part; denied in part. It is admitted that JEG-United demanded the agreed purchase price of $13.8 million and refused to execute a release of claims. The remaining allegations of Paragraph 37 of the Amended Complaint are denied, including references to "standard" terms and documents.

38.      Admitted in part; denied in part. It is denied that Planet Fitness was committed to closing. It is admitted that Planet Fitness agreed to accept changes to the non-standard terms it had forwarded as long as JEG-United agreed to materially change the deal by signing a release and accepting less money. It is admitted that JEG-United rejected Planet Fitness's unilateral and material changes to the agreement. It is admitted that Planet Fitness belatedly provided a proposed purchase agreement and claimed at some point to have the funds available. It is denied that JEG-United failed to perform under the Contract or that Planet Fitness was prepared to timely perform. The remaining allegations of Paragraph 38 of the Amended Complaint, including those in footnote three, are denied.

39.      Denied.  JEG-United is without information  sufficient to form a belief as to the truth of the allegations  in Paragraph 39 of the Amended Complaint.

40.      Admitted.  It is admitted that counsel for JEG-United noted that JEG-United would continue  to build  and operate the businesses, which of course preserves those assets.

41.      Admitted in  part; denied in part. It is admitted only that Planet Fitness  filed an Amended Complaint  purporting  to exercise rights under the Put Option.  All remaining allegations  of Paragraph 41 are denied.

42.      Admitted in  part; denied in part.  It is admitted  that Planet Fitness  filed  suit and seeks relief.  To the extent there are any factual allegations  in Paragraph 42 of the Amended Complaint,  they are denied.

43.      Denied.

### IV.      CLAIMS FOR RELIEF

### COUNT I (Declaratory Judgment – 28 U.S.C. § 2201(a))

44.      JEG-United  incorporates  by reference Paragraphs 1-43 of this  Answer as if set forth herein.

45.      This Paragraph contains  legal conclusions  to which no answer is required. To the extent an answer is required,  the allegations  of Paragraph 45 of the Amended Complaint  are denied.

46.      This Paragraph contains a request for relief to which no answer is required.  To the extent an answer is required,  the allegations  of Paragraph 46 of the Amended Complaint  are denied.

47.      Admitted in  part; denied in part. It is admitted  that the quoted text appears in Paragraph 7 of the Agreement. That Agreement is a document  that speaks for itself and any characterization  of it is denied.

48.     Admitted in part; denied in part.  It is admitted that JEG-United provided balance sheet information to Planet Fitness.  It is admitted that Planet Fitness provided a calculation of book value.  The remaining allegations of Paragraph 48 of the Amended Complaint, including the allegations that JEG-United failed to provide information, are denied.

49.     Denied.  This Paragraph contains legal conclusions to which no answer is required.  It is denied that JEG-United demanded a purchase price above book value.  Rather, JEG-United provided the option to close at a price of book value with litigation to follow about Planet Fitness's improper conduct, or a sale price of $20 million with a release.  The remaining allegations of Paragraph 49 of the Amended Complaint are denied.

50.     Paragraph 50 of the Amended Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, the allegations of Paragraph 50 of the Amended Complaint are denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     This Paragraph contains a request for relief to which no answer is required.  To the extent an answer is required, the allegations of Paragraph 46 of the Amended Complaint are denied.

**COUNT II (Breach of Contract)**

59.     JEG-United incorporates by reference Paragraphs 1-58 as if set forth herein.

60.     Paragraph 60 of the Amended Complaint contains legal conclusions to which no response is required.

61.     Paragraph 61 of the Amended Complaint contains legal conclusions to which no response is required.

62.     Paragraph 62 of the Amended Complaint contains legal conclusions to which no response is required. By way of further response, it is admitted that JEG-United timely and properly executed the Put Option.

63.     Denied.

64.     Denied.

65.     Paragraph 65 of the Amended Complaint contains legal conclusions to which no answer is required. To the extent an answer is required, the allegations of Paragraph 54 are denied.

66.     Paragraph 66 of the Amended Complaint contains legal conclusions to which no answer is required.

67.     Paragraph 67 of the Amended Complaint contains legal conclusions to which no answer is required.

68.     Denied.

## AFFIRMATIVE DEFENSES

## AFFIRMATIVE DEFENSE 1

Planet Fitness's claims fail because of Planet Fitness's own prior material breach of the Agreement.

## AFFIRMATIVE DEFENSE 2

Planet Fitness's claims fail because Planet Fitness did not satisfy all conditions necessary to perform under the Put Option and Planet Fitness was not prepared to timely close the Put Option.

### AFFIRMATIVE DEFENSE 3

Planet Fitness interfered with JEG-United's ability to perform its obligations under the Agreement.

### AFFIRMATIVE DEFENSE 4

Planet Fitness's claims are barred in full or in part by the doctrine of unclean hands.

### AFFIRMATIVE DEFENSE 5

Planet Fitness's claims are barred by the doctrine of estoppel.

### AFFIRMATIVE DEFENSE 6

Planet Fitness's claims may be barred by duress and/or fraudulent inducement.

JEG-United reserves the right to raise, assert, and rely upon addition defenses.

WHEREFORE, JEG-United respectfully requests that the Court enter judgment in its favor, and against Planet Fitness on all counts of the Amended Complaint, and that the Court award JEG-United its attorneys' fees and all other relief the Court deems just and equitable.

<u>**JEG-UNITED'S COUNTERCLAIMS**</u>

Pursuant to Rules 13, 19 and 20, JEG-United Counterclaims (the "Counterclaims") against Planet Fitness International Franchise and brings third party claims against Raymond Miolla  as follows:

## I.      <u>PARTIES</u>

1.      Counterclaim Plaintiff, JEG-United, LLC ("JEG-United") is a limited liability company formed under the laws of Delaware.  JEG-United, LLC's members are JEG-PF Mexico, LLC, with a principal place of business at 2800 Southampton Road, Philadelphia, Pennsylvania 19154 and JEPF Mex, LLC, which has a principal place of business at 3839 Bee Caves Road, Suite 205, Austin, Texas 78746.

2.      Counterclaim Defendant Planet Fitness International Franchise ("Planet Fitness") is an exempted company formed under the laws of the Cayman Islands which claims to have a principal place of business at 4 Liberty Lane West, Hampton, New Hampshire 03842.

3.      Counterclaim Defendant Raymond Miolla ("Miolla") is an individual with a principal place of residence in North Hampton, New Hampshire.

## II.      <u>JURISDICTION AND VENUE</u>

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000  and pursuant to 28 U.S.C. § 1367(a).

5.      The Court has personal jurisdiction over Counterclaim Defendant Planet Fitness because it is a citizen of New Hampshire, it has consented to jurisdiction in this Court by filing the underlying  Complaint,  and pursuant to the March 5, 2019 Side Letter Agreement ("Agreement") in which it consented to jurisdiction in in this Court.

6.      This Court has personal jurisdiction over Counterclaim Defendant Miolla because he is a citizen of New Hampshire. Miolla is a required party pursuant to Federal Rule of Civil Procedure 19 and his joinder does not deprive this Court of jurisdiction.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b) as to both Planet Fitness and Miolla and venue is appropriate in this Court as to Planet Fitness because it consented to venue in this Court by filing the underlying Complaint and pursuant to the Agreement in which in consented to venue in this Court.

## III.    FACTS

### A.    JEG-Mex LLC creates a plan to develop Planet Fitness gyms throughout Mexico

8.      JEG-United is the joint venture of two successful Planet Fitness franchise groups with strong records of developing and operating Planet Fitness businesses. Together these franchise groups invested more than $500 million, opened and operated 170 Planet Fitness clubs, both domestic and international, and attracted over 1.1 million members for the Planet Fitness system.

9.      Beginning in 2015, JEG-United's predecessor, JEG-Mex, LLC, began reviewing development opportunities in Mexico. JEG-Mex's goal was to undertake a widespread development of the Planet Fitness franchise all across Mexico. In furtherance of this plan, and with the knowledge and encouragement of Planet Fitness, JEG-Mex spent years developing a detailed, thoughtful, and aggressive business plan to open gyms and build the Planet Fitness system throughout Mexico.

10.     This plan included detailed real estate and market studies by retained experts as well as critical strategic alliances and relationships with brokers, marketing agencies, government agencies, local officials, contractors, landlords and others. JEG-Mex, LLC worked

to develop the entire marketing strategy for the entire Mexican market at its sole expense. Further, JEG-Mex developed critical operational standards and practices (payment systems, construction standards, banking integration, leadership development & training) necessary to successfully develop the Planet Fitness brand in Mexico. JEG-Mex, LLC expected that Planet Fitness, as the franchisor, would have undertaken much of this work as it had agreed to do, but JEG-Mex was forced to do so itself.

11.      JEG-Mex and Planet Fitness then negotiated and agreed to a Franchise Agreement specific to the Mexican market for a limited, five-club development in the Monterrey market. The JEG-Mex team, at their sole expense, conducted a formal Strategic Planning Session on Mexico at Planet Fitness' headquarters in New Hampshire in August 2017. Planet Fitness approved this plan. The intention was that the parties would later enter into a large ADA for the remainder of Mexico after opening the first location in Mexico in the second quarter of 2018.

12.      The Parties agreed that a full ADA in August 2017 was premature but two side letter agreements were negotiated in 2017, which set the stage for the development of the Mexican market.

13.      JEG-Mex successfully opened its first Planet Fitness location on April 26, 2018 and Planet Fitness' CEO, among others, flew to Mexico to celebrate the occasion.

**B.      JEG-United forms to pursue an area development agreement with Planet Fitness but Miolla pursues his own agenda to favor Carlos Ibarra**

14.      Following the successful opening of the first Planet Fitness location in Mexico, JEG-Mex, which was soon to become JEG-United, attempted to negotiate the long-awaited Area Development Plan ("ADA") for the entire Mexican market.

15.      In the summer of 2018, JEG-Mex joined with members of the highly successful Planet Fitness franchise group, United PF Holdings, LLC. Eventually, the combination would

become JEG-United.  Planet Fitness knew of and approved this combination.  For purposes of clarity, that group shall be referred to herein as JEG-United.

16.       JEG-United was first introduced to Miolla, Planet Fitness's new Chief Development Officer, in July 2018. JEG-United was in the process of finalizing a second location in Mexico, at a space owned by Soriana, a retail chain with more than 800 stores. Soriana was a critical relationship for JEG-United because it had many suitable locations where JEG-United could build Planet Fitness gyms. Miolla refused to approve this second location, forcing JEG-United's CEO to contact Planet Fitness's CEO. Only after JEG-United was forced to involve Miolla's boss, did Miolla approve the second location. This episode was the first indication that Miolla would obstruct JEG-United's efforts to develop the Mexico market.

17.       JEG-United presented its development plan to the Planet Fitness team in September 2018.  Planet Fitness's Executive team called the presentation the "gold standard" of Planet Fitness development plans. The Planet Fitness Executive team agreed to provide the terms of an ADA within one week.

18.       After the September 2018 meeting, JEG-United made repeated attempts to formalize an ADA. Although the Planet Fitness "C-Suite" had been very receptive to JEG-United's plan and an ADA, and even promised to provide an ADA within one week, Planet Fitness's Chief Development Officer, Miolla, sabotaged it from the beginning.

19.       Miolla determined, without justification or explanation, to dramatically reduce JEG-United's proposed territory from all of Mexico to just one city, Monterrey and the surrounding area.

20.       As early as the fall of 2018, Miolla began carving out territory throughout the rest of Mexico for another potential franchisee led by Carlos Ibarra. Unlike JEG-United, which had

- 17 -

extensive experience in the Planet Fitness system and had successfully opened and operated a

Planet Fitness gym in Mexico, Ibarra had no experience with Planet Fitness or operating gyms in

Mexico or anywhere else. Ibarra apparently still has not committed to develop Planet Fitness

locations in Mexico. In fact, JEG-United had already opened one Planet Fitness location in

Mexico but had to develop its own operational standards customized for Mexico, without much

input or help from Planet Fitness, because Planet Fitness would not provide such standards.

Traditionally, the development of country-specific standards is the responsibility of the

franchisor, not the franchisee.

### C.   The parties enter the Agreement

21.     After months without receiving any further written agreement for the

development of the Mexican business, JEG-United and Planet Fitness entered into the

Agreement in which the parties agreed to work in good faith towards signing an ADA for

Monterrey, Saltillo, and Torreon with rights to further additional areas to be discussed as

identified in Exhibit B.

22.     Paragraph 2 of the Agreement, titled Potential for Future Agreements, provides

that:

> JEG-United and [Planet Fitness] are currently in discussions regarding a potential
> Area Development Agreement (the "Potential ADA") for the Monterrey, Mexico
> metropolitan area, ("Monterrey"), the municipal boundaries of Saltillo, Mexico
> ("Saltillo"), and the municipal boundaries of Torreón, Mexico (collectively, the
> "Potential Territory"), as further described in Exhibit A attached hereto. [Planet
> Fitness] hereby agrees to continue with good faith negotiations with JEG-United
> on the Potential ADA until December 31, 2019, consistent with the non-binding
> summary of terms outlined on Exhibit B hereof.

23.     Paragraph 2 of the Agreement was extended (the "Extension") on January 28,

2020 to permit negotiations for the Potential ADA to continue through June 30, 2020.

24.     Paragraph 5 of the Agreement, titled Variations Related to Mexico, provides that:

[Planet Fitness] acknowledges that certain interim policies, procedures, requirements, and standards ("Standards") with respect to PLANET FITNESS businesses in Mexico have not yet been incorporated into its Methods of Operation. [Planet Fitness] confirms that it has permitted certain localization of its U.S. Standards for existing PLANET FITNESS businesses in Mexico and will continue to permit such localization until Standards for Mexico have been developed. Neither JEG-United's (i) compliance with such agreed localization nor (ii) reasonably necessary variation from applicable Standards, shall be a breach of any Current Franchise Agreement or Additional Franchise Agreement executed prior to the adoption of updated Standards for Mexico. [Planet Fitness] agrees to use its reasonable efforts to develop Standards for Mexico.

25.       Paragraph 7 of the Agreement, titled Put Option, provides that:

If the Potential ADA is not executed by the end of the Potential ADA Negotiation Period, JEG-United shall have the right, exercisable by written notice delivered to [Planet Fitness] within thirty (30) days from the end of the Potential ADA Negotiation Period, to sell the Initial Businesses and the Additional Businesses (collectively, the "Mexico Businesses") to [Planet Fitness]. Upon receipt of JEG-United's notice, [Planet Fitness] shall have ninety (90) days to purchase the Mexico Businesses for a price equal to the book value of the Mexico Businesses. The book value of each Mexico Business shall be calculated as the shareholder's equity of such business as of the date of determination, computed in accordance with generally accepted accounting principles, less any goodwill and other intangible assets (including franchise rights) reported by such business on its balance sheet. [Planet Fitness] shall be entitled to receive, and JEG-United and its owners agree to make, all customary representations and warranties given by the seller of the assets of a business or the capital stock of an incorporated business, as applicable, including, without limitation, representations and warranties as to: (a) ownership and condition of and title to stock or other forms of ownership interest and/or assets, (b) liens and encumbrances relating to the stock or other ownership interest and/or assets; and (c) validity of contracts and the liabilities, contingent or otherwise, of the entity whose stock is being purchased.

26.       In short, the Put Option requires Planet Fitness to buy the Mexico Businesses from JEG-United if an ADA is not executed. The Extension further permitted either party to provide written notice that it was ending the ADA Negotiation Period, thereby triggering the 90-day window in which Planet Fitness was required to buy the Mexico Businesses.

27.       Exhibit B to the Agreement contained a Non-Binding Summary of Proposed Terms that would be included in the Potential ADA. Paragraph 2 provides that "[Planet Fitness] and JEG-United will work in good faith to determine a mutually agreeable development schedule

for the Potential ADA (the "Development Schedule")." Paragraph 4 provides that "JEG-United and [Planet Fitness] will work in good faith to mutually agree on a form franchise agreement for PLANET FITNESS locations developed pursuant to the Potential ADA…"

> **D.      Planet Fitness breaches the Agreement**

28.      For years, JEG-United repeatedly expressed that it needed a large ADA in Mexico to properly and successfully scale up its operations.  Planet Fitness, however, failed to participate in any meaningful discussion, let alone good faith discussions, about a development schedule for the ADA.

29.      Paragraph 2 of the Agreement required Planet Fitness to negotiate about a development scheduled in good faith.

30.      JEG-United retained a market expert, the Alles Group, at their sole expense, to analyze the real estate market and competitive landscape in the Potential Territory.  JEG-United arranged for a presentation by the Alles Group, a tour of certain locations, and a series of meetings to negotiate an appropriate development schedule during May 27-29, 2019. Miolla was invited to this meeting but refused to attend.

31.      Jennifer Annello, Director of Real Estate for Mexico, attended on behalf of Planet Fitness.  The group agreed to a reasonable development schedule that included 20 Planet Fitness gyms, including several locations that JEG-United had opened or begun to develop.  JEG-United believed Ms. Annello, as a Director and as the single Planet Fitness representative with any engagement whatsoever in Mexico, had the authority to make such determinations.  As JEG-United would later learn, Miolla effectively stripped Ms. Annello of any authority to negotiate and inserted himself in the negotiations, over Ms. Annello's head, at the detriment of JEG-United.

32.       Miolla, rejected the proposed development schedule without offering any explanation.  Miolla demanded an unrealistic development schedule with 30 locations, in addition to the five already under development, for a total of 35 locations for the now much smaller territory he insisted upon.  Miolla offered no data or analysis to support his proposed development schedule, requiring 75% more clubs in the territory than preliminarily proposed by both parties.

33.       JEG-United proposed a reasonable development schedule based on data, recommendations from market experts, and arrived at through discussions that included the Planet Fitness representative responsible for the Mexico market. Miolla offered no data, no explanation, and no discussion to support his demand for 35 clubs in the limited territory.  Planet Fitness's arbitrary, baseless demands cannot be considered good faith by any standard.

34.       Planet Fitness also recognized that the negotiation of a form franchise agreement for the clubs developed under the ADA was essential.  For example, Paragraph 4 of Exhibit B to the Agreement stated "JEG-United and International Franchisor will work in good faith to mutually agree on a form franchise agreement for Planet Fitness locations developed pursuant to the Potential ADA."

35.       Planet Fitness and Miolla, however, once again failed to engage in any negotiations for a form franchise agreement for the Mexico locations.

36.       JEG-United had five existing franchise agreements in Mexico with terms that had been negotiated over years and had been mutually agreed upon.  In addition to the Agreement, JEG-United also had a "Non-Binding Summary of Proposed Terms" to guide their discussions related to future franchise agreements.

37.     Instead of working with the lone franchisee-operator in Mexico, JEG-United, on any proposed changes to the franchise agreement, Planet Fitness provided a "take it or leave it" franchise agreement with materially different terms than the existing five franchise agreements that JEG-United or its affiliates already had in place with Planet Fitness.  Many of the changes were so averse to the business that the take it or leave it draft materially changed JEG-United's view on the ability to operate new locations in Mexico moving forward.

38.     Miolla's take it or leave it proposal was not a negotiation, and certainly not a good faith negotiation.   Instead, it was just another clear indication that Miolla was driving JEG-United away from Mexico to preserve it for Ibarra.

39.      Planet Fitness also failed to "use its reasonable efforts to develop Standards for Mexico," as required by Paragraph 5 of the Agreement.  These Standards were critical for the efficient development of many clubs in Mexico.

40.     Although it was Planet Fitness's obligation to develop Standards, as is typical for franchisors, JEG-United was willing to help to expedite the process because it had experience developing some standards for its already-operating location in Mexico. Indeed, JEG-Mex's entire operational team previously visited Planet Fitness' headquarters in New Hampshire in August 2017, at JEG-Mex's sole expense, to help develop the Standards that Planet Fitness was required to develop for the first clubs that JEG-Mex had already developed and was operating in Mexico. Planet Fitness approved and endorsed the plan. Planet Fitness put David Escobar in charge of finalizing and executing the Standards. However, Planet Fitness took no steps towards developing any of the required Standards under the Agreement despite JEG-United's many offers over the years to help and lend its expertise.

E.     **Planet Fitness interferes with relationships that would have helped JEG-United develop its territory**

41.      It was essential to the development of the territory that JEG-United have the ability to enter a significant number of leases at locations appropriate for Planet Fitness gyms as there is a dearth of big box retail opportunities in Mexico.  Accordingly, JEG-United developed a relationship with Soriana, a retail chain with more than 800 stores.  Many of these Soriana locations included space that would be ideal for Planet Fitness locations.  JEG-United had worked with Soriana to put together a portfolio of potential locations for sublease, identifying the value of having Planet Fitness as a co-tenant throughout Mexico.

42.      JEG-United's relationship led to a lease with Soriana for one of its Planet Fitness locations.  JEG-United had positive discussions with Soriana about additional locations and reasonably expected to build a number of Planet Fitness gyms on Soriana's properties.

43.      JEG-United viewed its relationship with Soriana as critical to its success in Mexico.  JEG-United expressed this view to Planet Fitness and Miolla.

44.      Miolla, however, interjected himself between JEG-United and Soriana without JEG-United's knowledge or consent. Upon information and belief, Miolla instructed Soriana not to deal with JEG-United.

45.      At Miolla's instruction, Soriana refused to negotiate further with JEG-United.

46.      Additionally, Planet Fitness interfered with JEG-United's efforts to purchase various locations owned by California Fitness, a gym based in Mexico and a competitor of Planet Fitness. California Fitness planned to expand into Northern Mexico, where JEG-United was already operating locations.

47.      The purchase would have accelerated the growth of the Planet Fitness brand in Mexico, eliminated a knock-off competitor and cleaned up certain intellectual properties issues between the two brands. Planet Fitness had recently taken a similar approach with a competitor

during Planet Fitness' expansion in Australia and is currently assisting with similar issues in Ireland and the United Kingdom.

48.      Once again, Miolla ended JEG-United's efforts to develop its territory by ending the discussions with California Fitness.

49.      In sum, while insisting on an unreasonable development schedule, Miolla interfered with relationships that could have helped JEG-United successfully develop a territory. Miolla's actions did not benefit Planet Fitness. Instead, his intent seemed to be solely to harm JEG-United and its efforts to expand.

> **F.      JEG-United reaches a deal to sell its clubs to Ibarra but Planet Fitness and Miolla once again interfere with JEG-United's business so that they can steer the territory and clubs to Ibarra at a discounted price**

50.      After it became clear that Miolla would not permit JEG-United to succeed in Mexico, JEG-United agreed to a meeting with Miolla's favored potential franchisee, Ibarra.

51.      JEG-United explored with Ibarra and his company, the Ibarra Group, ways to collaborate as independent franchises, or to potentially work together to accelerate the growth of the Planet Fitness brand in the competitive Mexican market.

52.      Notably, during the meetings, Ibarra claimed that the value he brought to the table was his relationship with Soriana, the same company that JEG-United had cultivated a relationship with and before interference from Miolla and Planet Fitness.

53.      The meeting in Mexico went well between JEG-United, Planet Fitness and the Ibarra Group. Shortly thereafter, JEG-United and the Ibarra Group conducted due diligence sessions and came to a win/win framework, in writing, on a partnership in Mexico by early January 2020.

54.      Upon information and belief, Miolla then interjected himself into the discussions between JEG-United and the Ibarra Group. Subsequently, the Ibarra Group went silent.

55.      Miolla's  motives  are now clear.  Miolla  acted for the sole purpose of preserving the vast majority  of Mexican market for Miolla's  friend and associate, Ibarra.

56.      Upon information  and belief, Planet Fitness has been forwarding JEG-United's confidential  information  to Ibarra, who had no contractual or binding  relationship  with Planet Fitness.  This information  eventually  landed in the hands of JEG-United's direct competitors, as well as competitors of Planet Fitness in Mexico, to the obvious  and deleterious  effect on both JEG-United and the Planet Fitness brand.

**G.      JEG-United exercises the Put Option and Planet Fitness files a baseless suit because it was not prepared to close**

57.      Unfortunately and regrettably, after five years of effort, JEG-United was forced to exercise the Put Option in the Agreement, given the failure of Planet Fitness to negotiate in good faith and the continued  interference by Planet Fitness in JEG-United's ability  to conduct business in Mexico.

58.      JEG-United properly  exercised its Put Option on March 19, 2020. As a result, Planet Fitness was obligated  to purchase Mexico Businesses within 90 days. The 90-day window expired on June 17, 2020.

59.      Planet Fitness calculated the book value of the Mexico Businesses to be $13.8 million.   JEG-United very clearly stated it was willing  go forward with the transaction at that value and would litigate  its disputes with Planet Fitness afterwards.

60.      Nonetheless, Planet Fitness filed this lawsuit and falsely claimed that JEG-United would not go forward with the transaction at $13.8 million.   Remarkably,  days later, after JEG-United again reiterated it would  close a $13.8 million  asset sale with Planet Fitness, Planet Fitness attempted to change the price and offered to close by paying only $12 million.

61.      Further, though Planet Fitness had originally agreed that no release was required for the Put Option, Planet Fitness reversed course and attempted to include a release as part of the transaction.

62.      It became obvious that Planet Fitness was not prepared to close within 90 days as required by the Agreement. This was yet another breach of the Agreement by Planet Fitness.

## IV.    CAUSES OF ACTION

### COUNT I (BREACH OF CONTRACT)
### JEG-United v. Planet Fitness

63.      JEG-United realleges and incorporates by reference all preceding allegations contained in its Counterclaims and third party claim as if set forth herein.

64.      The Agreement is a valid and enforceable agreement entered into between JEG-United and Planet Fitness.

65.      Article 2 of the Agreement provides that Planet Fitness "hereby agrees to continue with good faith negotiations with JEG-United on the Potential ADA until December 31, 2019, consistent with the non-binding summary of terms outlined on Exhibit B hereof." The Extension Agreement extended the December 31, 2019 date to June 30, 2020.

66.      Article 2 of Exhibit B of the Agreement provides that Planet Fitness and JEG-United "will work in good faith to determine a mutually agreeable development schedule for the Potential ADA."

67.      Article 4 of Exhibit B of the Agreement provides that "JEG-United and [Planet Fitness] will work in good faith to mutually agree on a form franchise agreement for PLANET FITNESS locations developed pursuant to the Potential ADA."

68.      Agreements to negotiate in good faith are binding on the parties.

69.     Planet Fitness breached Article 2 of the Agreement and Articles 2 and 4 of Exhibit B to the Agreement by failing to participate in any good faith negotiations for the ADA, the development schedule, or thr form franchise agreement to be included in the ADA.

70.     Planet Fitness breached Paragraph 5 of the Agreement by failing to use reasonable efforts to develop Standards for Mexico.

71.     JEG-United properly exercised its Put Option on March 19, 2020. As a result, Planet Fitness was obligated to purchase Mexico Businesses within 90 days, which was June 17, 2020.

72.     However, even after it filed suit seeking specific performance to buy the businesses for $13.8 million, Planet Fitness insisted on a purchase price of $12 million at the last minute. Further, Planet Fitness insisted on a release of claims as part of the transaction.

73.     Planet Fitness breached Article 7 of the Agreement by failing to purchase the Mexico Businesses.

74.     As a result of all breaches described herein, JEG-United has suffered significant economic damages including direct costs, consequential damages, and lost profits.

### COUNT II (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH PERFORMANCE AND FAIR DEALING) JEG-United v. Planet Fitness

75.     JEG-United realleges and incorporates by reference all preceding allegations contained in its Counterclaims and third party claim as if set forth herein.

76.     Every contract governed by New Hampshire law contains an implied covenant of good faith performance and fair dealing.

77.    Planet Fitness breached the implied covenant of good faith performance and fair dealing by refusing to negotiate in good faith, or negotiate at all, the necessary terms of an ADA for Mexico or a reasonable Franchise Agreement.

78.    As a result of all breaches described herein, JEG-United has suffered significant economic damages including direct costs, consequential damages, and lost profits.

### COUNT III (TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE BUSINESS RELATIONSHIPS)
### JEG-United v. Planet Fitness and Raymond Miolla

79.    JEG-United realleges and incorporates by reference all preceding allegations contained in its Counterclaims and third party claim as if set forth herein.

80.    JEG-United spent years cultivating a relationship with Soriana, one of the largest retailers in Mexico as part of its plan to develop the Planet Fitness brand and franchise in Mexico.

81.    JEG-United entered into a lease agreement with Soriana and reasonably expected to enter many more such agreements throughout its territory.

82.    Planet Fitness knew of JEG-United's relationship with Soriana. After entering into the lease, Planet Fitness and Miolla instructed Soriana to stop dealing with JEG-United. As a result of this interference, JEG-United suffered harm.

83.    Upon information and belief, Planet Fitness interfered with JEG-United's relationship with Soriana in order to grant franchises to a personal friend and business associate of Miolla, Ibarra.

84.    Planet Fitness interfered with JEG-United's efforts to purchase several gyms owned by a competitor in Mexico, California Fitness. As a result of this interference, JEG-United suffered harm.

85.     JEG-United and Ibarra reached an agreement in principle for the sale of JEG-United's Planet Fitness businesses to Ibarra. However, Planet Fitness interfered with JEG-United's relationship with Ibarra and his company, the Ibarra Group.

86.     Among other things, Planet Fitness shared JEG-United's confidential information with Ibarra. Further, Planet Fitness suggested to the Ibarra group that it would sell the JEG-United businesses to Ibarra at better terms after forcing JEG-United to walk away from its substantial investment with a substantial loss.

87.     The conduct of Planet Fitness and Miolla violated industry standards, customs and ethics.

88.     Planet Fitness interfered with JEG-United's contracts and prospective business relationships in a wanton, malicious and oppressive manner.

89.     Planet Fitness and Miolla acted with the intent to harm JEG-United.

90.     JEG-United suffered significant economic harm as a result of the interference by Planet Fitness and Miolla.

**COUNT IV (VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT)**
**JEG-United v. Planet Fitness and Raymond Miolla**

91.     JEG-United realleges and incorporates by reference all preceding allegations contained in its Counterclaims and third party claim as if set forth herein.

92.     Both before and after entering into the Agreement, Planet Fitness and Miolla engaged in unfair or deceptive practices in New Hampshire that have harmed JEG-United. All unfair or deceptive representations, statements, and actions made by Planet Fitness or Miolla were made from New Hampshire and on behalf of Planet Fitness, a New Hampshire-based company.

93.     Planet Fitness and Miolla acted unfairly or deceptively when they interfered with JEG-United's relationship with Soriana. JEG-United had spent years cultivating that relationship and Planet Fitness and Miolla intentionally and willfully instructed Soriana to cease talking with and working JEG-United.

94.     Upon information and belief, Planet Fitness and Miolla told Soriana to cease working with JEG-United.

95.     At Planet Fitness's request, JEG-United met with Ibarra and had a productive meeting in which the two parties developed a framework to proceed with expansion in Mexico. Planet Fitness and Miolla then unfairly and deceptively inserted themselves in the discussions which resulted in all communications from Ibarra stopping. Upon information and belief, Planet Fitness and Miolla did not want this partnership to proceed.

96.     Planet Fitness and Miolla consistently acted contrary to their contractual obligations with the intent that JEG-United would be unable to fully comply with the Agreement.

97.     As a result of Planet Fitness's and Miolla's intentional and willful unfair or deceptive trade practices, JEG-United has suffered harm.

## V.     REQUEST FOR RELIEF

98.     WHEREFORE, JEG-United respectfully requests the Court:

    a.  Award JEG-United actual damages arising out of Planet Fitness' breach of contract and breach of the implied covenant of good faith performance and fair dealing;

    b.  Award JEG-United actual damages arising out of Planet Fitness' and Miolla's tortious interference with existing contracts and prospective business relationships;

c.  Award JEG-United multiple damages arising out of Planet Fitness' and Miolla's willful and knowing breach of the New Hampshire Consumer Protection Act;

d.  Award JEG-United enhanced damages;

e.  Award JEG-United its reasonable attorney's fees;

f.  Award JEG-United such other relief as the Court may deem appropriate.

### JEG-UNITED DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE

Dated: June 29, 2020

JEG-United, LLC
By its attorneys,


*/s/ Bryan Harrison*
Bryan Harrison (269106)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone: +1 857 488 4200
Fax: +1 857 488 4201
bharrison@duanemorris.com

Jim Steigerwald
Duane Morris LLP
20 South 17th Street
Philadelphia, PA 19103
Telephone: +1 215-979 1145
Fax: +1 215 689 4407
JHSteigerwald@duanemorris.com