# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Planet Fitness International Franchise,<br><br>               Plaintiff<br><br>v.<br><br>JEG-United, LLC,<br><br>               Defendant | Case No. 1:20-cv-00693-LM |

### PLAINTIFF PLANET FITNESS INTERNATIONAL FRANCHISE'S ANSWER TO JEG-UNITED, LLC'S COUNTERCLAIMS

Plaintiff, Planet Fitness International Franchise (hereinafter referred to as "Planet Fitness"), submits this Answer to Counterclaims and Statement of Affirmative Defenses. Any allegation not explicitly admitted herein is denied. In support thereof, Planet Fitness responds to the numbered paragraphs in JEG-United's Counterclaims as follows:

### I.
### Parties

1. Admitted in part and denied in part. Admitted that JEG-United, LLC is a limited liability company formed under the laws of Delaware. Denied that JEG-United, LLC's members are JEG-PF Mexico, LLC and JEPF Mex, LLC.

2. Admitted.

3. Admitted.

### II.
### Jurisdiction and Venue

4. Admitted.

5. Admitted.

6. Admitted that personal jurisdiction exists over Third-Party Defendant Miolla. Denied that Miolla is a required party and admitted that his presence does not deprive the Court of jurisdiction.

7. Admitted.

## III.
## Facts

**A. JEG-Mex LLC creates a plan to develop Planet Fitness gyms throughout Mexico**

8. Admitted that JEG-United is a joint venture of two Planet Fitness franchise groups that have developed and operated Planet Fitness businesses. Planet Fitness lacks information sufficient to admit or deny the second sentence of this paragraph of the Counterclaims, so those allegations are denied. All other allegations are denied.

9. Planet Fitness lacks information sufficient to admit or deny the allegations of the first sentence of this paragraph, so those allegations are denied. As to the second sentence of this paragraph, JEG-Mex, LLC may have harbored an aspiration to develop gyms throughout all of Mexico, but it repeatedly communicated a reluctance to bind itself to any commitments to do so. Planet Fitness admits that it had knowledge of JEG-Mex, LLC's interest in developing gyms in Mexico, but Planet Fitness denies the remaining allegations, including those as to the characterization of the purported business plan developed by JEG-Mex, LLC. Further, whatever JEG-Mex, LLC's initial aspirations, by no later than October 17, 2018, it was understood by JEG-Mex, LLC that the territory involved in the discussions surrounding the Potential ADA was limited to the portions of northern Mexico described in Exhibit "A" to the Agreement.

10. Planet Fitness admits that JEG-Mex, LLC developed a market plan, which speaks for itself, but Planet Fitness denies the characterization of the plan. Planet Fitness admits that

JEG-Mex, LLC developed a marketing strategy for the Monterrey market, which speaks for itself, but Planet Fitness denies the characterization of the marketing strategy.  Planet Fitness denies that JEG-Mex, LLC developed a marketing strategy for all of Mexico and that JEG-Mex, LLC's strategy was prepared solely at JEG-Mex, LLC's expense.  Planet Fitness admits that JEG-Mex, LLC developed standards, which speak for themselves, but Planet Fitness denies the characterization of those standards and the remaining allegations in the third sentence of this Paragraph.  Planet Fitness lacks information sufficient to admit or deny what JEG-Mex, LLC expected (as stated in the final sentence of this paragraph), so those allegations are denied.  Answering further, Planet Fitness communicated several times to JEG-Mex, LLC (and later to JEG-United) that Planet Fitness: (i) would not grant either of the entities franchise rights outside of northern Mexico; and (ii) was going to identify another franchisee to develop clubs in central and southern Mexico.  Answering further, Planet Fitness did in fact develop standards for the clubs in Mexico.

11.	Planet Fitness admits the first sentence of this paragraph.  Planet Fitness admits there was a meeting at Planet Fitness's headquarters in August 2017.  All other allegations are denied.

12.	Planet Fitness admits that JEG-Mex, LLC declined to sign an Area Development Agreement ("ADA") in August 2017, despite being offered the opportunity by Planet Fitness, and that two side letter agreements were negotiated instead.  Those side letter agreements speak for themselves and Planet Fitness denies the characterization of them.  All other allegations are denied.

13. Planet Fitness agrees that JEG-Mex, LLC opened the first Planet Fitness location in Mexico on April 26, 2018 and that Planet Fitness's CEO and others attended the opening. The characterization of this club as "successful" is denied.

**B. JEG-United forms to pursue an area development agreement with Planet Fitness but Miolla pursues his own agenda to favor Carlos Ibarra**

14. Planet Fitness admits that JEG-Mex, LLC opened a first location in Mexico and that JEG-Mex, LLC would later become JEG-United. Planet Fitness admits that the parties subsequently attempted to negotiate an ADA. All other allegations are denied. Answering further, Planet Fitness communicated several times to JEG-Mex, LLC (and later to JEG-United) that Planet Fitness: (i) would not grant either of the entities franchise rights outside of northern Mexico; and (ii) was going to identify another franchisee to develop clubs in central and southern Mexico, as is apparent from the territory described in Exhibit A to the Agreement.

15. Planet Fitness admits that JEG-Mex, LLC joined with United PF Holdings, LLC and that joint venture resulted in the formation of JEG-United, but Planet Fitness lacks information sufficient to admit or deny the timing, so those allegations are denied. Planet Fitness admits the second sentence of this paragraph. All other allegations are denied.

16. Planet Fitness admits the Mr. Miolla communicated with Keven Kelly in July 2018 and that Mr. Miolla is the Chief Development Officer at Planet Fitness. All other allegations are denied.

17. Planet Fitness admits that JEG-United presented a business plan (not development) to Planet Fitness in 2018. All other allegations are denied.

18. Planet Fitness admits that JEG-United, at times, communicated a desire to finalize an ADA for all of Mexico. However, Planet Fitness had informed JEG-United on multiple occasions that Planet Fitness had no intention of affording franchise rights to JEG-United outside

4

of northern Mexico. In fact, JEG-United confirmed its understanding of Planet Fitness's intention. The remaining allegations are denied.

19. Denied. Answering further, Planet Fitness executives and its board of directors decided to limit JEG-United to northern Mexico and to find another franchisee for central and southern Mexico. In any event, by no later than March 5, 2019 JEG-United understood and agreed that the Proposed Territory to be discussed in connection with a Proposed ADA would be northern Mexico.

20. Planet Fitness denies the characterization that Mr. Miolla "carved out" territory, but admits that Planet Fitness communicated clearly and frequently that it would not grant franchise rights to JEG-United outside of northern Mexico. Planet Fitness admits that Carlos Ibarra and his group were identified as another possible franchisee for gyms in Mexico. Planet Fitness admits that Mr. Ibarra did not have prior experience opening or operating Planet Fitness locations and that JEG-United had approximately five months of experience operating Planet Fitness locations in Mexico. Planet Fitness admits that in the fall of 2018, Mr. Ibarra had not committed to develop Planet Fitness locations in Mexico, and Planet Fitness states further that Planet Fitness had not committed to Mr. Ibarra, either. Planet Fitness admits that JEG-United had by that point opened a Planet Fitness location in Mexico, but denies that JEG-United developed operating standards without help or input from Planet Fitness and that Planet Fitness refused to provide such standards. Planet Fitness lacks information sufficient to admit or deny the last sentence of this paragraph, so those allegations are denied. All other allegations are denied. Answering further, Planet Fitness states that it produced operations manuals for Mexico in January 2018.

### C. The parties enter the Agreement

21. Planet Fitness denies that it failed or neglected to transmit any further written agreement for the development of gyms in northern Mexico in the weeks and months that followed. Answering further, Mr. Miolla placed several phone calls and sent several emails to JEG-United in early October 2018. Specifically, on or about October 17, 2018, Mr. Miolla sent a detailed proposal to JEG-United for an ADA covering markets in northern Mexico. Planet Fitness admits that in the months that followed, the parties failed to come to terms on an ADA, and, instead, eventually entered into the Agreement, which speaks for itself and Planet Fitness denies JEG-United's selective characterization of the Agreement.

22. To the extent JEG-United has accurately quoted a paragraph of the Agreement, the allegations are admitted.

23. Admitted.

24. To the extent JEG-United has accurately quoted a paragraph of the Agreement, the allegations are admitted.

25. To the extent JEG-United has accurately quoted a paragraph of the Agreement, the allegations are admitted.

26. The parties' agreement speaks for itself and Planet Fitness denies JEG-United's characterization of the document.

27. The parties' agreement speaks for itself and Planet Fitness denies JEG-United's characterization of the document. To the extent JEG-United has accurately quoted a paragraph of the parties' signed agreement, the allegations are admitted.

### D. Planet Fitness breaches the Agreement

28. Planet Fitness admits that JEG-United at times expressed a desire for an ADA to grant development rights throughout Mexico. However, JEG-United also expressed a reluctance to commit to develop locations throughout Mexico on a timeline consistent with Planet Fitness's development strategy in Mexico. In any event, Planet Fitness informed JEG-United many times that it would not grant to JEG-United franchise rights outside of northern Mexico, a message JEG-United confirmed it had received and understood. All other allegations are denied.

29. Planet Fitness states that the parties' Agreement speaks for itself and denies JEG-United's characterization of it.

30. Admitted, except for the characterization that Mr. Miolla "refused" to attend the meetings in Mexico in May 2019.

31. Planet Fitness admits that Ms. Annello was at the time the Director of Real Estate for Mexico and attended the meeting at the end of May 2019. The second sentence of this paragraph is denied. Planet Fitness lacks information sufficient to admit or deny what JEG-United believed was the extent of Ms. Annello's authority. All other allegations are denied.

32. Denied.

33. Planet Fitness admits that JEG-United communicated proposed development schedules but denies all other allegations.

34. Planet Fitness denies the allegations of the first sentence of this paragraph. To the extent the second sentence accurately quotes from the parties' Agreement, those allegations are admitted. All other allegations are denied.

35. Denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied, except that Planet Fitness admits there was a meeting of the parties in August 2017 and that David Escobar was one of the Planet Fitness employees who worked on the standards. All other allegations are denied. Answering further, Planet Fitness delivered such standards for Mexico in January 2018.

### E. Planet Fitness interferes with relationships that would have helped JEG-United develop its territory

41. Planet Fitness denies the allegations of the first sentence of this paragraph. Planet Fitness denies the allegation that there is a dearth of big box opportunities in Mexico. Planet Fitness lacks information sufficient to admit or deny the remaining allegations stated in this paragraph, and therefore denies them.

42. Planet Fitness admits that JEG-United entered into a lease. Planet Fitness lacks information sufficient to admit or deny the remaining allegations stated in this paragraph, and therefore denies them.

43. Planet Fitness lacks information sufficient to admit or deny the allegations stated in the first sentence of this paragraph, so those allegations are denied. Planet Fitness admits that JEG-United communicated to Planet Fitness that it was having discussions with representatives of Soriana. All other allegations are denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

**F. JEG-United reaches a deal to sell its clubs to Ibarra but Planet Fitness and Miolla once again interfere with JEG-United's business so that they can steer the territory and clubs to Ibarra at a discounted price**

50. Planet Fitness admits there was at least one meeting between Mr. Ibarra and JEG-United, which JEG-United requested. All other allegations are denied.

51. Planet Fitness admits that JEG-United and Ibarra communicated. Planet Fitness lacks information sufficient to admit or deny the remaining allegations stated in this paragraph, and therefore denies them.

52. Planet Fitness lacks information sufficient to admit or deny what Mr. Ibarra communicated during the meeting with JEG-United regarding his relationship with Soriana, so those allegations are denied. All remaining allegations are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

**G. JEG-United exercises the Put Option and Planet Fitness files a baseless suit because it was not prepared to close**

57. Denied, except that JEG-United exercised the Put Option and then failed to actually sell the five clubs in northern Mexico as required by the Put Option.

58. Admitted that JEG-United exercised the Put Option on March 19, 2020 and that Planet Fitness was obligated to purchase and JEG-United was obligated to sell the Mexico Businesses within 90 days. Planet Fitness admits the allegations in the third sentence of this paragraph. All remaining allegations are denied.

59.     Planet Fitness admits that its preliminary calculations, based on incomplete information, suggested a book value of $13.8 million for the five gyms in northern Mexico based on an equity transaction.  The second sentence of this paragraph is denied.  Answering further, Planet Fitness states that rather than "accept" the preliminary calculation of book value of $13.8 million, JEG-United countered with differing terms that were inconsistent with the Put Option.

60.     Planet Fitness admits that it filed the Complaint that initiated this lawsuit but denies the characterization of its allegations as "false."  Planet Fitness admits that after further consideration of the available data and after adhering to JEG-United's request to transform the transaction into an asset purchase (as opposed to a stock sale), the book value was recalculated to be $12,209,629.  All other allegations are denied.

61.     Planet Fitness admits that it communicated, as part of the parties' settlement discussions, the prospect of moving ahead with the transaction without requiring JEG-United to sign a release of claims (even though one was contemplated by the Put Option and is consistent with the parties' course of dealing), but JEG-United did not accept Planet Fitness's settlement offer, so there was no binding agreement to excuse JEG-United from signing a release.  Planet Fitness admits that a release is a requirement of the transaction JEG-United initiated when it exercised the Put Option and consistent with the parties' long course of conduct and Planet Fitness' system standards.  All other allegations are denied.

62.     Denied.  Answering further, Planet Fitness acceded to all of JEG-United's edits to the transaction documents except JEG-United's efforts to change the purchase price and to avoid the required release of claims.  Planet Fitness also wired the purchase price and VAT tax payments to an escrow agent and thereby fulfilled all conditions on it to close on the transaction. JEG-United refused to complete the transaction.

## COUNT I (BREACH OF CONRACT)
### JEG-United v. Planet Fitness

63. Planet Fitness incorporates by reference the allegations of the other paragraphs of this Answer to Counterclaims as it set forth fully herein.

64. Admitted that the Agreement is "valid" and enforceable to the extent of its binding terms. All other allegations are denied.

65. To the extent JEG-United accurately quotes from the parties' agreement, admitted. The second sentence of this paragraph is admitted.

66. To the extent JEG-United accurately quotes from the parties' agreement, admitted.

67. To the extent JEG-United accurately quotes from the parties' agreement, admitted.

68. This paragraph sets forth legal conclusions to which no response is required, and is vague for lack of specificity. To the extent an answer is required, denied.

69. Denied. To the contrary, the Agreement and Extension both acknowledge the parties' prior and continuing good faith negotiations.

70. Denied.

71. Admitted that JEG-United exercised the Put Option on March 19, 2020 and that Planet Fitness was obligated to purchase and JEG-United was obligated to sell the Mexico Businesses within 90 days, which was June 17, 2020. All remaining allegations are denied.

72. Planet Fitness admits that it amended its Complaint to reflect the proper calculation of the book value purchase price of $12,209,629 based on an asset transaction, as requested by JEG-United, and that it seeks specific performance by JEG-United. Planet Fitness further admits specific performance includes JEG-United signing a release, which was

contemplated by the parties and is consistent with the parties' course of dealing. All other allegations are denied.

73. Denied.

74. Denied.

### COUNT II (BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH PERFORMANCE AND FAIR DEALING)
### JEG-United v. Planet Fitness

75. Planet Fitness incorporates by reference the allegations of the other paragraphs of this Answer to Counterclaims as it set forth fully herein.

76. This paragraph sets forth legal conclusions to which no response is required, and is accordingly denied.

77. Denied.

78. Denied.

### COUNT III (TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSEPECTIVE BUSINESS RELATIONSHIPS)
### JEG-United v. Planet Fitness and Raymond Miolla

79. Planet Fitness incorporates by reference the allegations of the other paragraphs of this Answer to Counterclaims as it set forth fully herein.

80. Planet Fitness lacks information sufficient to admit or deny the allegations of the in this paragraph, so these allegations are denied.

81. Planet Fitness admits that it was aware of the one lease relationship between Soriana and JEG-United and that JEG-United had some discussions with Soriana regarding other possible lease locations. The remaining allegations are denied.

82. Planet Fitness admits that it was aware of the one lease relationship between Soriana and JEG-United and that JEG-United had some discussions with Soriana regarding other possible lease locations. The remaining allegations are denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

### COUNT IV (VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT)
### JEG-United v. Planet Fitness and Raymond Miolla

91. Planet Fitness incorporates by reference the allegations of the other paragraphs of this Answer to Counterclaims as it set forth fully herein.

92. Denied.

93. Denied.

94. Denied.

95. Planet Fitness admits a meeting was held between Mr. Ibarra and JEG-United. All other allegations are denied.

96. Denied.

97. Denied.

## COUNT V. REQUEST FOR RELIEF

98. No response is required to Defendant's Request for Relief, but to the extent it is, Planet Fitness denies that Defendant is entitled to any of the relief requested.

## STATEMENT OF AFFIRMATIVE DEFENSES

A. Plaintiff denies the allegations set forth in the Counterclaim and puts Defendant to its proof for each element of each claim.

B. Defendant has failed to state a claim upon which relief can be granted.

C. Defendant's claims are barred by their admissions in the Agreement and Extension, as well as their admissions in Defendant's Counterclaim.

D. Defendant's Counterclaim for breach of the implied covenant of good faith and fair dealing is barred to the degree it seeks to create rights or obligations beyond the express language of the parties' Agreement.

E. Defendant has failed to mitigate its damages, if any.

F. Defendant's counterclaims are barred by the doctrine of unclean hands.

G. Defendant's claims are barred by laches.

H. If any monies are owed to Defendant, which Plaintiff denies, they are offset by damages caused to the Plaintiff by Defendant.

I. Defendant is estopped from any recovery because of its own acts or omissions.

J. Defendant's Counterclaims are barred by the releases it has previously signed and the release it will sign in connection with the sale of the five gyms to Planet Fitness.

K. Defendant waived the claims asserted in its Counterclaims.

L. Defendant's breach of contract excuses any nonperformance by Plaintiff.

M. Plaintiffs' actions were justified.

N. Plaintiff cannot tortiously interfere in transactions in which it is a party or in which it has a valid interest.

O. Plaintiff cannot be liable for tortious interference because it is the source of the business opportunities alleged in Defendant's Counterclaim.

P. Plaintiff was privileged to act as it did to protect its economic interests and in accordance with its best business judgment.

Q. Plaintiff's actions and decisions are protected by the business judgment rule.

R. Without taking on the burden of proof Defendant must carry, Defendant could not have formed actual business relationships or prospective business relationships involving rights it did not possess.

S. There was no meeting of the minds as to an ADA or subsequent franchise agreement, so there is no enforceable agreement on which the remedy sought by JEG-United could be fashioned. In fact, to the contrary, the Agreement expressly acknowledges that the Summary of Proposed Terms for the Potential ADA was non-binding.

T. The purported agreement on which JEG-United bases its claims lacks definiteness.

U. Defendant's damage claims are limited to the sole express remedy provided by the Agreement for their failure to execute an ADA—the sale of its clubs pursuant to the Put Option.

V. Defendant's claim for lost profits fails as wholly speculative and impermissibly dependent upon non-binding terms within the Agreement.

W. Defendant's damages, if any, are limited to reliance damages arising subsequent to the date of the Agreement and the most recent release signed by JEG-United.

Planet Fitness reserves the right to amend this Statement of Affirmative Defenses to make additional affirmative defenses as they become available in the course of discovery.

Respectfully submitted,

Planet Fitness International Franchise

By Its Attorneys,

**SHEEHAN PHINNEY BASS & GREEN, PA**

Dated: July 31, 2020 By: */s/ Patrick J. Queenan*
Patrick J. Queenan, Esq. (#20127)
James P. Harris, Esq (#15336)
1000 Elm Street, 17th Floor
Manchester, NH 03110
(603) 668-0300
pqueenan@sheehan.com
jharris@sheehan.com

-and-

GENOVESE, JOBLOVE & BATTISTA, PA
Michael D. Joblove (FL #354147)
Brett Halsey (FL #0013141)
100 S.E. Second Street, 44th Floor
Miami, FL 33131
(305) 349-2312
mjoblove@gjb-law.com
bhalsey@gjb-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record by filing same using the Court's ECF system.

Dated: July 31, 2020 　　　　　　　　　　/s/ *Patrick J. Queenan*
　　　　　　　　　　　　　　　　　　　　Patrick J. Queenan (#20127)