UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Planet Fitness International Franchise,<br><br>        Plaintiff,<br><br>    v.<br><br>JEG-United, LLC<br><br>        Defendant. | Case No. 1:20-cv-00693-LM |

**PLAINTIFF PLANET FITNESS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER TO LIMIT DISCOVERY FROM NON-PARTY ARGONNE CAPITAL GROUP, LLC PURSUANT TO RULE 26(c)(1)**

## I.    INTRODUCTION

Plaintiff, Planet Fitness International Franchise ("Planet Fitness"), requests that this Court enter a protective order to limit discovery requested by Defendant JEG-United, LLC's ("JEG-United") Subpoena to Produce Documents directed to non-party Argonne Capital Group, LLC ("Argonne") on December 3, 2020 because it improperly seeks the disclosure of irrelevant documents, confidential business plans and commercial information. (A copy of JEG-United's Subpoena to Produce Documents directed to Argonne Capital Group, LLC is attached hereto at Exhibit 1) (the "Argonne Subpoena"). The Argonne Subpoena seeks information that post-dates, by months, the facts relevant to JEG-United's counterclaims, and is an attempt to delve into highly confidential business information that will have no bearing on the disposition of those claims.

**FACTS**

The subpoenaed party, Argonne Capital Group, LLC, is a private equity investment firm, which, months after the facts giving rise to JEG-United's claims, began discussions with another third party, Carlos Ibarra, about forming a joint venture to become a developer and franchisee of the Planet Fitness® brand through all of Mexico.[1] (Ex. B, ¶¶2-3). JEG-United's claims stem from its failed negotiations to be a developer of the brand in portions of northern Mexico. Those negotiations ended in March 2020, when JEG-United terminated the discussions.

Through the Argonne Subpoena, JEG-United improperly seeks to discover communications among Argonne, Planet Fitness, Planet Fitness Chief Development Officer Ray Miolla and others concerning the development of Planet Fitness® clubs in Mexico, specifically including those stemming from Argonne's alleged visit to Planet Fitness® clubs in Mexico on October 7, 2020–seven months after JEG-United terminated its own discussions with Planet Fitness. (Ex. 1, Sch. A, pp. 2-3). JEG-United further seeks documents concerning Argonne's contracts, communications and documents concerning Planet Fitness® clubs in Mexico, including "marketing materials, development plans, strategic plans, or similar documents" concerning Argonne's future development of Planet Fitness® clubs in Mexico. (*Id.*, Sched. A, p. 3 ¶7). All of this information is strategically important to Planet Fitness and Argonne, is highly confidential and would have no bearing on JEG-United's own decision months earlier to terminate negotiations to develop a much smaller territory, including only portions of northern Mexico.

Because this subpoena seeks confidential documents and information post-dating, and unrelated to, the events on which JEG-United's claims could be based, the Court should prohibit

---

[1] In support of this Motion, Planet Fitness respectfully submits the Affidavit of Raymond Miolla, attached hereto at Exhibit 2.

this non-probative discovery, especially given the associated risk of disclosure of commercially sensitive information to Planet Fitness' competitors. An examination of the timing of the events that serve as the basis for JEG-United's claims highlights the irrelevance of the discovery JEG-United seeks, and from which Planet Fitness and Argonne should be protected.

### A. The Negotiations and the Put Option.

This lawsuit concerns claims surrounding a March 5, 2019 Side-Letter Agreement ("Agreement") which, among other things, contained the parties' understanding to continue their good faith negotiations for a potential Area Development Agreement ("ADA") for portions of northern Mexico, based upon the non-binding terms set forth therein. (Dkt. No. 6-1) (A copy of the Side-Letter Agreement is attached hereto at Exhibit 3). Pursuant to that Agreement, Planet Fitness granted JEG-United certain franchise rights for five Planet Fitness® clubs in northern Mexico, and established a negotiation period for the parties to explore a potential ADA for that territory through December 31, 2019. (*Id.*, ¶¶2, 3). The ADA would have granted JEG-United exclusive development rights for portions of northern Mexico, contingent on its adherence to an agreed development schedule. The Agreement also provided JEG-United with a Put Option, which stated that if an ADA was not executed by the end of the negotiation period, JEG-United had the right to exercise an option to sell its five Planet Fitness franchised clubs to Planet Fitness for book value. (*Id.*, ¶7).

As alleged, by early 2020 the ADA negotiations stalled as the parties disagreed on a development schedule. JEG-United was unwilling to commit to develop thirty fitness clubs over an eighteen-year period as contemplated by the Non-Binding Terms in Exhibit B to the Agreement. (*Id.*, at Ex. B; Dkt. No. 6, ¶22). As JEG-United admits, during this same time period JEG-United was also negotiating to sell its five Planet Fitness® clubs in Mexico to a Mexican

developer, Carlos Ibarra. (Dkt. No. 8, ¶23; Dkt. No. 9, p. 7 ¶23). As a result of these ongoing negotiations, JEG-United sought an extension of the Agreement's December 31, 2019 deadline to execute an ADA with Planet Fitness. *Id.*

On January 28, 2020, Planet Fitness and JEG-United entered into an extension of the Side Letter Agreement, lengthening the negotiation period for an Area Development Agreement until June 30, 2020. (Dkt. No. 6, ¶29; Dkt. No. 6-3; Dkt. No. 9, p. 7 ¶29) (A copy of the January 28, 2020 Extension Side Letter Agreement is attached hereto at Exhibit 4). The January 28, 2020 Extension Side Letter Agreement also extended the time period for Defendant JEG-United to exercise its Put Option. (*Id.*). By March 2020, however, JEG-United decided to cease negotiations, and exercised its Put Option. (Dkt. No. 6, 30; Dkt. No. 9, p. 8 ¶30).

On March 19, 2020, JEG-United sent Planet Fitness written notice of its "Exercise of Put Option for Mexico Businesses." (Dkt. Mo. 6, ¶30; Dkt. No. 6-4; Dkt. No. 9, p. 8 ¶30) (A copy of the March 19, 2020 Exercise of Put Option for Mexico Businesses is attached hereto at Exhibit 5). With this notice, JEG-United ended the negotiation period for the ADA, explicitly exercised the Put Option under Paragraph 7 of the Agreement, and demanded that Planet Fitness purchase its Planet Fitness® clubs in Mexico within 90 days—by June 17, 2020. (Ex. 5; Dkt. No. 9, p. 25 ¶58; p. 27 ¶71). There is no dispute that, by exercising its Put Option and serving Planet Fitness with written notice, on March 19, 2020 JEG-United chose to cease negotiations with Planet Fitness for an ADA. (Ex. 5) ("As noted above, this letter serves as written notice to International Franchisor that JEG-United is both: (1) **declaring an end to the Potential ADA Negotiation Period**; and (2) exercising its Put Option set forth in Section 7 of the Side Letter Agreement…") (emphasis added).

Between March 19 and June 17, 2020, Planet Fitness calculated and offered the book value for an equity sale of JEG-United's Mexico businesses of $13,800,000 (in accordance with GAAP

and as required under the Put Option in the Agreement); and then, when JEG-United requested an asset sale, offered an asset purchase agreement with a purchase price of $12,209,629, also reflecting the book value of the Mexico businesses in accordance with GAAP. (Dkt. No. 6, ¶¶33-36). Although JEG-United disputes the $12,209,620 valuation and the parties dispute whether each performed or failed to perform their obligations with respect to closing on the Put Option, there is no dispute that the June 17, 2020 deadline for closing under the Put Option expired without a closed sale. (Dkt. No. 6, ¶38; Dkt. No. 9, pp. 25-27, ¶¶58, 62, 71, 73). By that date, all acts and events allegedly supporting JEG-United's claim for breach associated with the Put Option had already occurred. *Id.*

### B. JEG-United Alleged Claims Occurred Well Before Any Involvement By Argonne.

According to JEG-United's own allegations from its Counterclaim, the basis for its breach of contract action in Count I is that: a) Planet Fitness breached its obligation to negotiate the ADA in good faith, and b) Planet Fitness breached Article 7 of the Agreement by failing to close on the Put Option by June 17, 2020. (Dkt. No. 9, pp. 25-27, ¶¶58, 62, 71, 73). As set forth above, there is no dispute that JEG-United ended negotiations of the ADA on March 19, 2020. (Ex. 5; Dkt. No. 9, p. 25 ¶58; p. 27 ¶71). It is also undisputed that any alleged breach by Planet Fitness of its obligation to close on the sale of the Mexico business occurred when the June 17, 2020 Put Option deadline came and went. (Ex. 5; Dkt. No. 6, ¶38; Dkt. No. 9, pp. 25-27, ¶¶58, 62, 71, 73).

Count II of JEG-United's Counterclaim is breach of the duty of good faith and fair dealing, which JEG-United admits is an extension of its contract claims. (Dkt. 9, p. 27 ¶76) ("Every contract governed by New Hampshire law contains an implied covenant of good faith performance and fair dealing."). JEG-United makes this additional contract-related claim based solely on an alleged

failure by Planet Fitness to negotiate the ADA in good faith (Dkt. No. 9, ¶77), which negotiations were terminated by JEG-United on March 19, 2020. (Ex. 5; Dkt. No. 9, p. 25 ¶58; p. 27 ¶71).

Counts III and IV of the Counterclaim seek relief for alleged deceptive practices and tortious interference by Planet Fitness and Ray Miolla with JEG-United's "contractual and prospective business relationships." (Dkt. No. 9, pp. 28-30). The alleged acts on which JEG-United bases these claims concern its dealings with Soriana, Carlos Ibarra, and California Fitness. (*Id.* at ¶¶80-86; 92-95). However, according to JEG-United's own pleading, these alleged acts of interference **all occurred no later than March, 2020, several months before the Argonne discussions.** (Dkt. No. 9, p. 17 ¶20 (fall 2018); pp. 20-21, ¶¶30-38 (May 27-29, 2019); pp. 22-23 ¶¶41-49 (during the time of the ADA negotiations for the "development of the territory"); pp. 24-25, ¶¶50-56 (January 2020)). In sum, it is undisputed that the alleged factual bases for JEG-United's interference claims in this proceeding occurred on or before March 19, 2020.

    C.    **Argonne Capital and the Subpoenaed Documents.**

Argonne Capital is a private equity investment firm that has prior experience developing Planet Fitness® franchises in the United States. (Ex. 2, ¶3). Well after JEG-United exercised its Put Option on March 19, 2020 and negotiations between Planet Fitness and JEG-United (as well as negotiations between JEG-United and the Ibarra Group) had ended, the Ibarra Group communicated to Planet Fitness that it was seeking capital investors with which to partner to develop fitness clubs in Mexico. (Ex. 2, ¶2). Planet Fitness put the Ibarra Group in touch with Argonne, and those parties commenced communications in late summer, 2020. (*Id.* at ¶3). During the fall of 2020, Argonne and the Ibarra Group were involved in negotiations between them, and with Planet Fitness, regarding development in the entire country of Mexico. (*Id.* at ¶4). Those

negotiations continue to the present day, as the parties have not reached a final agreement. (*Id.* at ¶5).

Significantly, neither Planet Fitness nor the Ibarra Group had any business discussions with Argonne concerning the Mexico market until well after the alleged acts of interference, and after JEG-United terminated its negotiations to possibly develop a smaller territory in Mexico. (*Id.* at ¶6).

During the negotiations in the fall of 2020, Planet Fitness provided documents and information to Argonne in connection with its business discussions with the Ibarra Group. (Ex. 2, ¶7). Those documents contain financial forecasts for Planet Fitness' performance in Mexico, and include a roadmap for Planet Fitness' international expansion. (*Id.*). Before sharing this information, Planet Fitness required that the parties sign a Non-Disclosure Agreement ("NDA") to protect the information from disclosure. (*Id.*). These documents are highly sensitive, highly confidential, and not relevant to this proceeding. Indeed, Planet Fitness provided, among other things, a roadmap for the timing and location of international expansion, forecasts for international development, and financial forecasts for Planet Fitness' performance in Mexico. (*Id.*). Further, the parties have discussed highly confidential business terms, such as royalty rates and other deal points that are protected from disclosure. (*Id.* at ¶¶7, 8, 10, 11).

Importantly, the market for development of international franchises generally, including through joint ventures with international operators, is extremely competitive. (Ex. 2, ¶9). In seeking to develop internationally, Planet Fitness is not only competing with other fitness brands, but it is competing for investors in the global capital market with any of a number of other global brands. (*Id.*). Planet Fitness negotiates different terms on a country by country basis for each developer/franchisee, including royalty rates. (*Id.* at ¶10). Disclosure of this confidential, sensitive

7

Case No. 1:20-cv-00693-LM

business information would be very harmful if revealed to Planet Fitness' competitors or other operators, as it could hamper negotiations with potential new partners worldwide and significantly dilute its bargaining leverage. (*Id.*). Further, Planet Fitness' international development plans would be of great value to its competitors and release of the information would create undue competitive harm. (*Id.* at ¶11). A confidentiality order will not provide adequate protection, even if the Court were to somehow consider the information relevant. Planet Fitness does not believe that JEG-United will honor a confidentiality agreement, given that JEG-United has disclosed and exchanged confidential information to other Planet Fitness® franchisees in the past. (*Id.*, ¶12).

## II.     ARGUMENT

### A.     This Court Should Enter an Order Prohibiting the Disclosure of Irrelevant Information to Protect Planet Fitness from Annoyance, Harassment, and Oppression.

Rule 26 of the Federal Rule of Civil Procedure restricts discovery to matters which are "relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Rule 26 also provides that the court may issue a protective order, for good cause shown, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery into certain matters," to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1)(D); *see also Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.,* 333 F.3d 38, 41 (1st Cir. 2003). A district court has broad discretion to decide "when a protective order is appropriate and what degree of protection is required." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209 (1984). District judges are permitted wide latitude in designing protective orders, and "great deference is shown to the district judge in

framing and administering such orders." *Id.* (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988).

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Emhart Indus., Inc. v. New England Container Co.*, No. CA 06-218 S, 2013 WL 6001076, at *3 (D.R.I. Nov. 12, 2013) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). A party seeking discovery must make a "threshold showing of relevance…before parties are required to open wide the doors of discovery," in order to limit "fishing expeditions in discovery." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.1992)); *see also Croom v. W. Connecticut State Univ.,* No. CIV. 3:00CV1805(PCD), 2002 WL 32503667, at *1 (D. Conn. Mar. 20, 2002); *New Hampshire Ball Bearings, Inc. v. Jackson*, 969 A.2d 351, 360 (N.H. 2009). Discovery is not relevant to the subject matter in a pending action if the request is "only based on the requesting party's mere suspicion or speculation." *Emhart Indus.*, 2013 WL 6001076 at *3 (quoting *Sirota v. Penske Truck Leasing Corp.*, No. C05–03296 SI, 2006 WL 708910 at *1 (N.D. Cal. Mar.17, 2006)).

Although the movant bears the burden of demonstrating the necessity of a protective order, "a showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement of Rule 26(c)." *Shukh*, 295 F.R.D. at 237; *see also Daly v. Sprague*, 675 F.2d 716, 723 (5th Cir. 1982) (finding no abuse of discretion in refusing to permit discovery post-dating complaint where plaintiff failed to show how the events between the filing of the complaint and the present were relevant to his claims under Rule 26); *Stewart Stamping Corp. v. Westchester Prod. Co.*, 17 F.R.D. 248, 249 (S.D.N.Y. 1953) (denying discovery of representations made by plaintiff to mutual customer after the filing of the complaint as irrelevant to patent infringement suit).

JEG-United's claims for breach of contract and breach of the duty of good faith arise from Planet Fitness' alleged refusal to negotiate an ADA in good faith and alleged breach of the Put Option. JEG-United admits that it terminated negotiations for an ADA with Planet Fitness when it served written notice **on March 19, 2020** of its "Exercise of Put Option for Mexico Businesses." (Ex. 5; Dkt. Mo. 6, ¶30; Dkt. No. 6-4; Dkt. No. 9, p. 8 ¶30). JEG-United further admits that Planet Fitness was required to close on the purchase of JEG-United's Planet Fitness® clubs by June 17, 2020, which JEG-United alleges Planet Fitness failed to do**.** (Ex. 5; Dkt. No. 6, ¶38; Dkt. No. 9, pp. 25-27, ¶¶58, 62, 71, 73). Finally, JEG-United's claims for alleged deceptive practices and tortious interference by Planet Fitness and Ray Miolla with JEG-United's contractual and prospective business relationships with Soriana, Carlos Ibarra, and California Fitness **all occurred before March 19, 2020.** (Dkt. No. 9, p. 17 ¶20 (fall 2018); pp. 20-21, ¶¶30-38 (May 27-29, 2019); pp. 22-23 ¶¶41-49 (time of the ADA negotiations); pp. 24-25, ¶¶50-56 (January 2020)).

Accordingly, the factual bases for all of JEG-United's claims in this proceeding occurred well before Argonne's involvement. Nevertheless, the Argonne Subpoena seeks documents and information related to discussions among Argonne, Carlos Ibarra and Planet Fitness that all occurred months after the above dates, through October 7, 2020 and the present. (Ex. 1). As the accompanying declaration of Planet Fitness' Chief Development Officer, Ray Miolla, makes plain, Argonne and Carlos Ibarra did not commence communications until late summer 2020, and did not begin negotiating any terms until fall 2020. (Ex. 2, ¶¶2-6). Therefore, the discovery sought in the Argonne Subpoena is entirely irrelevant to the claims and issues in this proceeding. The subpoena is intended to harass and annoy Planet Fitness and Argonne by seeking extremely sensitive commercial information regarding potential future development entirely irrelevant to

this case. Because this discovery is irrelevant and carries a high risk of harm if disclosed, good cause is shown, and this Court should enter an order protecting Planet Fitness from its disclosure. *See Shukh,* 295 F.R.D. at 237.

### B. A Protective Order Should Be Entered to Prevent the Disclosure of Confidential Business Plans and Commercial Information.

Rule 26(c) of the Federal Rules of Civil Procedure provides that the Court may enter a protective order for good cause shown to protect a party from annoyance, embarrassment, oppression or undue burden, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way…" Fed. R. Civ. P. 26(c)(1)(G). Similarly, Rule 45 provides that the Court may quash a subpoena "to protect a person subject to or affected by a subpoena," if it requires disclosing a trade secret or other confidential, research, development or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(1).

The party seeking protection from the disclosure of confidential commercial information must show good cause, based on a factual demonstration of potential harm from disclosure. *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). A protective order is appropriate to protect confidential commercial information when public disclosure would unfairly disadvantage the moving party against its competitors. *See Porter v. Countrywide Home Loans, Inc.,* No. 13-CV-429-JD, 2014 WL 12927223, at *1 (D.N.H. Aug. 13, 2014) (citing *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, No. 10-02193-RWZ, 2012 WL 5239726 at *1 (D. Mass. Oct. 24, 2012) (finding good cause and granting motion for protective order where deposition testimony contained confidential commercial information that, if disclosed, could unfairly disadvantage the bank vis-à-vis its economic competitors); *see also Corbett v. Free Press Ass'n,* 50 F.R.D. 179, 181 (D. Vt. 1970) (protecting discovery seeking

11

Case 1:20-cv-00693-LM   Document 43-1   Filed 01/15/21   Page 12 of 15

Case No. 1:20-cv-00693-LM

newspaper company's profits from disclosure, despite that employee argued his compensation was based on profits, where plaintiff was still actively engaged in the newspaper business). Moreover, where the discovery sought concerns a company's business strategies, alternatives or proposals, the confidential information sought is subject to protection under the business strategy doctrine. *See Temple Holdings Ltd. v. Sea Containers Ltd.*, 131 F.R.D. 360, 360–61 (D.D.C. 1989) (citing *BNS Inc. v. Koppers Co.*, 683 F. Supp. 454 (D.Del.1988) (granting protective order barring discovery from defendant's non-party investment advisors, which sought information related to the company's exploration of options in response to a tender offer, finding that the company's shareholders and business could be harmed by the disclosure of the company's business plans).

Here, JEG-United unabashedly seeks the production of "marketing materials, development plans, strategic plans, or other similar documents" created by Argonne or provided to Argonne by Planet Fitness. (Ex. 1, Sch. A, ¶7). According to Mr. Miolla, the documents provided by Planet Fitness to Argonne contain a roadmap for the timing and location of international expansion, forecasts for international development, financial forecasts for Planet Fitness' performance in Mexico, and confidential information regarding royalty rates and other negotiated business terms. (Ex. 2, ¶7). These documents contain highly sensitive, highly confidential commercial information regarding Planet Fitness' business. (*Id.*, ¶8). Planet Fitness negotiates different terms on a country by country basis for each developer/franchisee, including royalty rates. (*Id.*, ¶10). Disclosure of this confidential, sensitive business information would be very harmful if revealed to JEG-United, Planet Fitness' other competitors or franchisors, as it could hamper negotiations with potential new partners worldwide, and significantly dilute its bargaining leverage. (*Id.*, ¶¶10, 11). Because of the sensitive nature of the information, Planet

Fitness required the parties to enter a Non-Disclosure Agreement, before the information was shared. (*Id.*, ¶7). Planet Fitness has met is burden of showing good cause, based on the clear danger of disclosure of highly sensitive commercial information—including a roadmap of Planet Fitness' international business plan.

Once the party seeking protection establishes that the information sought is confidential and that disclosure would cause harm, the burden shifts to the requesting party to establish that the information is sufficiently relevant and necessary to outweigh the harm that disclosure may cause. *M-I LLC v. Stelly,* 733 F. Supp. 2d 759, 801–02 (S.D. Tex. 2010) (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043 (2d ed.1994)). Planet Fitness has already established that this discovery post-dates all of the acts and events on which JEG-United's claims are based. Because the discovery sought is irrelevant to the issues in this case, while the danger of substantial harm (and resulting unfair disadvantage) to Planet Fitness from the disclosure of its confidential business information is great, this Court should enter a protective order preventing the disclosure of this discovery. *See Porter,* 2014 WL 12927223, at *1; *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003) (affirming order of the District Court of New Hampshire quashing subpoena to non-party seeking documents concerning profits of plaintiff revealed in subsequent negotiations for non-party to acquire the plaintiff, where documents sought were not probative of issues in the case, and the documents contained confidential commercial information).

Finally, Planet Fitness anticipates that JEG-United will rely on the confidentiality agreement the parties have negotiated, and will contend that Planet Fitness' concerns in this Motion will be sufficiently covered by that agreement. A confidentiality order, however, does not permit JEG-United to ignore the requirements of Rule 26 and engage in a fishing expedition

for irrelevant information. Discovery has ultimate and necessary boundaries, including that a party seeking it must make a threshold showing of relevance. *See Emhart Indus.,* 2013 WL 6001076, at *3; *Shukh*, 295 F.R.D. 228, 237 (D. Minn. 2013); *Croom,* 2002 WL 32503667, at *1. All of the information sought by this subpoena post-dates (by several months) the claimed bad-faith negotiations and other acts that allegedly serve as the basis for JEG-United's claims. These documents are simply not relevant, a fact that is not cured by a confidentiality agreement. Further, as to the highly sensitive nature of the documents JEG-United seeks, Planet Fitness does not believe a confidentiality agreement will adequately protect it, as JEG-United has disclosed and exchanged confidential information with other Planet Fitness® franchisees in the past. (Ex. 2, ¶12).

### III. CONCLUSION

For the reasons set forth herein, Planet Fitness seeks entry of a protective order preventing the discovery of irrelevant and confidential information sought through the Argonne Subpoena.

Respectfully submitted,

Planet Fitness International Franchise

By its attorneys:

**SHEEHAN PHINNEY BASS & GREEN, PA**
James P. Harris, Esq (#15336)
1000 Elm Street, 17th Floor
Manchester, NH 03110
(603) 668-0300
jharris@sheehan.com

-and-

**GENOVESE, JOBLOVE & BATTISTA, PA**
Michael D. Joblove (FL #354147)

14

Case No. 1:20-cv-00693-LM

                                          Brett Halsey (FL #0013141)
                                          100 S.E. Second Street, 44th Floor
                                          Miami, FL 33131
                                          (305) 349-2312
                                          mjoblove@gjb-law.com
                                          bhalsey@gjb-law.com

Dated: January 15, 2021                        By:    */s/ Brett M. Halsey*
                                                                     Brett Halsey (FL #0013141)

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record by filing same using the Court's ECF system.

Dated: January 15, 2021                            */s/ Brett M. Halsey*
                                                               Brett Halsey (FL #0013141)

12499-002/#405