UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Planet Fitness International Franchise

            v.                                    Civil No. 20-cv-693-LM
                                                  Opinion No. 2021 DNH 081 P
JEG-United, LLC


**O R D E R**

In this business dispute, a franchisor of fitness centers (Planet Fitness International Franchise)[1] and one of its franchisees (JEG-United, LLC) assert claims against one another.  Planet Fitness moves for judgment on the pleadings (doc. no. 23), seeking dismissal of JEG-United's counterclaim that it tortiously interfered with several of JEG-United's prospective business contracts in Mexico (Count III).   JEG-United objects (doc. no. 26).  For the following reasons, Planet Fitness's motion is denied.


**STANDARD OF REVIEW**

"Judgment on the pleadings is proper 'only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable

---

[1] For the purposes of this order, "Planet Fitness" refers to both Planet Fitness International Franchise and its Chief Development Officer, Raymond Miolla. Miolla is named as a defendant in JEG-United's counterclaims.

judgment.'" Zipperer v. Raytheon Co., Inc., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006)). "The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007)); accord Petrello v. City of Manchester, Civ. No. 16-cv-008-LM, 2017 WL 1080932, at *1 (D.N.H. Mar. 21, 2017).

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (citation and internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

The following facts are drawn from the parties' filings and are construed in favor of the non-movant, JEG-United. Planet Fitness is a franchisor of fitness centers. JEG-United, a Planet Fitness franchisee, owns five Planet Fitness gyms in Mexico and planned to develop additional locations in the region. Planet Fitness

and JEG-United entered into a Side-Letter Agreement on March 5, 2019, in which the parties agreed to continue to negotiate in good faith toward an Area Development Agreement. The prospective Area Development Agreement would grant JEG-United the opportunity to establish additional Planet Fitness gyms in Mexico. If the parties agreed to a plan for additional gyms, separate franchise agreements would govern each new Planet Fitness location.

JEG-United claims that Planet Fitness intentionally interfered with its ability to develop gyms on three occasions. The first instance of alleged interference involved JEG-United's negotiations with Soriana, a retail company with over 800 locations that JEG-United worked with to create a portfolio of potential gym locations. Soriana was already the landlord for one of JEG-United's gyms, and JEG-United considered its relationship with Soriana to be one of its primary sources for expansion of gym locations. But, according to JEG-United, Planet Fitness instructed Soriana to cease cooperation with JEG-United to prevent JEG-United from building new gyms.

The second instance of alleged interference involved JEG-United's relationship with Carlos Ibarra and his company, the Ibarra Group. JEG-United met with Ibarra to explore a partnership for future development or to sell JEG-United's existing gyms. JEG-United and Ibarra agreed in writing to enter into a preliminary partnership to accelerate the development of gyms in Mexico. But, according to JEG-United, Planet Fitness used JEG-United's confidential information to convince Ibarra that Planet Fitness would sell the existing

franchises to Ibarra on more favorable terms than JEG-United could offer.  JEG-United claims that Planet Fitness thereby misappropriated the partnership or sale opportunity for itself.

The third alleged instance of interference involved JEG-United's relationship with California Fitness, a Planet Fitness competitor.  JEG-United attempted to purchase California Fitness's gym locations in Mexico.  JEG-United hoped that the purchase would accelerate Planet Fitness's growth in Mexico, eliminate a competitor, and clear up outstanding intellectual property issues.  But, according to JEG-United, Planet Fitness interfered in the negotiations and caused JEG-United's attempt to purchase California Fitness to fail.

For each alleged instance of interference, Planet Fitness argues that it would have been a necessary party to any future franchise agreements and that it would have the right to pre-approve new locations.

## DISCUSSION

The parties agree that JEG-United's tortious interference claim is governed by New Hampshire law.  To establish liability for intentional interference with contractual relations under New Hampshire law, a plaintiff must show that: "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference.  Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 40-41 (2005); see also Montrone v. Maxfield,

122 N.H. 724, 726 (1982).  "[T]ortious interference with a contractual relationship requires interference by one who is not a party to the contract."  Tessier v. Rockefeller, 162 N.H. 324, 338 (2011).  To establish that the defendant's conduct was improper, the plaintiff must "show that the interference with his contractual relations was either desired by the [defendant] or known by him to be a substantially certain result of his conduct."  Demetracopoulos v. Wilson, 138 N.H. 371, 374 (1994) (quoting Restatement (Second) of Torts § 767 cmt. (d)).

I.    Intentional Interference by a Third Party

Planet Fitness first contends that it cannot legally interfere with JEG-United's relationships to develop or sell Planet Fitness franchises because it is a necessary party to these prospective contracts.  See generally 44B Am. Jur. 2d, Interference § 6 ("For a defendant to be liable for tortious interference with contractual relations, one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract.").  Specifically, Planet Fitness asserts that, as the franchisor, it has the right to approve or disapprove of new franchises and that it will therefore be a party to franchise agreements for any prospective gyms that JEG-United might develop.  Planet Fitness argues that its role as franchisor means that—as the source of the prospective business relationships and potential contracts between JEG-United and Soriana, Ibarra, and California Fitness—it cannot be liable for interfering with JEG-United's contracts related to potential gym development.

Viewed in a light most favorable to JEG-United, the counterclaim alleges that Planet Fitness is, at most, a third party to JEG-United's contractual relations with the three businesses at issue.  JEG-United had contracts or potential contracts with its landlord (Soriana), a potential partner or purchaser (Ibarra), and a Planet Fitness competitor (California Fitness).  Although Planet Fitness would be a party to any future franchise agreements between itself and JEG-United that resulted from these contractual relationships, it was not a party to JEG-United's attempts to develop these three business opportunities.

First, with respect to JEG-United's relationship with Soriana, the two businesses created a portfolio of future gym locations and—prior to Planet Fitness's alleged interference—were in the process of negotiating a contract to lease space for these gym locations.  Even if Planet Fitness could later refuse to grant franchise contracts to JEG-United and thus prevent gym development in Soriana locations, that would not make Planet Fitness a necessary party to a lease agreement between JEG-United and Soriana.

Next, with respect to JEG-United's dealings with Ibarra, the two came to a preliminary agreement for a partnership.  While Planet Fitness could later refuse to grant franchise contracts to this partnership, that does not make Planet Fitness a necessary party to the contemplated collaboration between JEG-United and Ibarra.

Finally, with respect to JEG-United's purchase negotiations with California Fitness, the possibility that Planet Fitness could reject future franchise contracts does not make Planet Fitness a necessary party to a potential sale of existing

California Fitness locations.  In short, the fact that Planet Fitness is a franchisor for JEG-United does not make it a party to JEG-United's contracts, agreements, and negotiations with Soriana, Ibarra, or California Fitness.

And, contrary to Planet Fitness's assertions, Planet Fitness's interest in the future gyms as franchisor does not insulate it from liability for interfering with the relationship between one of its franchisees and a third party.  See Raheel Foods, LLC v. Yum! Brands, Inc., No. 3:16-CV-00451-GNS, 2017 WL 217751, at *1 (W.D. Ky. Jan. 18, 2017); Burger King Corp. v. Ashland Equities, Inc., 161 F. Supp. 2d 1331, 1338 (S.D. Fla. 2001).  In Raheel Foods, a franchisee alleged that its franchisor interfered with the sale of an existing franchise "for an improper purpose—to take [the franchisee's] buyers for themselves."  2017 WL 217751, at *5. The court found that the franchisee's allegations could "potentially violate 'concepts of fair play' and the 'rules of the game'" such that the franchisor, who rejected the sales, could be liable for tortious interference.  Id. at *4 (quoting Restatement (Second) of Torts § 767 cmt. j.).  Here, the court agrees with the reasoning of Raheel Foods and notes that the present case has similar facts—JEG-United alleges that Planet Fitness intentionally interfered for an improper gain.  Specifically, JEG-United alleges that Planet Fitness took advantage of its relationship with JEG-United to sabotage JEG-United's relationships with Soriana, Ibarra, and California Fitness, thus pushing JEG-United out of the Mexican market.  In this case, Planet Fitness's right to reject future gym locations is "not fatal" to JEG-United's intentional interference claims against Planet Fitness.  Id. at *5.

To support its claim that its status as the franchisor shields it from liability for tortious interference, Planet Fitness cites Roberts v. General Motors Corp., 138 N.H. 532, 539-40 (1994).  In Roberts, the New Hampshire Supreme Court found that a franchisor properly exercised its right of first refusal during an attempted franchise sale.  See id.  The court held that the prospective franchisee could not claim tortious interference for a lost opportunity to become a franchisee.  Id.  But Roberts is not applicable here.  The relationships between JEG-United and its prospective business partners are outside the franchisor-franchisee relationship that exists between JEG-United and Planet Fitness.  Furthermore, JEG-United alleges improper interference with respect to each act of interference, which, as the court noted in Roberts, may support a tortious inference claim.  Id. at 540 ("Only improper interference is deemed tortious in New Hampshire.").  Roberts might be applicable if the facts showed, for example, that Planet Fitness was in the process of exercising a contractual right to reject the creation of a new gym.  The allegations here, however, claim that Planet Fitness wrongfully interfered with JEG-United's attempts to enter contracts with third parties.

In summary, the allegations do not show that Planet Fitness was a party to JEG-United's contractual relations with Soriana, Ibarra, or California Fitness. Thus, Planet Fitness's argument that it cannot, as a matter of law, be found liable for tortious interference under these facts is unavailing.

II.    <u>Actual Malice</u>

JEG-United alleges in its counterclaim that Planet Fitness's interference was intentional and improper.  Planet Fitness argues that a complainant alleging tortious interference must plead more than mere improper interference and must instead allege that a defendant's actions were motivated by actual malice.

Planet Fitness is incorrect.  In New Hampshire, a plaintiff alleging tortious interference need only plead that a defendant's interference was intentional and improper.  Hughes, 152 N.H. at 41.  This standard does not require pleading actual malice.  The New Hampshire Supreme Court has adopted sections 766 and 766B of the Restatement (Second) of Torts with respect to claims for tortious interference with contracts.   See Bricker v. Crane, 118 N.H. 249, 252 (1978) (adopting Restatement (Second) of Torts § 766 for tortious interference with contracts); Baker v. Dennis Brown Realty, Inc., 121 N.H. 640, 644 (1981) (adopting § 766B for tortious interference with prospective contracts).  Sections 766 and 766B of the Restatement each provide that "[i]ll will on the part of the actor toward the person harmed is not an essential condition of liability under the rule stated in this Section." Restatement (Second) of Torts, §§ 766 cmt. (r); 766B cmt. (f).  The Restatement explains that "[t]here are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section.  But the context and the course of the decisions make it clear that what is meant is not malice in the sense of

ill will but merely 'intentional interference without justification.'" Id. at §§ 766 cmt. (s); 766B cmt. (f).

New Hampshire courts have applied an actual malice standard to an intentional interference claim in one limited context: to determine whether an employer's agent (e.g., a supervisor) is a third party to a relationship between an employer and an employee.  See Preyer v. Dartmouth Coll., 968 F. Supp. 20, 26 (D.N.H. 1997) ("[A]n employer's agent may be considered a third party, legally capable of interference, if the agent is motivated by actual malice, where actual malice is defined as bad faith, personal ill will, spite, hostility, or a deliberate intent to harm the plaintiff." (internal quotation omitted)); see also Drake v. Town of New Bos., No. 16-CV-470-SM, 2017 WL 2455045, at *9 (D.N.H. June 6, 2017).  However, once the court determines that an employer's agent is a third party, the court still applies the "intentional and improper" standard to assess the claim of intentional interference.  Demetracopoulos v. Wilson, 138 N.H. 371, 282 (1994).

Here, JEG-United's counterclaim for tortious interference does not require determining whether an employer's agent is a third party.  Instead, it involves a franchisor interfering with an existing franchisee's contractual relations with third parties.  JEG-United is not required to plead actual malice in its claim of tortious interference.  See Hughes, 152 N.H. at 40-41.

**CONCLUSION**

For the above reasons, JEG-United has stated a plausible claim for tortious interference. Planet Fitness's motion for Judgment on the Pleadings (doc. no. 23) is therefore denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 14, 2021

cc: Counsel of Record