UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Planet Fitness International Franchise

    v.                                          Civil No. 20-cv-693-LM
                                              Opinion No. 2021 DNH 148 P

JEG-United, LLC

**O R D E R**

      Planet Fitness International Franchise ("Planet Fitness"),[1] a franchisor of gyms, and JEG-United, LLC, a company that develops Planet Fitness franchises in Mexico, assert claims against one another. Planet Fitness moves for partial summary judgment (doc. no. 24) on JEG-United's counterclaims, arguing that a release of liability bars the counterclaims to the extent they arise from events predating December 26, 2019. JEG-United objects. For the following reasons, Planet Fitness's motion is denied.

**STANDARD OF REVIEW**

      Summary judgment is proper only if the moving party can demonstrate "that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 318, 332 (1986); see also Fed. R. Civ. P. 56(a). If

---

[1] For the purposes of this order, "Planet Fitness" refers to both Planet Fitness International Franchise and its Chief Development Officer, Raymond Miolla. Miolla is named as a counterclaim defendant by JEG-United.

the moving party succeeds in making that showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The nonmoving party's failure to meet that burden by reference to "significantly probative" materials "of evidentiary quality" entitles the moving party to summary judgment. Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citations omitted). In evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence. Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## BACKGROUND

I. <u>JEG-United and Planet Fitness</u>

Counterclaim defendant Planet Fitness is an international franchisor of gyms. Counterclaim plaintiff JEG-United, a Delaware limited liability company, develops Planet Fitness franchises in Mexico. In March 2019, JEG-United and Planet Fitness entered a contract (the "Side-Letter Agreement") in which they agreed to negotiate about providing exclusive development rights to JEG-United to open and operate Planet Fitness franchises in parts of Mexico. In its counterclaims against Planet Fitness, JEG-United alleges that Planet Fitness breached the Side-

Letter Agreement (Count I), breached implied covenants of good faith and fair dealing (Count II), tortiously interfered with contractual and prospective business relationships (Count III), and violated the New Hampshire Consumer Protection Act (Count IV).[2]  In its motion for partial summary judgment, Planet Fitness contends that JEG-United's counterclaims, to the extent they arise from events predating December 26, 2019, are barred by a release of liability.  Planet Fitness contends that JEG-United, which is not expressly named in the release, is nonetheless bound to it by virtue of JEG-United's corporate relationship with the release's actual signatories, JEG-Mexico Bueno, S. de R.L. de C.V. and United PF Holdings, LLC, ("PF Holdings") neither of which are parties in the present lawsuit.

II.   General Release

The release arose from a transaction unrelated to the present lawsuit.  In December 2019, PF Holdings, which owns and operates many United States-based Planet Fitness franchises, was sold to a third party.  At the time of the sale, PF Holdings also held interests in Mexico-based Planet Fitness franchises.  Specifically, PF Holdings owned an entity called United PF MEX. United PF MEX is one of JEG-United's two members.  And JEG-United—through two wholly-owned

---

[2] This brief overview of the parties' relationship is intended to place the circumstances of Planet Fitness's motion for summary judgment in context.  It should not be construed as a definitive recitation of the parties' underlying substantive dispute.

subsidiaries—holds an interest in JEG-Mexico Bueno, which, in turn, operates five Planet Fitness franchises in Mexico.

Because only PF Holdings's interests in the United States-based franchises were to be included in the sale, the sale was facilitated by transferring PF Holdings's interest in United PF MEX to PF Holdings's parent. All other pertinent corporate relationships, however, remained the same as they were before the sale.

Because the sale affected gyms with which Planet Fitness held franchise agreements, Planet Fitness's approval was required to complete the transaction.[3] As a condition of its approval of the sale, Planet Fitness required JEG-Mexico Bueno and PF Holdings to execute a contract entitled "General Release," which, among other terms, contained the following release clause:

> Release. Franchisee [JEG-Mexico Bueno] and Transferring Owner [PF Holdings], for themselves and their successors, predecessors, assigns, beneficiaries, executors, trustees, gents, representatives, employees, officers, directors, shareholders, partners, members, subsidiaries and affiliates (jointly and severally, the "Releasors"), irrevocably and absolutely release and forever discharge Franchisor [Planet Fitness] and its successors, predecessors, assigns, beneficiaries, executors, trustees, agents, representatives, employees, officers, directors, shareholders, partners, members, subsidiaries and affiliates (jointly and severally, the "Releasees"), of and from all claims, obligations, actions or causes of action (however denominated), whether in law or in equity, and whether known or unknown, present or contingent, for any injury, damage, or loss whatsoever arising from any acts or occurrences occurring as of or prior to the date of this Release [December 26, 2019] relating to the Franchise Agreements, the businesses operated under the Franchise Agreements, and/or any other previously existing agreement between any of the Releasees and any of the Releasors, including but not limited to, any alleged violations of

---

[3] Planet Fitness's franchise agreements include a provision granting it approval authority over certain transfers of its franchisees or their assets.

4

> any deceptive or unfair trade practices laws, franchise laws, or other local, municipal, state, federal, or other laws, statutes, rules or regulations, and any alleged violations of the Franchise Agreements or any other related agreement. The Releasors, and each of them, also covenant not to sue or otherwise bring a claim against any of the Releasees regarding any of the claims being released under this Release.

Doc. no. 24-2 at 180. The General Release later states that "[e]ach party whose signature is affixed hereto in a representative capacity represents and warrants that he or she is authorized to execute this Agreement on behalf of and to bind the entity on whose behalf his or her signature is affixed." Id. at 183. Ray Owen III signed for PF Holdings and JEG-Mexico Bueno.

JEG-United is not identified by name in the General Release, and there is no space on the General Release's signature page for a signature by an agent of JEG-United. JEG-United's board of managers did not review or approve the General Release. Ray Owen III was not an officer or member of JEG-United at the time he executed the General Release, and, as discussed further below, a genuine dispute of fact exists as to whether he was a manager of JEG-United at the time he signed the contract. Of the three signatories to the General Release—PF Holdings, JEG-Mexico Bueno, and Planet Fitness—only Planet Fitness is a party in this suit.

## DISCUSSION

Planet Fitness contends that JEG-United is bound by the General Release because JEG-United wholly owns entities that, together, wholly own signatory JEG-Mexico Bueno and because one of JEG-United's two members was, at the time the

5

General Release was signed, wholly owned by signatory PF Holdings. Planet Fitness argues that the General Release therefore extinguishes JEG-United's counterclaims to the extent they arise from events before the effective date of the release, December 26, 2019. JEG-United objects, arguing that Ray Owen III, who signed the General Release for PF Holdings and JEG-Mexico Bueno, did not have actual or apparent authority to sign the General Release for JEG-United and that it cannot be bound to the release merely because a parent of one of its members or a subsidiary of a subsidiary were signatories to the contract.

To invoke the defense of release, the moving party "must establish that the release (1) applied to defendants, (2) encompassed the claims asserted in the present lawsuit, and (3) was legally enforceable." Bourne v. Town of Madison, 494 F. Supp. 2d 80, 96 (D.N.H. 2007) (quoting Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991)) (internal modifications omitted). The party asserting the defense of release—Planet Fitness in this case—bears the burden to show that the release operates to discharge its liability. See Moore v. Grau, 171 N.H. 190, 194 (2018).

Planet Fitness has failed to demonstrate that the General Release is legally enforceable against JEG-United. A genuine dispute of material fact exists as to whether JEG-United assented to the General Release's terms through an agent acting with actual or apparent authority.

"Ordinary principles of contract formation and interpretation apply to releases." Bourne, 494 F. Supp. 2d at 96 (citing Huguelet v. Allstate Ins. Co., 141

6

N.H. 777, 779 (1997)).⁴  To be enforceable, a contract requires "offer, acceptance, consideration, and a meeting of the minds."  Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006).  JEG-United is an incorporated entity, which "can act only through its agents."  Coach, Inc. v. Sapatis, 27 F. Supp. 3d 239, 245 (D.N.H. 2014); see also Daniel Webster Council, Inc. v. St. James Ass'n, Inc., 129 N.H. 681, 683 (1987) (holding that a contract could not be enforced against a corporation when the persons executing the contract were not the corporation's agents).  Accordingly, to show that JEG-United assented to the General Release, Planet Fitness must demonstrate that an agent with authority to bind JEG-United in fact did so.  See Daniel Webster Council, 129 N.H. at 683.

"The necessary factual elements to establish agency involve: (1) authorization from the principal that the agent shall act for [it]; (2) the agent's consent to so act; and (3) the understanding that the principal is to exert some control over the agent's actions."  Boynton v. Figueroa, 154 N.H. 592, 604 (2006).  Authority to act can be actual or apparent.  See State v. Zeta Chi Fraternity, 142 N.H. 16, 22 (1997).  Proof of actual or apparent authority to act is evaluated from "all the circumstances and conduct in a given situation and the reasonable inferences to be drawn therefrom."  Id.

Planet Fitness contends that Ray Owen III, the person who executed the release on JEG-Mexico Bueno's and PF Holdings's behalf, was also acting as JEG-

---

⁴ Per the terms of the General Release, New Hampshire law on contracts and releases governs.  See doc. no. 28-1 at 31-32.  Neither party contests the application of New Hampshire law to these issues.

United's agent, such that JEG-United is bound by the release. JEG-United responds that Owen did not have actual or apparent authority to execute the release on its behalf.

I. <u>Actual Authority</u>

Planet Fitness has not identified evidence to show that Owen had actual authority to bind JEG-United to the General Release. Per JEG-United's limited liability company agreement, its board of managers, acting as a body, is vested with authority to bind the company and to designate other people to do so.[5] But JEG-United's board of managers never considered the General Release, let alone approved it. And Planet Fitness has not identified any evidence showing that JEG-United's board designated Owen to sign the General Release specifically or authorized him generally to sign contracts such as the General Release without the board's prior approval.

II. <u>Apparent Authority</u>

Planet Fitness fares no better on the alternative theory that Owen had apparent authority to sign the General Release for JEG-United. "Apparent

---

[5] A Delaware limited liability company such as JEG-United is governed by the terms of its limited liability company agreement. <u>See</u> Del. Code Ann. § 18-402 ("Management of limited liability company"). Planet Fitness does not dispute that JEG-United's limited liability company agreement dictates who can bind it or that it vests power to bind JEG-United "solely and exclusively in the Board [of managers] and its authorized designees." Doc. no. 28-1 at 60.

authority . . . exists where the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act." Zeta Chi Fraternity, 142 N.H. at 22 (quotation and brackets omitted). If reasonable due diligence by the party seeking enforcement would have revealed that the apparent agent was not, in fact, authorized to act, then apparent authority does not exist. See Daniel Webster Council, 129 N.H. at 683 (stating that a party can rely on apparent authority only if a reasonably prudent person "in the exercise of due diligence and sound discretion" would naturally have supposed the apparent agent to have authority); Shakra v. Benedictine Sisters of Bedford, New Hampshire, Inc., 131 N.H. 417, 422 (1989) (holding that contract for land transfer was unenforceable when exercise of reasonable diligence would have revealed that person signing the contract was acting beyond the scope of her actual authority).

The only evidence Planet Fitness identifies that could support an apparent authority theory is Owen's signing of a "Franchise Agreement" as a manager for JEG-United in July 2019.[6] Nevertheless, considered in the light most favorable to JEG-United, the other evidence in the record is sufficient to create a genuine dispute of material fact about whether it was reasonable for Planet Fitness to believe that Owen was authorized to act as JEG-United's agent.

First, there is evidence that Planet Fitness knew that Owen was <u>not</u> an agent of JEG-United when he signed the General Release in December 2019. Specifically,

---

[6] Planet Fitness asserts that Owen signed the "Franchise Agreement" in August 2019. This is incorrect. While the contract's effective date is in August 2019, the date next to Owen's signature is July 11, 2019. Doc. no. 31-1 at 96.

in October 2019, JEG-United provided Planet Fitness with a list of its managers and that list did not include Owen. Doc. no. 28-1 at 19. Therefore, while Planet Fitness submits evidence indicating that Owen may have been a manager of JEG-United in July 2019, JEG-United has offered evidence that Planet Fitness knew Owen was not a manager of JEG-United by October 2019. And, even if Owen were a manager of JEG-United in December 2019, JEG-United's managers cannot unilaterally bind the company and reasonable diligence by Planet Fitness would have revealed that fact.

Second, when Owen signed the "Franchise Agreement" in July 2019 for JEG-United, the contract stated that Owen signed as a manager for JEG-United.[7] By comparison, the General Release identifies Owen as signing for JEG-Mexico Bueno and PF Holdings, but does not similarly identify him as signing for JEG-United, which, as stated above, is never identified by name as being a party to the General Release and does not have a place on its signatures page. Furthermore, the General Release states that Owen's signatures are relative to "the entity on whose behalf [his] signature is affixed," and the contract does not contemplate that any signatory executed the document on behalf of other, unnamed entities or for the "Releasors" generally. See doc. no. 24-2 at 180.

Third, Planet Fitness identifies no evidence that JEG-United ever told Planet Fitness or suggested to Planet Fitness that persons executing documents on behalf

---

[7] Owen signed the "Franchise Agreement" multiple times on behalf of several other entities, each of which was specifically identified.

10

of PF Holdings or JEG-Mexico Bueno were likewise authorized to execute documents on JEG-United's behalf. Similarly, there is no evidence in the record that JEG-United ever indicated to Planet Fitness that Owen had general authority to sign contracts on its behalf. Moreover, when the General Release was signed, Planet Fitness was aware of the corporate structure within which JEG-United operated. Planet Fitness does not argue or submit evidence to show that JEG-United deceived Planet Fitness about who could act on its behalf or that JEG-United obfuscated its company agreement, which dictates who can act on its behalf.

For those reasons, Planet Fitness has failed to show that there are no genuine disputes of material fact about whether JEG-United assented to the General Release. Accordingly, Planet Fitness's motion for partial summary judgment, which is premised on enforcing the General Release against JEG-United, must be denied.

## CONCLUSION

Planet Fitness's motion for partial summary judgment (doc. no. 24) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 21, 2021

cc:  Counsel of Record